1   ERIC M. ACKER (CA SBN 135805)
    MORRISON & FOERSTER LLP
2   12531 High Bluff Drive, Suite 100
    San Diego, California 92130-2040
3   Telephone: 858.720.5100

4   VINCENT J. BELUSKO (CA SBN 100282)
    NICOLE M. SMITH (CA SBN 189598)
5   MORRISON & FOERSTER LLP
    555 West Fifth Street
6   Los Angeles, California 90013-1024
    Telephone: 213.892.5200

7
    Attorneys for the Fox Defendants
8

9                   UNITED STATES DISTRICT COURT

10                 SOUTHERN DISTRICT OF CALIFORNIA

11

12  MULTIMEDIA PATENT TRUST,            Case No.   10 CV 0146 JAH (CAB)

13                  Plaintiff,          **DEMAND FOR JURY TRIAL**

14          v.                          **FOX DEFENDANTS' ANSWER TO
                                        PLAINTIFF MULTIMEDIA PATENT**
15  THE WALT DISNEY COMPANY, et al.,    **TRUST'S SECOND AMENDED
                                        COMPLAINT FOR PATENT**
16                  Defendants.         **INFRINGEMENT AND COUNTERCLAIM
                                        AGAINST MULTIMEDIA PATENT TRUST**
17

18

19

20

21

22

23

24

25

26

27

28

Fox Entertainment Group, Inc.; Twentieth Century Fox Film Corp.; Twentieth Century Fox Home Entertainment LLC;[1] Fox Searchlight Pictures, Inc.; Fox Television Stations, Inc.; Fox Television Studios, Inc.; Blue Sky Studios, Inc.; Fox Broadcasting Company; Fox News Network, LLC; Fox Cable Networks, Inc.; MyNetworkTV, Inc.; Fox Movie Channel, Inc.; Fox Interactive Media, Inc.; FX Networks, LLC; NGC Network US, LLC; and NGHT, LLC. (collectively, "the Fox Defendants"), by and through their undersigned attorneys, hereby demand a trial by jury on all issues so triable and hereby answer each of the numbered paragraphs of Plaintiff Multimedia Patent Trust's ("MPT's") Second Amended Complaint for Patent Infringement ("Complaint"). All allegations, averments, statements, and assertions that are not expressly admitted herein are denied.

## THE PARTIES

1. The Fox Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of the Complaint, and therefore deny them.

[*Paragraphs 2 through 13 were intentionally omitted in MPT's Complaint.*]

14. Paragraph 14 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

[*Paragraph 15 was intentionally left blank in MPT's Complaint.*]

16. Paragraph 16 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

17. Paragraph 17 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

18. Paragraph 18 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

19. Paragraph 19 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

---

[1] Twentieth Century Fox Home Entertainment LLC is incorrectly named in MPT's Second Amended Complaint as "Twentieth Century Fox Home Entertainment, LLC."

20.     Paragraph 20 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

21.     Paragraph 21 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

22.     Paragraph 22 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

[*Paragraph 23 was intentionally left blank in MPT's Complaint.*]

24.     Paragraph 24 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

25.     Paragraph 25 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

26.     Paragraph 26 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

27.     Paragraph 27 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

28.     Fox Entertainment Group, Inc. admits the allegations in Paragraph 28 of the Complaint.  Paragraph 28 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

29.     Twentieth Century Fox Film Corp. admits the allegations in Paragraph 29 of the Complaint.  Paragraph 29 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

30.     Twentieth Century Fox Home Entertainment LLC admits the allegations in Paragraph 30 of the Complaint.  Paragraph 30 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

31.     Fox Searchlight Pictures, Inc. admits the allegations in Paragraph 31 of the Complaint.  Paragraph 31 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

32. Fox Television Stations, Inc. admits the allegations in Paragraph 32 of the Complaint. Paragraph 32 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

33. Fox Television Studios, Inc. admits the allegations in Paragraph 33 of the Complaint. Paragraph 33 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

34. Blue Sky Studios, Inc. admits the allegation in Paragraph 34 of the Complaint that it is a corporation organized under the laws of the State of Delaware. Blue Sky Studios, Inc. denies the remaining allegations in Paragraph 34 of the Complaint. Paragraph 34 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

35. Fox Broadcasting Company admits the allegations in Paragraph 35 of the Complaint. Paragraph 35 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

36. Fox News Network, LLC admits the allegation in Paragraph 36 of the Complaint that it is a limited liability company organized under the laws of the State of Delaware. Fox News Network, LLC denies the remaining allegations in Paragraph 36 of the Complaint. Paragraph 36 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

37. Fox Cable Networks, Inc. admits the allegation in Paragraph 37 of the Complaint that it is a corporation organized under the laws of the State of Delaware. Fox Cable Networks, Inc. denies the remaining allegations in Paragraph 37 of the Complaint. Paragraph 37 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

38. MyNetworkTV, Inc. admits the allegations in Paragraph 38 of the Complaint. Paragraph 38 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

39. Fox Movie Channel, Inc. admits the allegations in Paragraph 39 of the Complaint. Paragraph 39 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

40. Fox Interactive Media, Inc. admits the allegation in Paragraph 40 of the Complaint that it is a corporation organized under the laws of the State of Delaware. Fox Interactive Media, Inc. denies the remaining allegations in Paragraph 40 of the Complaint. Paragraph 40 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

41. FX Networks, LLC admits the allegations in Paragraph 41 of the Complaint. Paragraph 41 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

42. NGC Network US, LLC admits the allegation in Paragraph 42 of the Complaint that it is a limited liability company organized under the laws of the State of Delaware. NGC Network US, LLC denies the remaining allegations in Paragraph 42 of the Complaint. Paragraph 42 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

43. NGHT, LLC admits the allegations in Paragraph 43 of the Complaint. Paragraph 43 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

[*Paragraphs 44 and 45 were intentionally left blank in MPT's Complaint.*]

46. Paragraph 46 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

47. Paragraph 47 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

48. Paragraph 48 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

49. Paragraph 49 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

4

la-1095446

50. Paragraph 50 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

51. Paragraph 51 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

52. Paragraph 52 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

53. Paragraph 53 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

54. Paragraph 54 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

55. Paragraph 55 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

56. Paragraph 56 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

## JURISDICTION AND VENUE

57. The Fox Defendants admit that this is a civil action for alleged patent infringement arising under the United States Patent Act, 35 U.S.C. § 1 et seq.

58. The Fox Defendants admit that this Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

[*Paragraph 59 was intentionally left blank in MPT's Complaint.*]

60. Paragraph 60 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

61. Paragraph 61 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

62. Paragraph 62 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

63. Paragraph 63 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

64.     The Fox Defendants admit that they are subject to this Court's personal jurisdiction solely for the limited purposes of this lawsuit.  Fox Entertainment Group, Inc.; Twentieth Century Fox Film Corp.; Twentieth Century Fox Home Entertainment LLC; Fox Searchlight Pictures, Inc.; Fox Television Studios, Inc.; Fox Broadcasting Company; Fox Cable Networks, Inc.; MyNetworkTV, Inc.; Fox Movie Channel, Inc.; Fox Interactive Media, Inc.; FX Networks, LLC; NGC Network US, LLC; Fox Television Stations, Inc.; Blue Sky Studios, Inc.; and Fox News Network, LLC each admits that it has designated an agent for service of process in California.  NGHT, LLC denies that it has designated an agent for service of process in California.  MPT's allegations against defendants other than each Fox Defendant in Paragraph 64 of the Complaint do not require a response by that Fox Defendant.

[*Paragraph 65 was intentionally left blank in MPT's Complaint.*]

66.     Paragraph 66 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

67.     Paragraph 67 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

68.     The Fox Defendants admit that venue is proper in this judicial district without waiver of or prejudice to any future motion to transfer this case to a more convenient and just venue pursuant to 18 U.S.C. § 1404(a).

## BACKGROUND FACTS & PATENTS-IN-SUIT

69.     Paragraph 69 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

70.     Paragraph 70 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

71.     Paragraph 71 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

72.     Paragraph 72 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

la-1095446

73. Paragraph 73 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

74. The Fox Defendants admit that a copy of U.S. Patent No. 4,958,226 ("the '226 Patent") and its Reexamination Certificate were attached as Exhibit A to the Complaint. The Fox Defendants admit that the '226 Patent states on its face that: (a) it is entitled "Conditional Motion Compensated Interpolation of Digital Motion Video"; (b) it was issued on September 18, 1990; and (c) Barin Haskell and Atul Puri are named as inventors. The Fox Defendants deny that the '226 Patent was duly and legally issued. The Fox Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 74 of the Complaint, and therefore deny them.

75. The Fox Defendants admit that a copy of U.S. Patent No. 5,227,878 ("the '878 Patent") and its Certificate of Correction were attached as Exhibit B to the Complaint. The Fox Defendants admit that the '878 Patent states on its face that: (a) it is entitled "Adaptive Coding and Decoding of Frames and Fields of Video"; (b) it was issued on July 13, 1990; and (c) Atul Puri and Rangarajan Aravind are named as inventors. The Fox Defendants admit that the Certificate of Correction to the '878 Patent is dated October 25, 2005 on its face. The Fox Defendants deny that the '878 Patent was duly and legally issued. The Fox Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 75 of the Complaint, and therefore deny them.

76. The Fox Defendants admit that a copy of U.S. Patent No. 5,550,678 ("the '678 Patent") and its Certificate of Correction were attached as Exhibit C to the Complaint. The Fox Defendants admit that the '878 Patent states on its face that: (a) it is entitled "Optimized Scanning of Transform Coefficients in Video Coding"; (b) it was issued on March 19, 1996; and (c) Atul Puri is named as inventor. The Fox Defendants admit that the Certificate of Correction to the '678 Patent is dated May 29, 2007 on its face. The Fox Defendants deny that the '678 Patent was duly and legally issued. The Fox Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 76 of the Complaint, and therefore deny them.

77.     The Fox Defendants admit that a copy of U.S. Patent No. 5,136,377 ("the '377 Patent") was attached as Exhibit D to the Complaint.  The Fox Defendants admit that the '377 Patent states on its face that: (a) it is entitled "Adaptive Non-Linear Quantizer"; (b) it was issued on August 4, 1992; and (c) James D. Johnston, et al. are named as inventors.  The Fox Defendants deny that the '377 Patent was duly and legally issued.  The Fox Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 77 of the Complaint, and therefore deny them.

78.     The Fox Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 78 of the Complaint, and therefore deny them.

79.     The Fox Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 79 of the Complaint, and therefore deny them.

[*COUNT I and Paragraphs 80 through 160 were intentionally omitted in MPT's Complaint.*]

## COUNT II

### (PATENT INFRINGEMENT BY THE NBC DEFENDANTS)

161.     The Fox Defendants incorporate by reference their responses to the allegations of Paragraphs 1-160 of the Complaint as if fully set forth herein.

**NBC Universal, Inc.**

162.     Paragraph 162 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

163.     Paragraph 163 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

164.     Paragraph 164 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

165.     Paragraph 165 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

1    166.    Paragraph 166 does not require a response by the Fox Defendants because it does
2    not contain an allegation asserted against the Fox Defendants.

3    167.    Paragraph 167 does not require a response by the Fox Defendants because it does
4    not contain an allegation asserted against the Fox Defendants.

5    168.    Paragraph 168 does not require a response by the Fox Defendants because it does
6    not contain an allegation asserted against the Fox Defendants.

7    169.    Paragraph 169 does not require a response by the Fox Defendants because it does
8    not contain an allegation asserted against the Fox Defendants.

9    170.    Paragraph 170 does not require a response by the Fox Defendants because it does
10   not contain an allegation asserted against the Fox Defendants.

11   171.    Paragraph 171 does not require a response by the Fox Defendants because it does
12   not contain an allegation asserted against the Fox Defendants.

13   172.    Paragraph 172 does not require a response by the Fox Defendants because it does
14   not contain an allegation asserted against the Fox Defendants.

15   173.    Paragraph 173 does not require a response by the Fox Defendants because it does
16   not contain an allegation asserted against the Fox Defendants.

17   174.    Paragraph 174 does not require a response by the Fox Defendants because it does
18   not contain an allegation asserted against the Fox Defendants.

19   175.    Paragraph 175 does not require a response by the Fox Defendants because it does
20   not contain an allegation asserted against the Fox Defendants.

21   176.    Paragraph 176 does not require a response by the Fox Defendants because it does
22   not contain an allegation asserted against the Fox Defendants.

23   **Bravo Media LLC**

24   177.    Paragraph 177 does not require a response by the Fox Defendants because it does
25   not contain an allegation asserted against the Fox Defendants.

26   178.    Paragraph 178 does not require a response by the Fox Defendants because it does
27   not contain an allegation asserted against the Fox Defendants.

28

1   179.   Paragraph 179 does not require a response by the Fox Defendants because it does
2   not contain an allegation asserted against the Fox Defendants.

3   180.   Paragraph 180 does not require a response by the Fox Defendants because it does
4   not contain an allegation asserted against the Fox Defendants.

5   181.   Paragraph 181 does not require a response by the Fox Defendants because it does
6   not contain an allegation asserted against the Fox Defendants.

7   **CNBC, Inc.**

8   182.   Paragraph 182 does not require a response by the Fox Defendants because it does
9   not contain an allegation asserted against the Fox Defendants.

10  183.   Paragraph 183 does not require a response by the Fox Defendants because it does
11  not contain an allegation asserted against the Fox Defendants.

12  184.   Paragraph 184 does not require a response by the Fox Defendants because it does
13  not contain an allegation asserted against the Fox Defendants.

14  185.   Paragraph 185 does not require a response by the Fox Defendants because it does
15  not contain an allegation asserted against the Fox Defendants.

16  186.   Paragraph 186 does not require a response by the Fox Defendants because it does
17  not contain an allegation asserted against the Fox Defendants.

18  187.   Paragraph 187 does not require a response by the Fox Defendants because it does
19  not contain an allegation asserted against the Fox Defendants.

20  188.   Paragraph 188 does not require a response by the Fox Defendants because it does
21  not contain an allegation asserted against the Fox Defendants.

22  **MSNBC Cable LLC**

23  189.   Paragraph 189 does not require a response by the Fox Defendants because it does
24  not contain an allegation asserted against the Fox Defendants.

25  190.   Paragraph 190 does not require a response by the Fox Defendants because it does
26  not contain an allegation asserted against the Fox Defendants.

27  191.   Paragraph 191 does not require a response by the Fox Defendants because it does
28  not contain an allegation asserted against the Fox Defendants.

10

1    192.    Paragraph 192 does not require a response by the Fox Defendants because it does
2    not contain an allegation asserted against the Fox Defendants.

3    193.    Paragraph 193 does not require a response by the Fox Defendants because it does
4    not contain an allegation asserted against the Fox Defendants.

5    194.    Paragraph 194 does not require a response by the Fox Defendants because it does
6    not contain an allegation asserted against the Fox Defendants.

7    195.    Paragraph 195 does not require a response by the Fox Defendants because it does
8    not contain an allegation asserted against the Fox Defendants.

9    **Oxygen Media, LLC**

10    196.    Paragraph 196 does not require a response by the Fox Defendants because it does
11    not contain an allegation asserted against the Fox Defendants.

12    197.    Paragraph 197 does not require a response by the Fox Defendants because it does
13    not contain an allegation asserted against the Fox Defendants.

14    198.    Paragraph 198 does not require a response by the Fox Defendants because it does
15    not contain an allegation asserted against the Fox Defendants.

16    199.    Paragraph 199 does not require a response by the Fox Defendants because it does
17    not contain an allegation asserted against the Fox Defendants.

18    200.    Paragraph 200 does not require a response by the Fox Defendants because it does
19    not contain an allegation asserted against the Fox Defendants.

20    201.    Paragraph 201 does not require a response by the Fox Defendants because it does
21    not contain an allegation asserted against the Fox Defendants.

22    **Universal City Studios LLLP**

23    202.    Paragraph 202 does not require a response by the Fox Defendants because it does
24    not contain an allegation asserted against the Fox Defendants.

25    203.    Paragraph 203 does not require a response by the Fox Defendants because it does
26    not contain an allegation asserted against the Fox Defendants.

27    204.    Paragraph 204 does not require a response by the Fox Defendants because it does
28    not contain an allegation asserted against the Fox Defendants.

11

1       205.    Paragraph 205 does not require a response by the Fox Defendants because it does

2  not contain an allegation asserted against the Fox Defendants.

3  [*Paragraphs 206 through 210 were intentionally omitted in MPT's Complaint.*]

4  **USA Cable Entertainment LLC**

5       211.    Paragraph 211 does not require a response by the Fox Defendants because it does

6  not contain an allegation asserted against the Fox Defendants.

7       212.    Paragraph 212 does not require a response by the Fox Defendants because it does

8  not contain an allegation asserted against the Fox Defendants.

9       213.    Paragraph 213 does not require a response by the Fox Defendants because it does

10  not contain an allegation asserted against the Fox Defendants.

11       214.    Paragraph 214 does not require a response by the Fox Defendants because it does

12  not contain an allegation asserted against the Fox Defendants.

13       215.    Paragraph 215 does not require a response by the Fox Defendants because it does

14  not contain an allegation asserted against the Fox Defendants.

15       216.    Paragraph 216 does not require a response by the Fox Defendants because it does

16  not contain an allegation asserted against the Fox Defendants.

17       217.    Paragraph 217 does not require a response by the Fox Defendants because it does

18  not contain an allegation asserted against the Fox Defendants.

19  **Universal Studios Home Entertainment LLC**

20       218.    Paragraph 218 does not require a response by the Fox Defendants because it does

21  not contain an allegation asserted against the Fox Defendants.

22       219.    Paragraph 219 does not require a response by the Fox Defendants because it does

23  not contain an allegation asserted against the Fox Defendants.

24       220.    Paragraph 220 does not require a response by the Fox Defendants because it does

25  not contain an allegation asserted against the Fox Defendants.

26       221.    Paragraph 221 does not require a response by the Fox Defendants because it does

27  not contain an allegation asserted against the Fox Defendants.

28

FOX DEFENDANTS' ANSWER AND COUNTERCLAIM
CASE NO. 10 CV 0146 JAH (CAB)

la-1095446

222. Paragraph 222 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

223. Paragraph 223 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

[*Paragraphs 224 through 227 were intentionally omitted in MPT's Complaint.*]

**Focus Features LLC**

228. Paragraph 228 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

229. Paragraph 229 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

230. Paragraph 230 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

231. Paragraph 231 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

232. Paragraph 232 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

[*Paragraphs 233 through 240 were intentionally omitted in MPT's Complaint.*]

## COUNT III

### (PATENT INFRINGEMENT BY HULU, LLC)

241. The Fox Defendants incorporate by reference their responses to the allegations of Paragraphs 1-240 of the Complaint as if fully set forth herein.

242. Paragraph 242 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

243. Paragraph 243 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

244. Paragraph 244 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

la-1095446

245.     Paragraph 245 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

## COUNT IV

### (PATENT INFRINGEMENT BY THE WEATHER CHANNEL, INC.)

246.     The Fox Defendants incorporate by reference their responses to the allegations of Paragraphs 1-245 of the Complaint as if fully set forth herein.

247.     Paragraph 247 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

248.     Paragraph 248 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

249.     Paragraph 249 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

250.     Paragraph 250 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

251.     Paragraph 251 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

252.     Paragraph 252 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

253.     Paragraph 253 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

## COUNT V

### (PATENT INFRINGEMENT BY AUDIOVOX)

254.     The Fox Defendants incorporate by reference their responses to the allegations of Paragraphs 1-253 of the Complaint as if fully set forth herein.

255.     Paragraph 255 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

256.     Paragraph 256 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

257.    Paragraph 257 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

258.    Paragraph 258 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

259.    Paragraph 259 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

260.    Paragraph 260 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

261.    Paragraph 261 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

262.    Paragraph 262 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

**COUNT VI**

**(PATENT INFRINGEMENT BY THE FOX DEFENDANTS)**

263.    The Fox Defendants incorporate by reference their responses to the allegations of Paragraphs 1-262 of the Complaint as if fully set forth herein.

**Fox Entertainment Group, Inc.**

264.    Fox Entertainment Group, Inc. denies the allegations in Paragraph 264 of the Complaint.  Paragraph 264 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

265.    Fox Entertainment Group, Inc. denies the allegations in Paragraph 265 of the Complaint.  Paragraph 265 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

266.    Fox Entertainment Group, Inc. denies the allegations in Paragraph 266 of the Complaint.  Paragraph 266 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

267.     Fox Entertainment Group, Inc. denies the allegations in Paragraph 267 of the Complaint.  Paragraph 267 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

268.     Fox Entertainment Group, Inc. denies the allegations in Paragraph 268 of the Complaint.  Paragraph 268 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

269.     Fox Entertainment Group, Inc. denies the allegations in Paragraph 269 of the Complaint.  Paragraph 269 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

270.     Fox Entertainment Group, Inc. denies the allegations in Paragraph 270 of the Complaint.  Paragraph 270 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

271.     Fox Entertainment Group, Inc. denies the allegations in Paragraph 271 of the Complaint.  Paragraph 271 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

272.     Fox Entertainment Group, Inc. denies the allegations in Paragraph 272 of the Complaint.  Paragraph 272 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

273.     Fox Entertainment Group, Inc. denies the allegations in Paragraph 273 of the Complaint.  Paragraph 273 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

274.     Fox Entertainment Group, Inc. denies the allegations in Paragraph 274 of the Complaint.  Paragraph 274 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

275.     Fox Entertainment Group, Inc. denies the allegations in Paragraph 275 of the Complaint.  Paragraph 275 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

276. Fox Entertainment Group, Inc. denies the allegations in Paragraph 276 of the Complaint. Paragraph 276 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

277. Fox Entertainment Group, Inc. admits that it was aware of the existence of the '377, '678, '226, and '878 Patents no later than on or about October 9, 2008. Fox Entertainment Group, Inc. admits that it received a letter from MPT dated October 9, 2008, which speaks for itself. Fox Entertainment Group, Inc. denies the remaining allegations in Paragraph 277 of the Complaint. Paragraph 277 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

278. Fox Entertainment Group, Inc. denies the allegations in Paragraph 278 of the Complaint. Paragraph 278 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

**Twentieth Century Fox Film Corp.**

279. Twentieth Century Fox Film Corp. denies the allegations in Paragraph 279 of the Complaint. Paragraph 279 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

280. Twentieth Century Fox Film Corp. denies the allegations in Paragraph 280 of the Complaint. Paragraph 280 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

281. Twentieth Century Fox Film Corp. denies the allegations in Paragraph 281 of the Complaint. Paragraph 281 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

282. Twentieth Century Fox Film Corp. denies the allegations in Paragraph 282 of the Complaint. Paragraph 282 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

283. Twentieth Century Fox Film Corp. admits that it was aware of the existence of the '377, '678, '226, and '878 Patents no later than on or about October 9, 2008. Twentieth Century Fox Film Corp. admits that it received a letter from MPT dated October 9, 2008, which speaks for

1   itself. Twentieth Century Fox Film Corp. denies the remaining allegations in Paragraph 283 of

2   the Complaint. Paragraph 283 does not require a response by the remaining Fox Defendants

3   because it does not contain an allegation asserted against the remaining Fox Defendants.

4       284.    Twentieth Century Fox Film Corp. denies the allegations in Paragraph 284 of the

5   Complaint. Paragraph 284 does not require a response by the remaining Fox Defendants because

6   it does not contain an allegation asserted against the remaining Fox Defendants.

7   **Twentieth Century Fox Home Entertainment LLC**

8       285.    Twentieth Century Fox Home Entertainment LLC denies the allegations in

9   Paragraph 285 of the Complaint. Paragraph 285 does not require a response by the remaining

10  Fox Defendants because it does not contain an allegation asserted against the remaining Fox

11  Defendants.

12      286.    Twentieth Century Fox Home Entertainment LLC denies the allegations in

13  Paragraph 286 of the Complaint. Paragraph 286 does not require a response by the remaining

14  Fox Defendants because it does not contain an allegation asserted against the remaining Fox

15  Defendants.

16      287.    Twentieth Century Fox Home Entertainment LLC denies the allegations in

17  Paragraph 287 of the Complaint. Paragraph 287 does not require a response by the remaining

18  Fox Defendants because it does not contain an allegation asserted against the remaining Fox

19  Defendants.

20      288.    Twentieth Century Fox Home Entertainment LLC denies the allegations in

21  Paragraph 288 of the Complaint. Paragraph 288 does not require a response by the remaining

22  Fox Defendants because it does not contain an allegation asserted against the remaining Fox

23  Defendants.

24      289.    Twentieth Century Fox Home Entertainment LLC admits that it was aware of the

25  existence of the '377, '678, '226, and '878 Patents no later than on or about October 9, 2008.

26  Twentieth Century Fox Home Entertainment LLC admits that it received a letter from MPT dated

27  October 9, 2008, which speaks for itself. Twentieth Century Fox Home Entertainment LLC

28  denies the remaining allegations in Paragraph 289 of the Complaint. Paragraph 289 does not

require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

290.    Twentieth Century Fox Home Entertainment LLC denies the allegations in Paragraph 290 of the Complaint. Paragraph 290 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

**Fox Searchlight Pictures, Inc.**

291.    Fox Searchlight Pictures, Inc. denies the allegations in Paragraph 291 of the Complaint. Paragraph 291 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

292.    Fox Searchlight Pictures, Inc. denies the allegations in Paragraph 292 of the Complaint. Paragraph 292 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

293.    Fox Searchlight Pictures, Inc. denies the allegations in Paragraph 293 of the Complaint. Paragraph 293 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

294.    Fox Searchlight Pictures, Inc. denies the allegations in Paragraph 294 of the Complaint. Paragraph 294 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

295.    Fox Searchlight Pictures, Inc. admits that it was aware of the existence of the '377, '678, '226, and '878 Patents no later than on or about October 9, 2008. Fox Searchlight Pictures, Inc. denies the remaining allegations in Paragraph 295 of the Complaint. Paragraph 295 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

296.    Fox Searchlight Pictures, Inc. denies the allegations in Paragraph 296 of the Complaint. Paragraph 296 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

**Fox Television Stations, Inc.**

297.    Fox Television Stations, Inc. denies the allegations in Paragraph 297 of the Complaint.  Paragraph 297 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

298.    Fox Television Stations, Inc. denies the allegations in Paragraph 298 of the Complaint.  Paragraph 298 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

299.    Fox Television Stations, Inc. denies the allegations in Paragraph 299 of the Complaint.  Paragraph 299 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

300.    Fox Television Stations, Inc. denies the allegations in Paragraph 300 of the Complaint.  Paragraph 300 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

301.    Fox Television Stations, Inc. admits that it was aware of the existence of the '377, '678, '226, and '878 Patents no later than on or about October 9, 2008.  Fox Television Stations, Inc. admits that it received a letter from MPT dated October 9, 2008, which speaks for itself.  Fox Television Stations, Inc. denies the remaining allegations in Paragraph 301 of the Complaint.  Paragraph 301 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

302.    Fox Television Stations, Inc. denies the allegations in Paragraph 302 of the Complaint.  Paragraph 302 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

**Fox Television Studios, Inc.**

303.    Fox Television Studios, Inc. denies the allegations in Paragraph 303 of the Complaint.  Paragraph 303 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

304. Fox Television Studios, Inc. denies the allegations in Paragraph 304 of the Complaint. Paragraph 304 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

305. Fox Television Studios, Inc. admits that it was aware of the existence of the '377, '678, '226, and '878 Patents no later than on or about October 9, 2008. Fox Television Studios, Inc. admits that it received a letter from MPT dated October 9, 2008, which speaks for itself. Fox Television Studios, Inc. denies the remaining allegations in Paragraph 305 of the Complaint. Paragraph 305 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

306. Fox Television Studios, Inc. denies the allegations in Paragraph 306 of the Complaint. Paragraph 306 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

**Blue Sky Studios, Inc.**

307. Blue Sky Studios, Inc. denies the allegations in Paragraph 307 of the Complaint. Paragraph 307 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

308. Blue Sky Studios, Inc. denies the allegations in Paragraph 308 of the Complaint. Paragraph 308 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

309. Blue Sky Studios, Inc. denies the allegations in Paragraph 309 of the Complaint. Paragraph 309 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

310. Blue Sky Studios, Inc. admits that it was aware of the existence of the '377, '678, '226, and '878 Patents no later than on or about October 9, 2008. Blue Sky Studios, Inc. denies the remaining allegations in Paragraph 310 of the Complaint. Paragraph 310 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

FOX DEFENDANTS' ANSWER AND COUNTERCLAIM
CASE NO. 10 CV 0146 JAH (CAB)

la-1095446

311. Blue Sky Studios, Inc. denies the allegations in Paragraph 311 of the Complaint. Paragraph 311 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

**Fox Broadcasting Company**

312. Fox Broadcasting Company denies the allegations in Paragraph 312 of the Complaint. Paragraph 312 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

313. Fox Broadcasting Company denies the allegations in Paragraph 313 of the Complaint. Paragraph 313 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

314. Fox Broadcasting Company denies the allegations in Paragraph 314 of the Complaint. Paragraph 314 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

315. Fox Broadcasting Company denies the allegations in Paragraph 315 of the Complaint. Paragraph 315 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

316. Fox Broadcasting Company denies the allegations in Paragraph 316 of the Complaint. Paragraph 316 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

317. Fox Broadcasting Company denies the allegations in Paragraph 317 of the Complaint. Paragraph 317 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

318. Fox Broadcasting Company admits that it was aware of the existence of the '377, '678, '226, and '878 Patents no later than on or about October 9, 2008. Fox Broadcasting Company admits that it received a letter from MPT dated October 9, 2008, which speaks for itself. Fox Broadcasting Company denies the remaining allegations in Paragraph 318 of the Complaint. Paragraph 318 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

22

319. Fox Broadcasting Company denies the allegations in Paragraph 319 of the Complaint. Paragraph 319 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

**Fox News Network, LLC**

320. Fox News Network, LLC denies the allegations in Paragraph 320 of the Complaint. Paragraph 320 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

321. Fox News Network, LLC denies the allegations in Paragraph 321 of the Complaint. Paragraph 321 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

322. Fox News Network, LLC denies the allegations in Paragraph 322 of the Complaint. Paragraph 322 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

323. Fox News Network, LLC denies the allegations in Paragraph 323 of the Complaint. Paragraph 323 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

324. Fox News Network, LLC denies the allegations in Paragraph 324 of the Complaint. Paragraph 324 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

325. Fox News Network, LLC admits that it was aware of the existence of the '377, '678, '226, and '878 Patents no later than on or about October 9, 2008. Fox News Network, LLC denies the remaining allegations in Paragraph 325 of the Complaint. Paragraph 325 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

326. Fox News Network, LLC denies the allegations in Paragraph 326 of the Complaint. Paragraph 326 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

FOX DEFENDANTS' ANSWER AND COUNTERCLAIM
CASE NO. 10 CV 0146 JAH (CAB)

**Fox Cable Networks, Inc.**

327.    Fox Cable Networks, Inc. denies the allegations in Paragraph 327 of the Complaint.  Paragraph 327 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

328.    Fox Cable Networks, Inc. denies the allegations in Paragraph 328 of the Complaint.  Paragraph 328 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

329.    Fox Cable Networks, Inc. denies the allegations in Paragraph 329 of the Complaint.  Paragraph 329 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

330.    Fox Cable Networks, Inc. denies the allegations in Paragraph 330 of the Complaint.  Paragraph 330 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

331.    Fox Cable Networks, Inc. denies the allegations in Paragraph 331 of the Complaint.  Paragraph 331 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

332.    Fox Cable Networks, Inc. admits that it was aware of the existence of the '377, '678, '226, and '878 Patents no later than on or about October 9, 2008.  Fox Cable Networks, Inc. admits that it received a letter from MPT dated October 9, 2008, which speaks for itself.  Fox Cable Networks, Inc. denies the remaining allegations in Paragraph 332 of the Complaint. Paragraph 332 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

333.    Fox Cable Networks, Inc. denies the allegations in Paragraph 333 of the Complaint.  Paragraph 333 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

**MyNetworkTV, Inc.**

334. MyNetworkTV, Inc. denies the allegations in Paragraph 334 of the Complaint. Paragraph 334 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

335. MyNetworkTV, Inc. denies the allegations in Paragraph 335 of the Complaint. Paragraph 335 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

336. MyNetworkTV, Inc. denies the allegations in Paragraph 336 of the Complaint. Paragraph 336 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

337. MyNetworkTV, Inc. admits that it was aware of the existence of the '377, '678, '226, and '878 Patents no later than on or about October 9, 2008. MyNetworkTV, Inc. admits that it received a letter from MPT dated October 9, 2008, which speaks for itself. MyNetworkTV, Inc. denies the remaining allegations in Paragraph 337 of the Complaint. Paragraph 337 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

**Fox Movie Channel, Inc.**

338. Fox Movie Channel, Inc. denies the allegations in Paragraph 338 of the Complaint. Paragraph 338 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

339. Fox Movie Channel, Inc. denies the allegations in Paragraph 339 of the Complaint. Paragraph 339 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

340. Fox Movie Channel, Inc. denies the allegations in Paragraph 340 of the Complaint. Paragraph 340 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

341. Fox Movie Channel, Inc. denies the allegations in Paragraph 341 of the Complaint. Paragraph 341 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

342. Fox Movie Channel, Inc. admits that it was aware of the existence of the '377, '678, '226, and '878 Patents no later than on or about October 9, 2008. Fox Movie Channel, Inc. denies the remaining allegations in Paragraph 342 of the Complaint. Paragraph 342 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

343. Fox Movie Channel, Inc. denies the allegations in Paragraph 343 of the Complaint. Paragraph 343 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

**Fox Interactive Media, Inc. (d/b/a News Corporation Digital Media Group)**

344. Fox Interactive Media, Inc. denies the allegations in Paragraph 344 of the Complaint. Paragraph 344 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

345. Fox Interactive Media, Inc. denies the allegations in Paragraph 345 of the Complaint. Paragraph 345 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

346. Fox Interactive Media, Inc. admits that it was aware of the existence of the '377, '678, '226, and '878 Patents no later than on or about October 9, 2008. Fox Interactive Media, Inc. admits that it received a letter from MPT dated October 9, 2008, which speaks for itself. Fox Interactive Media, Inc. denies the remaining allegations in Paragraph 346 of the Complaint. Paragraph 346 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

347. Fox Interactive Media, Inc. denies the allegations in Paragraph 347 of the Complaint. Paragraph 347 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

la-1095446

**FX Networks, LLC**

348. FX Networks, LLC denies the allegations in Paragraph 348 of the Complaint. Paragraph 348 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

349. FX Networks, LLC denies the allegations in Paragraph 349 of the Complaint. Paragraph 349 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

350. FX Networks, LLC denies the allegations in Paragraph 350 of the Complaint. Paragraph 350 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

351. FX Networks, LLC denies the allegations in Paragraph 351 of the Complaint. Paragraph 351 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

352. FX Networks, LLC admits that it was aware of the existence of the '377, '678, '226, and '878 Patents no later than on or about October 9, 2008. FX Networks, LLC denies the remaining allegations in Paragraph 352 of the Complaint. Paragraph 352 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

353. FX Networks, LLC denies the allegations in Paragraph 353 of the Complaint. Paragraph 353 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

**NGC Network US, LLC**

354. NGC Network US, LLC denies the allegations in Paragraph 354 of the Complaint. Paragraph 354 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

355. NGC Network US, LLC denies the allegations in Paragraph 355 of the Complaint. Paragraph 355 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

356. NGC Network US, LLC denies the allegations in Paragraph 356 of the Complaint. Paragraph 356 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

357. NGC Network US, LLC denies the allegations in Paragraph 357 of the Complaint. Paragraph 357 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

358. NGC Network US, LLC denies the allegations in Paragraph 358 of the Complaint. Paragraph 358 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

359. NGC Network US, LLC denies the allegations in Paragraph 359 of the Complaint. Paragraph 359 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

360. NGC Network US, LLC denies the allegations in Paragraph 360 of the Complaint. Paragraph 360 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

361. NGC Network US, LLC admits that it was aware of the existence of the '377, '678, '226, and '878 Patents no later than on or about October 9, 2008. NGC Network US, LLC denies the remaining allegations in Paragraph 361 of the Complaint. Paragraph 361 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

362. NGC Network US, LLC denies the allegations in Paragraph 362 of the Complaint. Paragraph 362 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

**NGHT, LLC**

363. NGHT, LLC denies the allegations in Paragraph 363 of the Complaint. Paragraph 363 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

364.     NGHT, LLC denies the allegations in Paragraph 364 of the Complaint.  Paragraph 364 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

365.     NGHT, LLC denies the allegations in Paragraph 365 of the Complaint.  Paragraph 365 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

366.     NGHT, LLC denies the allegations in Paragraph 366 of the Complaint.  Paragraph 366 does not require a response by the remaining Fox Defendants because it does not contain an allegation asserted against the remaining Fox Defendants.

[*Count VII and Paragraphs 367 through 379 were intentionally omitted in MPT's Complaint.*]

## COUNT VIII

## (PATENT INFRINGEMENT BY THE WARNER BROS. DEFENDANTS)

380.     The Fox Defendants incorporate by reference their responses to the allegations of Paragraphs 1-379 of the Complaint as if fully set forth herein.

**Warner Bros. Entertainment Inc.**

381.     Paragraph 381 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

382.     Paragraph 382 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

383.     Paragraph 383 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

384.     Paragraph 384 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

385.     Paragraph 385 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

386.     Paragraph 386 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

la-1095446

387. Paragraph 387 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

388. Paragraph 388 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

389. Paragraph 389 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

**Warner Bros. Television Distribution Inc. (a/k/a Warner Bros. Television Group)**

390. Paragraph 390 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

391. Paragraph 391 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

392. Paragraph 392 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

393. Paragraph 393 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

394. Paragraph 394 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

395. Paragraph 395 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

**Warner Bros. Animation Inc.**

396. Paragraph 396 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

397. Paragraph 397 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

398. Paragraph 398 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

399. Paragraph 399 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

1    400.    Paragraph 400 does not require a response by the Fox Defendants because it does

2    not contain an allegation asserted against the Fox Defendants.

3    **New Line Cinema LLC**

4    401.    Paragraph 401 does not require a response by the Fox Defendants because it does

5    not contain an allegation asserted against the Fox Defendants.

6    402.    Paragraph 402 does not require a response by the Fox Defendants because it does

7    not contain an allegation asserted against the Fox Defendants.

8    403.    Paragraph 403 does not require a response by the Fox Defendants because it does

9    not contain an allegation asserted against the Fox Defendants.

10   404.    Paragraph 404 does not require a response by the Fox Defendants because it does

11   not contain an allegation asserted against the Fox Defendants.

12   405.    Paragraph 405 does not require a response by the Fox Defendants because it does

13   not contain an allegation asserted against the Fox Defendants.

14   406.    Paragraph 406 does not require a response by the Fox Defendants because it does

15   not contain an allegation asserted against the Fox Defendants.

16   407.    Paragraph 407 does not require a response by the Fox Defendants because it does

17   not contain an allegation asserted against the Fox Defendants.

18   408.    Paragraph 408 does not require a response by the Fox Defendants because it does

19   not contain an allegation asserted against the Fox Defendants.

20   409.    Paragraph 409 does not require a response by the Fox Defendants because it does

21   not contain an allegation asserted against the Fox Defendants.

22   **New Line Home Entertainment, Inc.**

23   410.    Paragraph 410 does not require a response by the Fox Defendants because it does

24   not contain an allegation asserted against the Fox Defendants.

25   411.    Paragraph 411 does not require a response by the Fox Defendants because it does

26   not contain an allegation asserted against the Fox Defendants.

27   412.    Paragraph 412 does not require a response by the Fox Defendants because it does

28   not contain an allegation asserted against the Fox Defendants.

31

413. Paragraph 413 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

414. Paragraph 414 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

415. Paragraph 415 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

**Turner Broadcasting System, Inc.**

416. Paragraph 416 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

417. Paragraph 417 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

418. Paragraph 418 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

419. Paragraph 419 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

420. Paragraph 420 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

421. Paragraph 421 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

422. Paragraph 422 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

**Turner Network Television, Inc.**

423. Paragraph 423 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

424. Paragraph 424 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

425. Paragraph 425 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

FOX DEFENDANTS' ANSWER AND COUNTERCLAIM
CASE NO. 10 CV 0146 JAH (CAB)

la-1095446

1    426.    Paragraph 426 does not require a response by the Fox Defendants because it does

2    not contain an allegation asserted against the Fox Defendants.

3    427.    Paragraph 427 does not require a response by the Fox Defendants because it does

4    not contain an allegation asserted against the Fox Defendants.

5    428.    Paragraph 428 does not require a response by the Fox Defendants because it does

6    not contain an allegation asserted against the Fox Defendants.

7    429.    Paragraph 429 does not require a response by the Fox Defendants because it does

8    not contain an allegation asserted against the Fox Defendants.

9    **Cable News Network, Inc.**

10    430.    Paragraph 430 does not require a response by the Fox Defendants because it does

11    not contain an allegation asserted against the Fox Defendants.

12    431.    Paragraph 431 does not require a response by the Fox Defendants because it does

13    not contain an allegation asserted against the Fox Defendants.

14    432.    Paragraph 432 does not require a response by the Fox Defendants because it does

15    not contain an allegation asserted against the Fox Defendants.

16    433.    Paragraph 433 does not require a response by the Fox Defendants because it does

17    not contain an allegation asserted against the Fox Defendants.

18    434.    Paragraph 434 does not require a response by the Fox Defendants because it does

19    not contain an allegation asserted against the Fox Defendants.

20    435.    Paragraph 435 does not require a response by the Fox Defendants because it does

21    not contain an allegation asserted against the Fox Defendants.

22    436.    Paragraph 436 does not require a response by the Fox Defendants because it does

23    not contain an allegation asserted against the Fox Defendants.

24    **The Cartoon Network, Inc.**

25    437.    Paragraph 437 does not require a response by the Fox Defendants because it does

26    not contain an allegation asserted against the Fox Defendants.

27    438.    Paragraph 438 does not require a response by the Fox Defendants because it does

28    not contain an allegation asserted against the Fox Defendants.

FOX DEFENDANTS' ANSWER AND COUNTERCLAIM
CASE NO. 10 CV 0146 JAH (CAB)

439.    Paragraph 439 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

440.    Paragraph 440 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

441.    Paragraph 441 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

**Home Box Office, Inc.**

442.    Paragraph 442 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

443.    Paragraph 443 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

444.    Paragraph 444 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

445.    Paragraph 445 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

446.    Paragraph 446 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

447.    Paragraph 447 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

448.    Paragraph 448 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

449.    Paragraph 449 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

450.    Paragraph 450 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

451.    Paragraph 451 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

FOX DEFENDANTS' ANSWER AND COUNTERCLAIM
CASE NO. 10 CV 0146 JAH (CAB)

la-1095446

452.     Paragraph 452 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

453.     Paragraph 453 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

454.     Paragraph 454 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

455.     Paragraph 455 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

## COUNT IX

## (PATENT INFRINGEMENT BY ARVATO)

456.     The Fox Defendants incorporate by reference their responses to the allegations of Paragraphs 1-455 of the Complaint as if fully set forth herein.

457.     Paragraph 457 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

458.     Paragraph 458 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

459.     Paragraph 459 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

460.     Paragraph 460 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

461.     Paragraph 461 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

462.     Paragraph 462 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

463.     Paragraph 463 does not require a response by the Fox Defendants because it does not contain an allegation asserted against the Fox Defendants.

## ADDITIONAL DEFENSES

FOX DEFENDANTS' ANSWER AND COUNTERCLAIM
CASE NO. 10 CV 0146 JAH (CAB)

la-1095446

464.     By way of further answer, the Fox Defendants state the following defenses.  By stating these defenses, the Fox Defendants do not assume any burden of proof for any stated defense or waive any unstated defenses.  The Fox Defendants expressly reserve the right to allege and assert further additional defenses.

## FIRST ADDITIONAL DEFENSE

### (Failure to State a Claim)

465.     MPT's Complaint fails to state a claim upon which relief can be granted in favor of MPT and against the Fox Defendants.

## SECOND ADDITIONAL DEFENSE

### (License)

466.     MPT's claims for infringement of the '878, '226, and '678 Patents are barred by Patent Portfolio Licenses issued by MPEG LA, LLC to manufacturers of the accused products and performers of the accused activities, as authorized by MPT's agreement with MPEG LA to license the Patents through said Patent Portfolio Licenses.  The Patent Portfolio Licenses expressly and impliedly license activities for which the Fox Defendants are accused by MPT of infringing the '878, '226, and '678 Patents.

467.     In sworn responses to Requests for Admission in Case No. 09-CV-0278-H-CAB before this Court, MPT declared the '377 Patent non-essential to the MPEG-2 Standard.  In its Complaint, however, MPT alleges that "encoding video in MPEG-2 format" infringes the '377 Patent.  Thus, MPT appears to now allege that the '377 Patent is essential to the MPEG-2 standard.  The Fox Defendants deny that allegation.  If MPT's allegation is taken is true, however, then by virtue of agreements between MPT and Alcatel Lucent on one hand and MPEG LA on the other to license MPEG-2-essential patents through the MPEG LA Patent Portfolio Licenses, the Patent Portfolio Licenses expressly and impliedly license activities for which the Fox Defendants are accused by MPT of infringing the '377 Patent.

## THIRD ADDITIONAL DEFENSE

### (Patent Exhaustion)

la-1095446

468. Via the Patent Portfolio Licenses issued by MPEG LA, MPT authorized the sales of accused digital video encoders, decoders, DVDs, and Blu-ray discs. If the infringement allegations in MPT's Complaint are taken as true, said digital video encoders, decoders, DVDs, and Blu-ray discs substantially embody the apparatus and methods claimed by the Patents-in-Suit. Consequently, the authorized sales of said digital video encoders, decoders, DVDs, and Blu-ray discs exhausted any rights held by MPT to said video encoders, decoders, DVDs, and Blu-ray discs.

**FOURTH ADDITIONAL DEFENSE**

**(Issue Preclusion)**

469. In Case Nos. 02-CV-2060-B, 03-CV-0699-B, and 03-CV-1108-B (*Lucent Techs. v. Gateway, Inc. et al.*), this Court awarded summary judgment that independent claim 13 and dependent claims 14-17 of the '878 patent were invalid due to indefiniteness. On October 25, 2005, the PTO issued a certificate of correction that purports to amend claim 13. Under the doctrine of issue preclusion (i.e., collateral estoppel), MPT is barred from arguing that claims 13-17 of the '878 patent were valid prior to October 25, 2005.

470. In Case No. 06-CV-0684-H (*Lucent Techs. v. Microsoft Corp.*), this Court held that Block Type Declassifier 80 (as shown in Figure 2 and described at col. 15 lines 4-10) and Motion Vector Predictor 94 (as shown and described in Figures 2, 15, 16A, and 16B, col. 15 lines 11-28, and col. 25 line 26 to col. 27 line 34) are necessary parts of the structure claimed by the second means-plus-function limitation of claim 13 of the '878 Patent. Applying that holding, the Court entered judgment that MPEG-1 and MPEG-2 decoders did not infringe claims 13 and 15 of the '878 Patent. Furthermore, based on its finding that there was "substantial evidence regarding the VC-1 approach to motion vector prediction from which the jury could reasonably conclude that the VC-1 decoders did not have identical or equivalent structure" to the second means-plus-function limitation of claim 13, the Court entered judgment that VC-1 decoders did not infringe claims 13 and 15 of the '878 Patent.

471. MPT's allegations that the Fox Defendants have infringed the '878 Patent raise some issues of claim construction substantially identical to those previously decided by this

37

Court. Furthermore, MPT's allegations that VC-1 encoders and decoders infringe the '878 Patent raise issues of infringement analysis substantially identical to those previously decided by this Court.

472. Under the doctrine of issue preclusion, MPT is barred from arguing at least the following: 1) that encoders and decoders that use the VC-1 standard and/or its approach to motion vector prediction infringe the '878 Patent; 2) that Block Type Declassifier 80 (as shown in Figure 2 and described at col. 15 lines 4-10) and Motion Vector Predictor 94 (as shown and described in Figures 2, 15, 16A, and 16B, col. 15 lines 11-28, and col. 25 line 26 to col. 27 line 34) are not necessary parts of the structure claimed by claims 13-15 of the '878 Patent. Additionally, MPT is barred from disputing any other findings by the Court in Case No. 06-CV-0684-H necessary to the judgment of non-infringement of the '878 Patent.

473. In Case No. 07-CV-2000-H (*Lucent Techs. et al. v. Gateway, Inc. et al.*), this Court held that the corresponding structure for the limitation "means responsive to said block approximations and to said codes that describe deviations from interpolated blocks to develop said interpolated blocks" of claim 12 of the '226 Patent is "Decoder 25, DCT-1 34, Adder 35, and Shift Circuits 31 and 39, including all inputs and outputs of these elements related to the claimed function (See Fig. 2; Col. 4, lines 63-65; Col. 5, lines 7-23 [description of the structure and inputs that correspond to these elements is at Col. 4, lines 38, 50])." Applying that holding, the Court entered judgment that MPEG-1 and MPEG-2 decoders did not infringe claim 12 of the '226 Patent. Furthermore, based on its finding that there were "unique considerations" to VC-1's encoding and decoding approach that differed from those of the '226 Patent, the Court entered judgment that VC-1 decoders did not infringe claim 12 of the '226 Patent.

474. MPT's allegations that the Fox Defendants have infringed the '226 Patent raise some issues of claim construction substantially identical to those previously decided by this Court. Furthermore, MPT's allegations that VC-1 encoders and decoders infringe the '226 Patent raise issues of infringement analysis substantially identical to those previously decided by this Court.

475. Under the doctrine of issue preclusion, MPT is barred from arguing at least the following: 1) that encoders and decoders that use the VC-1 standard infringe the '226 Patent; and 2) that Decoder 25, DCT-1 34, Adder 35, and Shift Circuits 31 and 39, including all inputs and outputs of these elements related to the claimed function (See Fig. 2; Col. 4, lines 63-65; Col. 5, lines 7-23 [description of the structure and inputs that correspond to these elements is at Col. 4, lines 38, 50]) are not necessary elements of the structure claimed by claim 12 the '226 Patent. Additionally, MPT is barred from disputing any other findings by the Court in Case No. 07-CV-2000-H necessary to the judgment of non-infringement of the '226 Patent.

476. Under the doctrine of issue preclusion, MPT is precluded from challenging any other finding adverse to it on any issue that was or will be actually litigated, essential to a judgment, and substantially similar to an issue in the present litigation.

## FIFTH ADDITIONAL DEFENSE

### (Invalidity)

477. Each claim of each Patent-in-Suit is invalid and void for failure to satisfy the requirements of 35 U.S.C. § 102.

478. Each claim of each Patent-in-Suit is invalid and void for failure to satisfy the requirements of 35 U.S.C. § 103.

479. Each claim of each Patent-in-Suit is invalid and void for failure to satisfy the requirements of 35 U.S.C. § 112.

## SIXTH ADDITIONAL DEFENSE

### (Laches)

480. MPT and Lucent Technologies Inc. ("Lucent"), the prior owner of the Patents-in-Suit, delayed filing suit for an unreasonable and inexcusable length of time from the time they knew or reasonably should have known of the causes of action MPT now asserts against the Fox Defendants. The last of the Patents-in-Suit issued in March 1996. Nonetheless, MPT and Lucent waited almost 14 years to initiate this action, long after the Fox Defendants' accused activities allegedly began. Indeed, Lucent did not file any suit alleging infringement of any Patent-in-Suit until 2003, despite the fact that encoders and decoders using the MPEG-2 standard had been in

FOX DEFENDANTS' ANSWER AND COUNTERCLAIM
CASE NO. 10 CV 0146 JAH (CAB)

existence since about 1994. MPT and Lucent's unreasonable delay in filing suit was prejudicial and injurious to the Fox Defendants. For example, it discouraged the Fox Defendants from pursuing alternatives to their allegedly infringing activities. Permitting MPT to proceed with this action would thus be inequitable.

481. For these reasons, MPT's claims for relief against the Fox Defendants are barred by the doctrine of laches.

**SEVENTH ADDITIONAL DEFENSE**

**(Equitable Estoppel)**

482. The Fox Defendants incorporate by reference as if fully stated herein Paragraph 480 of the Fox Defendants' Answer.

483. The Fox Defendants were misled by MPT's and Lucent's failure to assert the Patents-in-Suit in timely fashion and their silence in the face of the public activities for which the Fox Defendants are now accused of infringement. The Fox Defendants were misled into reasonably inferring that MPT and Lucent did not intend to prosecute an action for alleged infringement against the Fox Defendants. The Fox Defendants detrimentally relied on MPT's and Lucent's misleading conduct and silence. For example, the Fox Defendants were discouraged from pursuing alternatives to their allegedly infringing activities.

484. For these reasons, MPT's claims for relief against the Fox Defendants are barred by the doctrine of equitable estoppel.

**EIGHTH ADDITIONAL DEFENSE**

**(Estoppel by Acquiescence)**

485. The Fox Defendants incorporate by reference as if fully stated herein Paragraphs 480 and 483 of the Fox Defendants' Answer.

486. Lucent's and MPT's unreasonable and inexcusable delay in filing suit against the Fox Defendants induced the Fox Defendants to reasonably believe that Lucent and MPT had abandoned any cause of action for alleged infringement against the Fox Defendants. The Fox Defendants detrimentally relied on that belief, for example, by not pursuing alternatives to their allegedly infringing activities.

FOX DEFENDANTS' ANSWER AND COUNTERCLAIM
CASE NO. 10 CV 0146 JAH (CAB)

la-1095446

487.    For these reasons, MPT's claims for relief against the Fox Defendants are barred by the doctrine of estoppel by acquiescence.

## NINTH ADDITIONAL DEFENSE

### (Time Limitations on Damages)

488.    Each of MPT's claims for relief against the Fox Defendants is limited by 35 U.S.C. § 286.

489.    MPT is entitled to no relief for the alleged infringement of any Patent-in-Suit after its expiration pursuant to 35 U.S.C. § 154.

490.    The certificate of correction for the '878 Patent did not issue until October 25, 2005. At least prior to October 25, 2005, claims 13-17 of the '878 Patent were invalid for indefiniteness (as this Court previously found). MPT is precluded from recovering any alleged damages for alleged infringement of claims 13-17 of the '878 Patent prior to October 25, 2005.

491.    The certificate of correction for the '678 Patent did not issue until May 29, 2007. At least prior to May 29, 2007, claims 7-12 of the '678 Patent were invalid for indefiniteness. MPT is precluded from recovering any alleged damages for alleged infringement of claims 7-12 of the '678 Patent prior to May 29, 2007.

## TENTH ADDITIONAL DEFENSE

### (Intervening Rights)

492.    The certificate of correction for the '878 Patent did not issue until October 25, 2005. Assuming, as MPT apparently contends, that claims 13-17 of the '878 Patent are now valid and enforceable (which the Fox Defendants dispute), the certificate of correction expanded the scope of the valid and enforceable claims of the '878 Patent. Under MPT's infringement theories, as the Fox Defendants best understand them (but which the Fox Defendants dispute), the Fox Defendants had performed certain activities accused of infringing the '878 Patent prior to October 25, 2005. The Fox Defendants have absolute intervening rights to perform said activities. In addition, prior to October 25, 2005, the Fox Defendants had made substantial preparation to perform other activities accused of infringing the '878 Patent. The Fox Defendants have equitable intervening rights to perform said activities.

41

493.    The certificate of correction for the '678 Patent did not issue until May 29, 2007. Assuming, as MPT apparently contends, that claims 7-12 of the '678 Patent are now valid and enforceable (which the Fox Defendants dispute), the certificate of correction expanded the scope of the valid and enforceable claims of the '678 Patent.  Under MPT's infringement theories, as the Fox Defendants best understands them (but which the Fox Defendants dispute), the Fox Defendants had performed certain activities accused of infringing the '678 Patent prior to May 29, 2007.  The Fox Defendants have absolute intervening rights to perform said activities.  In addition, prior to May 29, 2007, the Fox Defendants had made substantial preparation to perform other activities accused of infringing the '678 Patent.  The Fox Defendants have equitable intervening rights to perform said activities.

## ELEVENTH ADDITIONAL DEFENSE

### (Non-Infringement)

494.    The Fox Defendants have not infringed and do not infringe any claim of the Patents-in-Suit, literally or under the doctrine of equivalents, directly or indirectly.

495.    The activities for which the Fox Defendants are accused of infringement were known in the prior art to the Patents-in-Suit.  Consequently, such activities are excluded from the scope of the claims of the Patents-in-Suit.

## TWELFTH ADDITIONAL DEFENSE

### (Prosecution History Estoppel)

496.    MPT's claims for relief are barred, in whole or in part, by prosecution history estoppel arising from the actions, representations, and conduct of the applicants for the Patents-in-Suit before the PTO during prosecution and reexamination of the Patents-in-Suit.

## THIRTEENTH ADDITIONAL DEFENSE

### (Limitation on Recovery of Costs)

497.    MPT is precluded from seeking recovery of costs by 35 U.S.C. § 278.

## FOURTEENTH ADDITIONAL DEFENSE

### (Marking)

498.    MPT's claims for relief are limited by 35 U.S.C. § 287.

la-1095446

**FIFTEENTH ADDITIONAL DEFENSE**

**(Inequitable Conduct)**

499. The '226 Patent, '878 Patent, '678 Patent, and '377 Patent are unenforceable and void due to inequitable conduct that occurred during the applications for and prosecution of the Patents.

500. The Fox Defendants incorporate by reference as if fully stated herein the Fox Defendants' Counterclaim, *infra*.

501. The Fox Defendants reserve the right to supplement and amend their inequitable conduct defenses in the event that they obtain additional information material to the unenforceability of the Patents-in-Suit during the course of this litigation.

**SIXTEENTH ADDITIONAL DEFENSE**

**(No Right to Injunctive Relief)**

502. MPT is not entitled to injunctive relief because any injury to it is not immediate or irreparable, and MPT has an adequate remedy at law for any claims it can prove.

**SEVENTEENTH ADDITIONAL DEFENSE**

**(Breach of Duty to Disclose Patents to Standard Setting Bodies)**

503. AT&T Corporation was heavily involved in the development of the MPEG standards and their predecessor standards. AT&T failed to timely disclose the Patents-in-Suit and their applications to the organizations involved in the development of those standards in accordance with AT&T's disclosure obligations. Said organizations include the Moving Picture Experts Group, the International Organization for Standardization, the International Telecommunication Union, and the International Telegraph and Telephone Consultative Committee. As a consequence of breaching its duty to disclose, AT&T Corporation waived the right to assert and was estopped from asserting the Patents-in-Suit against MPEG-2 and MPEG-4 Part 10 (H.264) encoding and decoding activities. As a further consequence of AT&T's breach of its duty to disclose, MPT, as the successor in interest to the Patents-in-Suit, lacks the right to assert and is estopped from asserting the Patents-in-Suit against MPEG-2 and H.264 encoding and decoding activities.

**REQUEST FOR RELIEF**

The Fox Defendants deny that Plaintiff MPT is entitled to any of the relief requested in its Request for Relief or to any other relief.

**COUNTERCLAIM AGAINST MULTIMEDIA PATENT TRUST**

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, the Fox Defendants counterclaim against MPT and, in support thereof, allege the following:

**JURISDICTION AND VENUE**

1.     The Fox Defendants reallege and incorporate by reference as if fully stated herein each and every allegation contained in the Fox Defendants' Answer, *supra*.

2.     This Court has personal jurisdiction over Counter-Defendant MPT because MPT submitted to the jurisdiction of this Court by filing its Complaint against the Fox Defendants.

3.     This Counterclaim is brought pursuant to the Declaratory Judgment Act, codified at 28 U.S.C. §§ 2201 and 2202, and pursuant to the patent laws of the United States, including, but not limited to, 35 U.S.C. §§ 271, 281, 284, and 285.

4.     Subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1338.

5.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400, and because these claims are being brought as compulsory counterclaims pursuant to Rule 13(a) of the Federal Rules of Civil Procedure.

**BACKGROUND**

6.     In its Complaint, MPT accuses the Fox Defendants of infringing the '226, '878, '678, and '377 Patents.  The Fox Defendants deny that they have infringed the '226, '878, '678, and '377 Patents.

**COUNT I**

**DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '226 PATENT**

7.     The Fox Defendants incorporate and reallege the allegations of Paragraphs 1-6 of their Counterclaim as if fully stated herein.

8.     The '226 Patent is unenforceable and void due to inequitable conduct that occurred during the application for and prosecution of the Patent.

44

9. Individuals associated with the application for and prosecution of the '226 Patent, including at least Barin G. Haskell, violated their duty of candor and good faith in dealing with the U.S. Patent and Trademark Office ("PTO") by intentionally and deceptively failing to disclose material information to the PTO.

10. The application for the '226 Patent was filed on September 27, 1989. Barin G. Haskell and Atul Puri were the named applicants for the '226 Patent and are the named inventors listed on the Patent.

11. Under Title 37, CFR § 1.56, "[e]ach individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [PTO], which includes a duty to disclose to the [PTO] all information known to that individual to be material to patentability . . . ." On September 25, 1989, Mr. Haskell and Mr. Puri signed a sworn statement stating in pertinent part: "I believe I am an original, first and joint inventor of the subject matter which is claimed and for which a patent is sought on the invention entitled Conditional Motion Compensated Interpolation of Digital Motion Video the specification of which is attached hereto. . . . I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, 1.56(a)." At least Mr. Haskell did not perform his sworn duty to disclose information material to the examination of the application for the '226 Patent.

12. According to the '226 Patent's Background of the Invention section, motion-compensated predictive coding was a prior-art technique for reducing the bandwidth of transmitting motion pictures. The Background section further identifies motion-compensated interpolation as a second prior-art technique for reducing the bandwidth of transmitting motion pictures, used in conjunction with motion-compensated predictive coding. The Background section explains that motion-compensated predictive coding of frames occasionally caused the encoder's buffer to overload, in which case those frames were not encoded or transmitted. The Background section explains that motion-compensated interpolation of a frame that had not been encoded and transmitted was a known alternative to simply repeating the most recently available frame (i.e., "frame repeating").

1    13.    According to the '226 Patent's Background section, motion-compensated

2  interpolation suffered from the following problem:

3      [W]hen the images of successive blocks do not represent translational motion, the
       reproduced image may be worse than with frame repeating. Although it has been
4      observed that this degradation is caused by a relatively few pels that do not
       conform to the assumption of translational motion, putting these pels in the wrong
5      place creates highly visible artifacts.

6    14.    The '226 Patent's Summary of the Invention section purports to disclose a novel

7  solution to this purported problem with motion-compensated interpolation:

8      In accordance with the principles of this invention, pels that cause highly visible
       artifacts are detected, and corresponding correction information is transmitted to
9      the decoder. The amount of correction information that must be sent is relatively
       small, and the improvement in picture quality is quite large.
10
   Similarly, the Abstract for the '226 Patent describes the patented method and apparatus as
11
   follows:
12
       In accordance with the method, selected frames of the video are interpolated in the
13     decoder with the aid of interpolation correction codes that are generated in the
       encoder and sent to the decoder. In an encoder embodiment that interpolates half
14     of the frames, every other frame is encoded and decoded within the encoder. The
       decoded versions of adjacent frames are appropriately combined and compared to
15     the interleaved camera frame that is to be interpolated in the decoder. The
       differences, which correspond to "pels correction" information, are encoded and
16     quantized. Those that exceed a predetermined threshold value are added to the
       encoder's output buffer. The inverse operation is carried out in the decoder. That is
17     every pair of decoded frames is averaged and combined with the decoded "pels
       correction" information to form the interpolated frames.
18
   In sum, the '226 Patent describes the generation of correction information to account for errors in
19
   interpolated frames that exceed a predetermined threshold as its purported point of novelty and
20
   technological benefit.
21
       15.    Claim 1 of the '226 Patent recites a "circuit for encoding applied video signals that
22
   comprise successive frames, where each frame is divided into blocks" that comprises:
23
       •    a first means for performing the function of "encoding the blocks of some
24
            of said frames by developing for each block of such frames (a) and [sic]
25
            approximated version of said block derived from an approximated version
26
            of said block developed for a previous frame, and (b) a code which
27

28

FOX DEFENDANTS' ANSWER AND COUNTERCLAIM
CASE NO. 10 CV 0146 JAH (CAB)

la-1095446

represents the deviation of said block from said approximated version of said block";

• a second means for performing the function of "approximating the blocks of those of said frames that are to be interpolated by combining approximated versions of said blocks in selected ones of the frames that are encoded in said first means"; and

• a third means responsive to said second means and to said frames to be interpolated for performing the function of "developing a code that corresponds to those pels in blocks approximated by said second means that differ from corresponding pels in said frames to be interpolated by greater than a preselected threshold."

The functions performed by the first and second recited means correspond respectively to motion-compensated predictive coding and motion-compensated interpolation. As the '226 Patent discloses, these functions were known in the prior art. The function performed by the third recited means corresponds to the '226 Patent's self-described point of novelty: generating correction information (i.e., "code") to account for errors in interpolated frames that exceed a predetermined threshold. The '226 Patent fails to disclose, however, that the generation of correction information to account for errors in interpolated frames that exceed a predetermined threshold was known in the prior art.

16. As one example, the book *Digital Pictures: Representation and Compression* (1st ed. 1988) ("*Digital Pictures*"), co-authored by Mr. Haskell, was published over a year prior to the filing date of the application for the '226 Patent. Under 35 U.S.C. § 102, *Digital Pictures* is prior art to the '226 Patent.

17. At least pages 301-03 and pages 469-73 of *Digital Pictures* are material to the patentability of the '226 Patent, including the patentability of claim 1 of the '226 Patent. For example, *Digital Pictures* discloses the following on pages 470-73:

An interpolative scheme that is commonly used in interframe coding is to drop alternative fields from transmission. . . . It has been used effectively in interframe coding during buffer overloads in order to reduce the data rate.

* * *

Preliminary simulations indicate that under moderate motion, a 4:1 frame dropping (i.e. dropping 3 out of 4 frames) and motion adaptive interpolation often gives reasonable motion rendition. In this as well as other interpolation schemes, since at times the interpolation may be inaccurate, techniques have been devised where the quality of interpolation is checked at the transmitter, and if the interpolation error is larger than a threshold, side information is transmitted to the receiver. It appears that due to unavoidable inaccuracies of the displacement estimator (e.g. complex translational and rotational motion) and the segmentation process, such side information would be necessary to reduce artifacts that may otherwise be introduced due to faulty interpolation.

A person of ordinary skill in the art of the '226 Patent would understand the side information discussed in this excerpt to be "correction information," as that term is used in the '226 Patent. Thus, *Digital Pictures* discloses the '226 Patent's purported point of novelty and technological benefit – the generation of correction information to account for errors in interpolated frames that exceed a predetermined threshold – and anticipates at least the function performed by the third means recited in claim 1 of the '226 Patent.

18. A person of ordinary skill in the art would recognize the materiality of pages 301-03 and pages 469-73 of *Digital Pictures* to the patentability of the '226 Patent, including claim 1 of the Patent.

19. During the reexamination of claim 12 of the '226 Patent, the PTO examiner noted that a reasonable examiner would consider *Digital Pictures* to be "highly material" prior art. As the examiner declared:

[C]hapter 5 of the Digital Pictures book describes predictive and interpolative/extrapolative coding and states that the latter is "heavily used for interframe systems in conjunction with predictive coding." Digital Pictures at 301, 303. Digital Pictures further teaches regarding interpolative coding, "techniques have been devised where the quality of interpolation is checked at the transmitter, and if the interpolation error is larger than a threshold, side information. It appears that due to unavoidable inaccuracies of the displacement estimator (e.g., complex translational and rotational motion) and the segmentation process, such side information would be necessary to reduce artifacts that may otherwise be introduced due to faulty interpolation." Digital Pictures at p. 473.

Upon this basis, the examiner issued a non-final rejection of claim 12 of the '226 Patent as anticipated by *Digital Pictures*. A person of ordinary skill in the art would recognize the

48

la-1095446

materiality of pages 301-03 and pages 469-73 of *Digital Pictures* to the patentability of claim 12 of the '226 Patent.

20. The individuals involved in the application for and prosecution of the '226 Patent did not disclose pages 301-03 and 469-73 of *Digital Pictures* to the PTO during the prosecution of the Patent. Mr. Haskell, in particular, did not disclose pages 301-03 and 469-73 of *Digital Pictures* to the PTO. Indeed, the individuals involved in the application for and prosecution of the '226 Patent did not disclose any art cumulative to the material disclosures on pages 301-03 and 469-73 of *Digital Pictures* during the prosecution of the Patent.

21. At least Mr. Haskell, as the co-author of *Digital Pictures*, was aware of the material contents of pages 301-03 and 469-73 of *Digital Pictures*. Mr. Haskell recognized their materiality to the patentability of the '226 Patent, including the patentability of claims 1 and 12 of the '226 Patent.

22. Mr. Puri was a co-worker of Mr. Haskell at AT&T Bell Laboratories. Mr. Puri, among other applicants for the '878 Patent, submitted pages 301-504 of *Digital Pictures* to the PTO in their application for the '878 Patent. Upon information and belief, Mr. Puri was aware of pages 301-03 and pages 469-73 of *Digital Pictures* during the prosecution of the '226 Patent. Like Mr. Haskell, Mr. Puri would have recognized the materiality of pages 301-03 and 469-73 of *Digital Pictures* to the patentability of the '226 Patent, including claims 1 and 12 of the Patent.

23. At least Mr. Haskell intended to deceive the PTO by intentionally failing to disclose pages 301-03 and 469-73 of *Digital Pictures* in the application for the '226 Patent and throughout its prosecution. At least Mr. Haskell's intentional failure to disclose pages 301-03 and 469-73 of *Digital Pictures* constitutes inequitable conduct that renders the '226 Patent void and unenforceable.

24. As another example, a document entitled "Comments on Conditional Motion Compensated Frame Interpolation," and labeled "Document #81," was published no later than March 1986 at the Fifth Meeting of the CCITT Specialists Group on Coding for Visual Telephony ("CCITT Specialists Group"). Document #81 is available at http://wftp3.itu.int/av-

FOX DEFENDANTS' ANSWER AND COUNTERCLAIM
CASE NO. 10 CV 0146 JAH (CAB)

arch/video-site/h261/H261_Specialists_Group/Contributions/081.pdf.  Under 35 U.S.C. § 102,

Document #81 is prior art to the '226 Patent.

25.     A person of ordinary skill in the art would have recognized the materiality of

Document #81 to the patentability of the '226 Patent, including the patentability of claim 1 of the

Patent.

26.     Figure 1 of Document #81 is reproduced below.



Fig. 1  Schematic diagram of CMI coder

27.     Figure 1 of Document #81 displays a schematic diagram of an encoder.  The

encoder is capable of motion-compensated prediction.  The function of motion-compensated

prediction is performed by the box entitled "Motion Prediction," using information from the box

entitled "Motion Detection."  The encoder is also capable of motion-compensated interpolation.

The function of motion-compensated interpolation is performed by the box entitled "Motion

Interpolative Prediction," using information from the box entitled "Motion Detection."  The

encoder is also capable of generating correction information to account for errors in interpolated

frames.  The circle with a minus sign to the right of the box entitled "Motion Interpolative

Prediction" performs the function of generating correction information to account for errors in

interpolated frames.

28.     Figure 1 of Document #81 anticipates the limitation "encoding the blocks of some

of said frames by developing for each block of such frames (a) and [sic] approximated version of

said block derived from an approximated version of said block developed for a previous frame,

and (b) a code which represents the deviation of said block from said approximated version of

said block" in claim 1 of the '226 Patent. Furthermore, Figure 1 of Document #81 anticipates the limitation "approximating the blocks of those of said frames that are to be interpolated by combining approximated versions of said blocks in selected ones of the frames that are encoded in said first means" in claim 1 of the '226 Patent. Furthermore, Figure 1 of Document #81 anticipates the limitation "developing a code that corresponds to those pels in blocks approximated by said second means that differ from corresponding pels in said frames to be interpolated by greater than a preselected threshold" in claim 1 of the '226 Patent. Thus, Figure 1 of Document #81 discloses the '226 Patent's purported point of novelty and technological benefit – the generation of correction information to account for errors in interpolated frames that exceed a predetermined threshold.

29.     A person of ordinary skill in the art would have recognized the materiality of Figure 1 of Document #81 to the patentability of the '226 Patent, including the patentability of claim 1 of the Patent.

30.     Section 3(1) of Document #81 states: "[A] control mechanism would be necessary for changing over the 2 types of input signals to the encoder (extrpolative [sic] prediction error and interpolative prediction error) . . . ." Thus, Section 3(1) of Document #81 discloses the '226 Patent's purported point of novelty and technological benefit – the generation of correction information to account for errors in interpolated frames that exceed a predetermined threshold.

31.     A person of ordinary skill in the art would have recognized the materiality of Section 3(1) of Document #81 to the patentability of the '226 Patent, including the patentability of claim 1 of the Patent.

32.     A person of ordinary skill in the art would have recognized the materiality of Document #81 as a whole to the patentability of the '226 Patent, including the patentability of claim 1 of the Patent.

33.     According to the CCITT Specialist Group's Report of the Fifth Meeting in Tokyo (March 25-28, 1986) ("CCITT Specialist Group's Report"), Mr. Haskell attended the Fifth Meeting. The CCITT Specialist Group's Report is available at http://wftp3.itu.int/av-arch/

FOX DEFENDANTS' ANSWER AND COUNTERCLAIM
CASE NO. 10 CV 0146 JAH (CAB)

la-1095446

video-site/h261/H261_Specialists_Group/Report_of_Specialists_Group/8603tok.  According to the Report, Document #81 was discussed at the Fifth Meeting.  Furthermore, according to the Report, a tape demonstration of source coding simulation results related to Document #81 took place at the Fifth Meeting.  Mr. Haskell thus learned about the contents of Document #81 at the Fifth Meeting.

34.     The CCITT Specialist Group's Report states:

5.10 Motion-compensated Interpolation (#81, #83, #87)

> Since motion-compensated interpolation at the decoder alone is a kind of post-processing and does not affect the compatibility, conditional motion-compensated interpolation (CMI) was discussed where interpolation error is transmitted.

The reference to "#81" in the excerpt above is a reference to Document #81.  This excerpt of the CCITT Specialist Group's Report discloses the '226 Patent's purported point of novelty and technological benefit – the generation of correction information to account for errors in interpolated frames that exceed a predetermined threshold.  As stated in the CCITT Specialist Group's Report, the discussions at the Fifth Meeting disclosed the idea of generating correction information to account for errors in interpolated frames as well.

35.     A person of ordinary skill in the art would have recognized the materiality of the CCITT Specialist Group's Report to the patentability of the '226 Patent, including the patentability of claim 1 of the Patent.

36.     Furthermore, a person of ordinary skill in the art would have recognized the materiality of the discussions at the Fifth Meeting regarding conditional motion-compensated interpolation, including the generation and transmission of correction information to account for errors in interpolated frames.

37.     Under 35 U.S.C. § 102, the CCITT Specialist Group's Report is prior art to the '226 Patent.  In addition, under 35 U.S.C. § 102, the oral presentations at the Fifth Meeting are prior art to the '226 Patent.

38.     The individuals involved in the application for and prosecution of the '226 Patent did not disclose Document #81 to the PTO during the prosecution of the Patent.  Mr. Haskell, in particular, did not disclose Document #81 to the PTO.  Indeed, the individuals involved in the

FOX DEFENDANTS' ANSWER AND COUNTERCLAIM
CASE NO. 10 CV 0146 JAH (CAB)

la-1095446

1   application for and prosecution of the '226 Patent did not disclose any art cumulative to the

2   material disclosures in Document #81 during the prosecution of the Patent.

3          39.     At least Mr. Haskell was aware of the material contents of Document #81.  In

4   addition, Mr. Haskell recognized the materiality of Document #81 to the patentability of the '226

5   Patent, including the patentability of claim 1 of the '226 Patent.

6          40.     At least Mr. Haskell intended to deceive the PTO by intentionally failing to

7   disclose Document #81 in the application for the '226 Patent and throughout its prosecution.  At

8   least Mr. Haskell's intentional failure to disclose Document #81 constitutes inequitable conduct

9   that renders the '226 Patent void and unenforceable.

10          41.     In addition, at least Mr. Haskell was aware of the material contents of the CCITT

11   Specialist Group's Report.  In addition, Mr. Haskell recognized the materiality of the CCITT

12   Specialist Group's Report to the patentability of the '226 Patent, including the patentability of

13   claim 1 of the '226 Patent.

14          42.     At least Mr. Haskell intended to deceive the PTO by intentionally failing to

15   disclose the CCITT Specialist Group's Report in the application for the '226 Patent and

16   throughout its prosecution.  At least Mr. Haskell's intentional failure to disclose the CCITT

17   Specialist Group's Report constitutes inequitable conduct that renders the '226 Patent void and

18   unenforceable.

19          43.     In addition, at least Mr. Haskell was aware of the material contents of the oral

20   presentations at the CCITT Specialist Group's Fifth Meeting regarding conditional motion-

21   compensated interpolation.  In addition, Mr. Haskell recognized the materiality of the oral

22   presentations at the CCITT Specialist Group's Fifth Meeting to the patentability of the '226

23   Patent, including the patentability of claim 1 of the '226 Patent.

24          44.     At least Mr. Haskell intended to deceive the PTO by intentionally failing to

25   disclose the oral presentations at the CCITT Specialist Group's Fifth Meeting regarding

26   conditional motion-compensated interpolation in the application for the '226 Patent and

27   throughout its prosecution.  At least Mr. Haskell's intentional failure to disclose the oral

28   presentations at the CCITT Specialist Group's Fifth Meeting regarding conditional motion-

compensated interpolation constitutes inequitable conduct that renders the '226 Patent void and unenforceable.

45.     An actual controversy exists between the Fox Defendants and MPT with respect to the enforceability of the '226 Patent.  The Fox Defendants therefore seek a declaration that the '226 Patent is unenforceable.

## COUNT II

## DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '878 PATENT

46.     The Fox Defendants incorporate and reallege the allegations of Paragraphs 1-6 of their Counterclaim as if fully stated herein.

47.     The '878 Patent is unenforceable and void due to inequitable conduct that occurred during the application for and prosecution of the Patent.

48.     Individuals associated with the application for and prosecution of the '878 Patent, including at least Atul Puri and Rangarajan Aravind, violated their duty of candor and good faith in dealing with the PTO by intentionally and deceptively failing to disclose material information to the PTO.

49.     The application for the '878 Patent was filed on November 15, 1991.  Atul Puri and Rangarajan Aravind were the named applicants for the '878 Patent and are the named inventors listed on the Patent.

50.     Under Title 37, CFR § 1.56, "[e]ach individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [PTO], which includes a duty to disclose to the [PTO] all information known to that individual to be material to patentability . . . ."   On February 28, 1992, Atul Puri and Rangarajan Aravind signed a sworn statement stating in pertinent part: "I believe I am an original, first and joint inventor of the subject matter which is claimed and for which a patent is sought on the invention entitled Adaptive Coding And Decoding Of Frame and Fields Of Video Signals the specification of which was filed on November 15, 1991 . . . . I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal

Regulations, 1.56(a)." At least Mr. Puri and Mr. Aravind did not perform their sworn duty to disclose information material to the examination of the application for the '878 Patent.

51. The '878 Patent is entitled "Adaptive Coding and Decoding of Frame and Fields of Video Signals." According to the Summary of the Invention section of the '878 Patent, the purported invention achieves improved compression of video data by using an adaptive video frame/field encoder and decoder. As the Summary of the Invention section explains, "[t]his adaptive behavior involves changing between a process of coding and decoding information from a frame of video or coding and decoding information from a field of video."

52. In a September 22, 1992 Office Action, the PTO rejected several claims of the '878 Patent as anticipated by United States Patent No. 5,091,782 to Krause ("Krause").

53. In a December 22, 1992 response to the PTO's September 22, 1992 Office Action, the applicants for the '878 Patent attempted to distinguish Krause from the claimed invention. They argued as follows:

> Both field coding and frame coding occur at the same time during the operation of the apparatus shown in the Krause patent in contrast to the invention defined in claim 1 involving a selective one, but not both, of frame coding or field coding. Clearly, the claimed invention avoids the necessity of doing two coding operations as in the Krause patent. The § 102 rejection of claims 1 and 2, therefore, ought to be withdrawn.

54. In response to the applicants' argument, the Examiner issued a Notice of Allowability on January 26, 1993 that allowed claims 1-33 of the '878 Patent.

55. Claim 1 of the '878 Patent recites, *inter alia*, the limitation "a means responsive to the digital video input signal for producing a field frame coding type signal which directs a selected one, but not both, of the frame coding means or the field coding means to code the digital video input signal." This limitation corresponds to the purported distinction drawn by the applicants to the '878 Patent between Krause and the claimed invention. The applicants for the '878 Patent failed to disclose to the PTO during the prosecution of the Patent that producing a field frame coding type signal which directs a selected one, but not both, of the frame coding means or the field coding means to code the digital video input signal was known in the prior art.

la-1095446

1    Moreover, the applicants for the '878 Patent failed to disclose to the PTO that adaptive coding of

2    frame and fields of video signals known in the prior art.

3           56.     For example, a journal article entitled "Fixed and Adaptive Predictors for Hybrid

4    Predictive/Transform Coding," written by Staffan Ericsson, was published in IEEE Transactions

5    on Communications, vol. Com-33, no. 12 (Dec. 1985). Under 35 U.S.C. § 102, the Ericsson

6    article ("Ericsson") is prior art to the '878 Patent. Ericsson discloses adaptive coding of frames

7    and fields of video signals. The Abstract of Ericsson states: "Field coding with a switched

8    predictor using previous field in moving areas is an interesting alternative to frame coding with

9    frame difference prediction." A person of skill in the art would understand that this sentence of

10   the Abstract of Ericsson discloses adaptive coding of frames and fields of video signals. In

11   addition, a section of Ericsson entitled "Switched Prediction" states the following:

12           In this section we propose an adaptive predictor which switches between frame
             difference prediction and a predictor more suitable for moving areas. . . . Table II
13           shows prediction gain in moving areas for different predictors. It is found that the
             average of the horizontal and vertical neighbors in the previous field (predictor 2)
14           gives 3 dB better prediction gain compared to frame difference prediction. . . . A
             candidate for further study is a predictor which switches between previous frame
15           and previous field prediction, i.e., between predictors 1 and 2 in Table II.

16   A person of skill in the art would recognize that this excerpted passage discloses adaptive coding

17   of frames and fields of video signals.

18          57.     As discussed above, the PTO allowed the '878 Patent, including claim 1 of the

19   Patent, to issue over Krause based upon the applicants' argument that Krause did not disclose

20   adaptive coding of frames and fields of video signals. Thus, Ericsson's disclosure of adaptive

21   coding of frames and fields of video signals was material to the patentability of the '878 Patent,

22   including the patentability of claim 1 of the Patent. A person of ordinary skill in the art would

23   have recognized the materiality of Ericsson to the patentability of the '878 Patent, including the

24   patentability of claim 1 of the Patent.

25          58.     Individuals involved in the prosecution of the '878 Patent, including at least Atul

26   Puri, were aware of Ericsson's disclosure of adaptive coding of frames and fields of video signals

27   during the prosecution of the Patent. Mr. Puri, in particular, was familiar with Ericsson's

28   disclosure of adaptive coding of frames and fields of video signals during the prosecution of the

'878 Patent. Mr. Puri had previously cited Ericsson in his doctoral thesis. At least the Abstract of Ericsson would have alerted Mr. Puri to Ericsson's disclosure of adaptive coding of frames and fields of video signals. Mr. Puri was aware of Ericsson's materiality to the patentability of the '878 Patent, including the patentability of claim 1 of the Patent.

59. Neither Mr. Puri nor any other individual involved in the application for and prosecution of the '878 Patent disclosed Ericsson to the PTO. Indeed, the individuals involved in the application for and prosecution of the '878 Patent failed to disclose any art cumulative to the material disclosures in Ericsson during the prosecution of the Patent.

60. At least Mr. Puri intended to deceive the PTO by intentionally failing to disclose Ericsson in the application for the '878 Patent and throughout its prosecution (e.g., in the applicants' December 22, 1992 response to the PTO's September 22, 1992 Office Action).

61. At least Mr. Puri's intentional failure to disclose Ericsson constitutes inequitable conduct that renders the '878 Patent void and unenforceable.

62. As another example, a journal article entitled "Movement Compensated Frame-Frequency Conversion of Television Signals," written by Hirohisa Yamaguchi, Takehiko Sugi, and Kouji Kinuhata, was published in IEEE Transactions on Communication, vol. Com-35, no. 1 (Oct. 1987). Under 35 U.S.C. § 102, this article ("Yamaguchi") is prior art to the '878 Patent.

63. Pages 1079-81 of Yamaguchi disclose adaptive coding of frames and fields of video signals. For example, page 1980 states:

> [T]he following adaptive interpolation algorithm has been simulated.
> 1) For the estimated movement, the corresponding value of a is examined.
> 2) When the value of a is less than a threshold $T_1$, the movement-compensated interframe interpolation is applied.
> 3) When the value of a is between $T_1$ and a larger threshold $T_2$, the movement-compensated interfield interpolation is applied.
> 4) When the value of a exceeds the threshold $T_2$, the temporal interpolation is applied.

A person of ordinary skill in the art would recognize that this excerpt of Yamaguchi discloses adaptive coding of frames and fields of video signals.

64. As discussed above, the PTO allowed the '878 Patent, including claim 1 of the Patent, to issue over Krause based upon the applicants' argument that Krause did not disclose

adaptive coding of frames and fields of video signals. Thus, Yamaguchi's disclosure of adaptive coding of frames and fields of video signals was material to the patentability of the '878 Patent, including the patentability of claim 1 of the Patent. Moreover, a person of ordinary skill in the art would recognize the materiality of Yamaguchi to the patentability of the '878 Patent, including the patentability of claim 1 of the Patent.

65.    Individuals involved in the prosecution of the '878 Patent, including at least Atul Puri, were aware of Yamaguchi's disclosure of adaptive coding of frame and fields of video signals during the prosecution of the Patent. Mr. Puri, in particular, was familiar with Yamaguchi's disclosure of adaptive coding of frames and fields of video signals during the prosecution of the '878 Patent. Mr. Puri, along with Barin G. Haskell, had previously cited Yamaguchi as a reference in the application for the '226 Patent. Mr. Puri was aware of Yamaguchi's materiality to the patentability of the '878 Patent, including the patentability of claim 1 of the Patent.

66.    Neither Mr. Puri nor any other individual involved in the application for and prosecution of the '878 Patent disclosed Yamaguchi to the PTO. Indeed, the individuals involved in the application for and prosecution of the '878 Patent failed to disclose any art cumulative to the material disclosures in Yamaguchi during the prosecution of the Patent.

67.    In addition, at least Mr. Puri intended to deceive the PTO by intentionally failing to disclose Yamaguchi in the application for the '878 Patent and throughout its prosecution (e.g., in the applicants' December 22, 1992 response to the PTO's September 22, 1992 Office Action).

68.    At least Mr. Puri's intentional failure to disclose Yamaguchi constitutes inequitable conduct that renders the '878 Patent void and unenforceable.

69.    As yet another example, the International Organization for Standardization held a conference in Santa Clara, California in August 1991 relating to the development of the MPEG-2 standard. According to the conference's attendance list (MPEG91/180), Atul Puri attended that conference. At the conference, Atul Puri learned even more about adaptive coding of frame and fields of video signals.

70.     A team from Columbia University presented a paper entitled "Technical Input to MPEG-2 Video Coding" at the Santa Clara conference. The Columbia University paper was published with the identifier MPEG 91/131. Under 35 U.S.C. § 102, the Columbia University paper is prior art to the '878 Patent. In addition, under 35 U.S.C. § 102, the presentation of the Columbia University paper at the Santa Clara conference is prior art to the '878 Patent.

71.     The Columbia University paper discloses adaptive coding of frame and fields of video signals. For example, the Introduction to the Columbia University paper states, in its entirety:

> Hierarchical pyramidal coding provides convenient multiresolution coding, but the performance at the highest resolution is reduced, as was shown e.g., in the JPEG standard. For example, given an interlaced freeze-frame of a moving object, it makes sense to compress the first field and then the second field based on the reconstructed values of the first field (see, e.g ., [4]). However, if the frame contains no moving objects, the coding performance of the final result will be compromised by this two-stage approach. It is then preferable to code the fields jointly, because they are properly aligned. Similarly, in motion compensated predictive video coding, if an object has uniform motion, the error image contains properly aligned fields, and it may be preferable to compress them jointly. This is not the case, however, when the object is accelerating, or at the critical areas around the edges of moving objects. Accordingly, the decision on whether to code the fields separately or jointly must be taken on macroblock-by-macroblock basis.

A person of ordinary skill in the art would understand that the phrase "code the fields . . . jointly," as used in this excerpt, refers to coding of frames. Thus, a person of ordinary skill in the art would recognize that the Columbia University paper discloses adaptive coding of frame and fields of video signals. In addition, a person of ordinary skill in the art would recognize the materiality of the Columbia University paper to the patentability of the '878 Patent, including the patentability of claim 1 of the Patent.

72.     Individuals involved in the prosecution of the '878 Patent, including at least Atul Puri, were aware of the Columbia University paper's disclosure of adaptive coding of frame and fields of video signals during the prosecution of the Patent. Mr. Puri, in particular, was familiar with the Columbia University paper's disclosure of adaptive coding of frames and fields of video signals during the prosecution of the '878 Patent, as he had learned about the contents of the paper at the Santa Clara conference. Mr. Puri was aware of the materiality of the Columbia University paper to the patentability of the '878 Patent, including the patentability of claim 1 of the Patent.

In addition, Mr. Puri was aware of the materiality of the presentation Columbia University paper at the Santa Clara conference to the patentability of the '878 Patent, including the patentability of claim 1 of the Patent.

73.     In prior litigation involving the '878 Patent, MPT has contended that Mr. Puri and Mr. Aravind conceived of the invention claimed in the '878 Patent on a date prior to the Santa Clara conference.  In ostensible support of that contention, MPT submitted to this Court in Case No. 06-CV-0684-H (CAB) a declaration of Atul Puri, which attaches five exhibits.  (D.I. 226.) None of the exhibits dated earlier than the Santa Clara conference discloses the following point of purported distinction between Krause and claim 1 of the '878 Patent made by the applicants for the Patent during its prosecution: "Both field coding and frame coding occur at the same time during the operation of the apparatus shown in the Krause patent in contrast to the invention defined in claim 1 involving a selective one, but not both, of frame coding or field coding." Exhibit A to the Puri declaration is dated after the Santa Clara conference.  Exhibit B to the Puri declaration fails to disclose a selective one, but not both, of frame coding or field coding.  Exhibit C to the Puri declaration fails to disclose a selective one, but not both, of frame coding or field coding.  Exhibit D to the Puri declaration fails to disclose a selective one, but not both, of frame coding or field coding.  Exhibit E to the Puri declaration fails to disclose a selective one, but not both, of frame coding or field coding.

74.     Regardless of whether Mr. Puri and Mr. Aravind conceived of the alleged invention claimed by the '878 Patent prior to the Santa Clara conference, Mr. Puri had a duty to disclose the Columbia University paper to the PTO.  In addition, Mr. Puri had a duty to disclose the presentation of the Columbia University paper at the Santa Clara conference to the PTO.

75.     The applicants for the '878 Patent did not allege during the prosecution of the Patent that it was entitled to a priority date earlier than the Santa Clara conference.  Moreover, the examiner lacked evidence sufficient to determine that the '878 Patent is entitled to a priority date earlier than the Santa Clara conference. Lacking evidence sufficient to determine that the '878 Patent is entitled to a priority date earlier than the Santa Clara conference, a reasonable examiner would have deemed the Columbia University paper to be prior art to the '878 Patent.  In addition,

FOX DEFENDANTS' ANSWER AND COUNTERCLAIM
CASE NO. 10 CV 0146 JAH (CAB)

1    lacking evidence sufficient to determine that the '878 Patent is entitled to a priority date earlier

2    than the Santa Clara conference, a reasonable examiner would have deemed the presentation of

3    the Columbia University paper at the Santa Clara conference to be prior art to the '878 Patent.

4         76.    Furthermore, lacking evidence sufficient to determine that the '878 Patent is

5    entitled to a priority date earlier than the Santa Clara conference, a reasonable examiner would

6    have been substantially likely to consider the Columbia University paper important in deciding

7    whether to issue the '878 Patent, including claim 1 of the Patent.  In addition, lacking evidence

8    sufficient to determine that the '878 Patent is entitled to a priority date earlier than the Santa Clara

9    conference, a reasonable examiner would have been substantially likely to consider the

10   presentation of the Columbia University paper at the Santa Clara conference important in

11   deciding whether to issue the '878 Patent, including claim 1 of the Patent.

12        77.    The individuals involved in the application for and prosecution of the '878 Patent

13   did not disclose either the Columbia University paper or its presentation at the Santa Clara

14   conference to the PTO.  Indeed, the individuals involved in the application for and prosecution of

15   the '878 Patent failed to disclose any art cumulative to either the material disclosures in the

16   Columbia University paper or its presentation at the Santa Clara conference during the

17   prosecution of the Patent.

18        78.    At least Mr. Puri intended to deceive the PTO by intentionally failing to disclose

19   the Columbia University paper and its presentation at the Santa Clara conference in the

20   application for the '878 Patent and throughout its prosecution (e.g., in the applicants' December

21   22, 1992 response to the PTO's September 22, 1992 Office Action).

22        79.    At least Mr. Puri's intentional failure to disclose the Columbia University paper

23   and its presentation at the Santa Clara conference constitutes inequitable conduct that renders the

24   '878 Patent void and unenforceable.

25        80.    Claim 32 of the '878 Patent claims: "An apparatus for encoding digital video

26   signals, comprising:

27        a means for receiving digital video input signals; and

28

61

1        a means for performing variable word length encoding adaptively in response to

2        the video input signals."

3        81.    Receiving digital video input signals was known in the prior art to the '878 Patent.

4   For example, a person of ordinary skill in the art would know that digital video decoders in the

5   prior art received digital video input signals.  The applicants for the '878 Patent failed to inform

6   the PTO that performing variable word length encoding selectively in response to video input

7   signals was known in the prior art as well.

8        82.    For example, the article "A Perceptually Tuned Sub-Band Image Coder with

9   Image Dependant Quantization and Post Quantization Data Compression," published in the

10  Proceedings of the 1989 IEEE International Conference on Acoustics, Speech, and Signal

11  Processing and authored by Robert J. Safranek and James D. Johnston, discloses performing

12  variable word length encoding selectively in response to video input signals.  The article

13  ("Safranek/Johnston Article") is prior art to the '878 Patent under 35 U.S.C. § 102.  Mr. Safranek

14  and Mr. Johnston were colleagues of Mr. Puri and Mr. Aravind at AT&T Bell Laboratories.

15       83.    The Abstract of the Safranek/Johnston Article states:

16       One set of codebooks consisting of less than 100000 entries is used for all images,
         while the codebook subset used for any given image is dependent on the
17       distribution of the quantizer outputs for that image.

18  A person of skill in the art would recognize that the term "codebook," as used in the Abstract of

19  the Safranek/Johnston Article, refers to a codebook used in variable word length encoding.  A

20  person of skill in the art would recognize that the Abstract of the Safranek/Johnston Article

21  discloses performing variable word length encoding selectively in response to image input

22  signals.

23       84.    Section 5 of the Safranek/Johnston Article states:

24       Each non-zero block is encoded using one two or four dimensional Huffman
         codebooks.  The codebook with the highest dimensionality that will fit the rate (i.e.
25       lowest potential rate) is used for each block.  The dimensionality of the codebook
         for each block is combined with the block activity information and transmitted for
26       each sub-band that is not all zeros.  The four dimensional codebook operates on
         2x2 codeword blocks where each codeword has an absolute value of less than 4.
27       The two dimensional codebook operates on 2x1 codeword blocks where each
         codeword has an absolute value of less than 26.  Likewise the one dimensional

28

62

la-1095446

codebook operates on individual codewords of any size required to meet the perceptual threshold.

A person of ordinary skill in the art would recognize that Huffman coding is a type of variable word-length encoding. A person of ordinary skill in the art would recognize that Section 5 of the Safranek/Johnston Article discloses the function of performing variable word length encoding selectively in response to image input signals.

85. A person of ordinary skill in the art would recognize that the Safranek/Johnston Article's disclosure of performing variable word length encoding selectively in response to image input signals is applicable in response to video input signals as well, since video input signals are composed in part of image input signals. For example, in a subsequent article entitled "A Perceptually Tuned Sub-Band Image Coder," Mr. Safranek and Mr. Johnston declare:

> The motivation for this work has been to develop an image coder that will give nearly perceptually lossless coding of arbitrary input at as low a bitrate as possible. With the predicted availability of moderate rate (64-128kbps) switched data networks, there will be increasing demand for transmission services utilizing high quality image transmission. Two examples of these services are remote slideshows and video catalogs.

Proc. SPIE Symp. Human Vision & Elec. Imaging: Models, Methods & Apps., Santa Clara, CA (Feb. 1990). As another example, an article entitled "Interframe Coding with Variable Block-Size Motion Compensation," on which Atul Puri is the lead author, states that the disclosures in the Safranek/Johnston Article "significantly reduce[] the bits required for inter-frame video encoding." Proc. IEEE Global Comm. Conf., §§ 2.7.1-2.7.5 (Tokyo, Nov. 1987). As yet another example, in an article entitled "Motion-Compensated Video Coding with Adaptive Perceptual Quantization," Mr. Puri and Mr. Aravind cite the Safranek/Johnston Article as a relevant "scheme[] for image and video compression." IEEE Trans. on Circuits and Sys. for Video Tech., vol. 1, No. 4, pp. 351-361 (Dec. 1991).

86. A person of ordinary skill in the art would further recognize that the selective performance of variable word length encoding taught in the Safranek/Johnston Article could be made adaptive to the mode of motion compensation used in producing an estimate of a video signal.

87. The Abstract of the Safranek/Johnston Article, combined with the knowledge of a person of ordinary skill in the art, renders obvious the limitation "performing variable word length encoding adaptively in response to the video input signals" of claim 32. In addition, Section 5 of the Safranek/Johnston Article, combined with the knowledge of a person of ordinary skill in the art, renders obvious the limitation "performing variable word length encoding adaptively in response to the video input signals" of claim 32.

88. A person of ordinary skill in the art would recognize that claim 32 of the '878 Patent is obvious in view of the Safranek/Johnston Article and the knowledge of an ordinary person of skill in the art.

89. A person of ordinary skill in the art would recognize the materiality of the Abstract of the Safranek/Johnston Article to the patentability of the '878 Patent, including the patentability of claim 32 of the Patent. In addition, a person of skill in the art would recognize the materiality of Section 5 of the Safranek/Johnston Article to the patentability of the '878 Patent, including the patentability of claim 32 of the Patent.

90. The individuals involved in the application for and prosecution of the '878 Patent did not disclose the Safranek/Johnston Article to the PTO. Indeed, the individuals involved in the application for and prosecution of the '878 Patent did not disclose any art cumulative to the material disclosures in the Safranek/Johnston Article during the prosecution of the Patent.

91. As noted above, both Mr. Puri and Mr. Aravind were aware of the Safranek/Johnston Article. For example, Mr. Puri and Mr. Aravind cited the Safranek/Johnston Article in an article they authored that was published a month after the filing date of the '878 Patent. At least the Abstract of the Safranek/Johnston Article would have alerted Mr. Puri and Mr. Aravind to the Safranek/Johnston Article's disclosure of the selective performance of variable word length encoding in response to image input signals. Furthermore, Mr. Puri and Mr. Aravind were aware of the materiality of the Safranek/Johnston Article to the patentability of the '878 Patent, including the patentability of claim 32 of the Patent.

92. At least Mr. Puri intended to deceive the PTO by intentionally failing to disclose the Safranek/Johnston Article in the application for the '878 Patent and throughout its

prosecution. In addition, at least Mr. Aravind intended to deceive the PTO by intentionally

failing to disclose the Safranek/Johnston Article in the application for the '878 Patent and

throughout its prosecution.

93. At least Mr. Puri's intentional failure to disclose the Safranek/Johnston Article

constitutes inequitable conduct that renders the '878 Patent void and unenforceable. In addition,

at least Mr. Aravind's intentional failure to disclose the Safranek/Johnston Article constitutes

inequitable conduct that renders the '878 Patent void and unenforceable.

94. An actual controversy exists between the Fox Defendants and MPT with respect to

the enforceability of the '878 Patent. The Fox Defendants therefore seek a declaration that the

'878 Patent is unenforceable.

## COUNT III

### DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '678 PATENT

95. The Fox Defendants incorporate and reallege the allegations of Paragraphs 1-6 of

their Counterclaim as if fully stated herein.

96. The '678 Patent is unenforceable and void due to inequitable conduct that occurred

during the application for and prosecution of the Patent.

97. Individuals associated with the application for and prosecution of the '678 Patent,

including at least Atul Puri, violated their duty of candor and good faith in dealing with the PTO

by intentionally and deceptively failing to disclose material information to the PTO.

98. The application for the '678 Patent was filed on March 18, 1994. Atul Puri was the

sole applicant for the '678 Patent and is the sole named inventor listed on the Patent. The '678

Patent was originally assigned to AT&T Corp. ("AT&T").

99. Under Title 37, CFR § 1.56, "[e]ach individual associated with the filing and

prosecution of a patent application has a duty of candor and good faith in dealing with the [PTO],

which includes a duty to disclose to the [PTO] all information known to that individual to be

material to patentability . . . ." On April 26, 1994, Atul Puri signed a sworn statement stating in

pertinent part: "I believe I am the original, first and sole inventor of the subject matter which is

claimed and for which a patent is sought on the invention entitled Optimized Scanning of

Transform Coefficients In Video Coding the specification of which was filed on March 18, 1994 .
. . . I acknowledge the duty to disclose all information known to me which is material to
patentability as defined in Title 37, Code of Federal Regulations, 1.56(a)." At least Mr. Puri did
not perform his sworn duty to disclose information material to the examination of the application
for the '678 Patent.

100. Claim 7 of the '678 Patent claims "a method for encoding a video signal,
comprising the steps of:

[1] generating a set of frequency coefficient signals, the set representing the video signal,
wherein the set corresponds to an NxM matrix and each of the frequency coefficient signals
corresponds to a predetermined horizontal coordinate and a predetermined vertical coordinate in
the matrix;

[2] alternatively selecting between a first scanning order and a second scanning order in
response to a frame format associated with the video signal;

[3] scanning the set of frequency coefficient signals according to the selected scanning
order to create an ordered set of frequency coefficient signals; and

[4] generating an encoded video signal, the encoded video signal including the ordered set
of frequency coefficient signals."

101. As the Background section of the '678 Patent discloses, the step recited by
limitation 1 of claim 7 of the '678 Patent was known in the prior art. In addition, as the
Background section of the '678 Patent discloses, the step recited by limitation 3 of claim 7 of the
'678 Patent, upon the substitution of the term "zigzag scanning order" for "selected scanning
order," was known in the prior art. Furthermore, as the Background section of the '678 Patent
discloses, the step recited by limitation 4 of claim 7 of the '678 Patent was known in the prior art.

102. The '678 Patent purports to solve a problem that existed in the prior art – namely,
that conventional zigzag scans do not allow for efficient coding of interlaced format video
signals. According to the '678 Patent, a zigzag scan is selected to code progressive format video
signals, while an alternate scan is selected to code interlaced format video signals.

FOX DEFENDANTS' ANSWER AND COUNTERCLAIM
CASE NO. 10 CV 0146 JAH (CAB)

la-1095446

103. The '678 Patent fails to inform the PTO that the adaptive selection between a zigzag scan and an alternate scan was known in the prior art.

104. In 1991, AT&T submitted a paper entitled "MPEG-2 Video Coding Proposal" ("AT&T Proposal") to the International Organisation for Standardization ("ISO"). In a signed declaration in Case No. 06-CV-0684H before this Court, Atul Puri stated that he "wrote and maintained a copy of [the AT&T Proposal] in the course of [his] regularly conducted activities at AT&T." AT&T submitted the AT&T Proposal in an effort to persuade the ISO to include the Proposal's disclosures in the MPEG-2 standard. The AT&T Proposal was published by the ISO on or about November 1991. Under 35 U.S.C. § 102, the AT&T Proposal is prior art to the '678 Patent.

105. The AT&T Proposal discloses selection between two scanning orders based upon an encoder's decision as to whether to encode image data in frame mode or field mode. For example, Section 4.1 of the AT&T Proposal states:

> Once the AC coefficients are quantized, they are coded for transmission much as in MPEG-l. A scanning matrix ("scan") defines the order in which they are processed for encoding. Two fixed scans are defined: one for use in the frame-coding mode and the other for use in the field-coding mode. These scans do not change with the picture type. They are illustrated in Fig. 4.

Figure 4 of the AT&T Proposal displays two scanning orders to be used based upon an encoder's decision as to whether to encode image data in frame mode or field mode.

106. A person of skill in the art would recognize the materiality of the AT&T Proposal's disclosure of the selection between two scanning orders as material to the patentability of the '678 Patent, including the patentability of claim 7 of the Patent. A reasonable examiner would have been substantially likely to consider the AT&T Proposal important in deciding whether to issue the '678 Patent, including claim 7 of the Patent.

107. If claim 7 is construed as MPT apparently construes it in this litigation, then the AT&T Proposal anticipates and invalidates claim 7 of the '678 Patent. In its Complaint, MPT alleges that the encoding of video in H.264 format practices "methods claimed in the '678 patent." Claims 1 and 7 of the '678 Patent are the only independent method claims. Thus, MPT appears to assert that the encoding of video in H.264 format practices claims 1 and 7 of the '678 Patent. The

Fox Defendants deny any such assertions. For example, the encoding of video in H.264 format does not infringe claim 1 of the '678 Patent, at least because it does not involve the creation of the ordered set of frequency coefficient signals: (0, 0), (0, 1), (0, 2), (0, 3), (1, 0), (1, 1), (2, 0), (2, 1), (1, 2), (1, 3), (0, 4), (0, 5), (0, 6), (0, 7), (1, 7). As another example, the encoding of video in H.264 format does not infringe claim 7 of the '678 Patent, at least because it does not involve alternatively selecting between a first scanning order and a second scanning order in response to a frame format associated with the video signal.

108.    If MPT's allegation that encoding of video in H.264 format practices methods claimed in the '678 Patent is taken as true, then at least claim 7 of the '678 Patent is anticipated by the AT&T Proposal. Specifically, step 1 of claim 7 of the '678 Patent is anticipated by at least Figure 2 and Section 3 of the AT&T Proposal (collectively); step 2 is anticipated by at least Figure 2, Section 3, and Section 4.1 of the AT&T Proposal (collectively); step 3 is anticipated by at least Figures 2 and 4 and Section 4.1 of the AT&T Proposal (collectively); and step 4 is anticipated by at least Figure 2 and Section 9 of the AT&T Proposal (collectively).

109.    As a second example, in February 1993, the journal Signal Processing: Image Communication published a paper entitled "Adaptive Frame/Field Motion Compensated Video Coding" authored by Atul Puri, R. Aravind, and Barry Haskell ("Puri Paper"). Under 35 U.S.C. § 102, the Puri Paper is prior art to the '678 Patent. The Puri Paper cites the AT&T Proposal as a reference.

110.    Like the AT&T Proposal, the Puri Paper discloses selection between two scanning orders based upon an encoder's decision as to whether to encode image data in frame mode or field mode. For example, Section 6.2 of the Puri Paper, entitled "Frame/field coefficient scans," states:

> In our scheme, the adaptation of coefficient scans does not require additional overhead as we utilize the coding mode information sent for each macroblock. This adaptation is designed to exploit major differences in structure of coefficients produced by the DCT applied to blocks of frame or field-coded macroblocks. Typically, DCT coefficients resulting from frame-coded blocks exhibit significant values not only in low frequency terms around the upper left-hand corner of coefficient block, but also in the lower left-hand corner term. The DCT coefficients for the field coded blocks, on the other hand, due to larger vertical spacing between field lines exhibit significant values in higher vertical but lower

FOX DEFENDANTS' ANSWER AND COUNTERCLAIM
CASE NO. 10 CV 0146 JAH (CAB)

horizontal frequency terms. Two scans, one suitable for frame-coded blocks and the other field-coded blocks, are shown in Fig. 7, and allow significant non-zero coefficients to be quickly scanned with short zero runs for efficient VWI, coding of pairs of runs and levels.

Figure 7 of the Puri Paper displays two scanning orders to be used based upon an encoder's decision as to whether to encode image data in frame mode or field mode.

111. A person of ordinary skill in the art would recognize the materiality of the Puri Paper's disclosure of the selection between two scanning orders as material to the patentability of the '678 Patent, including the patentability of claim 7 of the Patent. A reasonable examiner would have been substantially likely to consider the Puri Paper important in deciding whether to issue the '678 Patent, including claim 7 of the Patent.

112. Indeed, if claim 7 is construed as MPT apparently construes it this litigation, the Puri Paper anticipates and invalidates claim 7 of the '678 Patent. As discussed above, MPT appears to contend that the encoding of video in H.264 format practices claim 7 of the '678 Patent. If that allegation is taken as true, then at least claim 7 of the '678 Patent is anticipated by the Puri Paper. Specifically, step 1 of claim 7 of the '678 Patent is anticipated by at least Figure 9 and Section 4 of the Puri Paper (collectively); step 2 is anticipated by at least Figure 9 and Section 4.1 of the Puri Paper (collectively); step 3 is anticipated by at least Figures 7 and 9 and Sections 4.1 and 6.2 of the Puri Paper (collectively); and step 4 is anticipated by at least Figure 9 of the Puri Paper.

113. Individuals involved in the prosecution of the '678 Patent, including at least Atul Puri, were aware of the fact that the AT&T Proposal and the Puri Paper disclose information material to the patentability of the '678 Patent, including the patentability of claim 7 of the Patent, during the prosecution of the Patent. Mr. Puri was aware of the material contents of the AT&T Proposal because he authored it. In addition, Mr. Puri was aware of the material contents of the Puri Paper because he coauthored it. However, neither Mr. Puri nor any other individual involved in the application for and prosecution of the '678 Patent disclosed either the AT&T Proposal or the Puri Paper during the prosecution of the Patent.

114. The individuals involved in the application for and prosecution of the '678 Patent did not disclose any prior art cumulative to the material disclosures in the AT&T Proposal during the prosecution of the Patent. In addition, the individuals involved in the application for and prosecution of '678 Patent did not disclose any prior art cumulative to the material disclosures in the Puri Paper during the prosecution of the Patent.

115. At least Mr. Puri intended to deceive the PTO by intentionally failing to disclose the AT&T Proposal in the application for the '678 Patent and throughout its prosecution. In addition, at least Mr. Puri intended to deceive the PTO by intentionally failing to disclose the Puri Paper in the application for the '678 Patent and throughout its prosecution.

116. At least Mr. Puri's intentional failure to disclose the AT&T Proposal constitutes inequitable conduct that renders the '678 Patent void and unenforceable. In addition, at least Mr. Puri's intentional failure to disclose the Puri Paper constitutes inequitable conduct that renders the '678 Patent void and unenforceable.

117. An actual controversy exists between the Fox Defendants and MPT with respect to the enforceability of the '678 Patent. The Fox Defendants therefore seek a declaration that the '678 Patent is unenforceable.

## COUNT IV

### DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '377 PATENT

118. The Fox Defendants incorporate and reallege the allegations of Paragraphs 1-6 of their Counterclaim as if fully stated herein.

119. The '377 Patent is unenforceable and void due to inequitable conduct that occurred during the application for and prosecution of the Patent.

120. Individuals associated with the application for and prosecution of the '377 Patent, including at least Peter H. Westerink, Arun N. Netravali, Robert J. Safranek, and James D. Johnston violated their duty of candor and good faith in dealing with the PTO by intentionally and deceptively failing to disclose material information to the PTO.

70

121. The application for the '377 Patent was filed on December 11, 1990. Mr. Westerink, Mr. Netravali, Mr. Safranek, and Mr. Johnston were among the applicants for the Patent and are named as co-inventors on the Patent.

122. Under Title 37, CFR § 1.56, "[e]ach individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [PTO], which includes a duty to disclose to the [PTO] all information known to that individual to be material to patentability . . . ." In February 1991, Mr. Netravali, Mr. Westerink, Mr. Safranek, and Mr. Johnston signed a sworn statement stating in pertinent part: "I believe I am an original, first and joint inventor of the subject matter which is claimed and for which a patent is sought on the invention entitled Adaptive Non-Linear Quantizer the specification of which was filed on December 11, 1990 . . . . I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, 1.56(a)." At least Mr. Netravali, Mr. Westerink, Mr. Safranek, and Mr. Johnston did not perform their sworn duty to disclose information material to the examination of the application for the '377 Patent.

123. Claim 1 of the '377 Patent claims: "An encoder including a coder for developing encoder output signals from frame difference signals, prediction means responsive to said encoder output signals for predicting a next frame's signals, and means for developing said frame difference signals from applied next frame signals of an image frame and from output signals of said prediction means, the improvement comprising:

said coder including controllable quantizer means that quantizes said difference signals in accordance with a quantization schema that varies with the dictates of a control signal; and

said coder including means, responsive to said applied next frame signals, to develop said control signal, which control signal varies throughout said applied next frame with changes in at least one selected characteristic of said applied next frame signals."

la-1095446

124. In a September 13, 1991 office action, the PTO rejected claims 1, 8, 9, and 11 of the '377 Patent as being anticipated by any one of five prior art references. For example, with respect to one of the references ("Hoelzlwimmer"), the examiner stated the following:

> In considering claim 1, Hoelzlwimmer discloses that 1) the claimed coder is met by the entropy device, 2) the claimed prediction means is met by the adder and memory, 3) the claimed means for developing is met by the subtractor, 4) the claimed controllable quantizer means is met by the quantizer and 5) the claimed means to develop said control signal is met by the buffer control means.

125. In a January 17, 1992 response to the September 13, 1991 office action, the applicants for the '377 Patent purported to distinguish Hoelzlwimmer and the other four prior art references. For example, the applicants stated the following:

> Hoelzlwimmer's buffer control means is responsive to the output buffer. It is an "after-the-fact" arrangement. It is a feedback arrangement where the output of the buffer control means affects future input signals of the quantizer. In contradistinction, claim 1 defines
>
> > ...means, responsive to said applied next frame signals, to develop said control signal, which control signal varies throughout said applied next frame with changes in at least one selected characteristic of said applied next frame signals. (emphasis supplied)
>
> This means, as defined in claim 1, is nothing like the buffer control means described by Hoelzlwimmer et al. It is forward looking, and it changes throughout the next frame with changes in at least one selected characteristic of the next frame signals.

126. Forward-looking quantizer-control means that change throughout the next frame with changes in at least one selected characteristic of the next frame signals – the '377 Patent applicants' purported point of distinction between the claimed invention and the prior art – were known in the prior art. The applicants for the '377 Patent failed to inform the PTO of that fact. Moreover, the quantization of difference signals in accordance with a quantization schema that varies with the dictates of a control signal, wherein the control signal varies throughout an applied next frame with changes in at least one selected characteristic of the applied next frame signals, as recited by the functional limitations of claim 1 of the Patent, was known in the prior art. The applicants for the '377 Patent failed to inform the PTO of that fact.

127. As one example, pages 521-26 of *Digital Pictures* (discussed above with respect to the '226 Patent) disclose the quantization of difference signals in accordance with a quantization

la-1095446

schema that varies with the dictates of a control signal, wherein the control signal varies throughout an applied next frame with changes in at least one selected characteristic of the applied next frame signals.  Under 35 U.S.C. § 102, *Digital Pictures* is prior art to the '377 Patent.

128.    Pages 521-26 of *Digital Pictures* disclose an adaptive quantization scheme.  The adaptive quantization scheme disclosed in pages 521-26 of *Digital Pictures* is expressly designed to have an overall average bit-rate of 2.0 bits/pel.  In the scheme, blocks of DCT-transformed field differentials for luminance are divided into sub-blocks.  The system determines whether each sub-block should be deemed temporally active with respect to luminance.  If a sub-block is not deemed temporally active, the system examines the spatial activity of the sub-block with respect to luminance.  The selected quantization scheme then varies depending on the spatial activity $S_i$ of the sub-block with respect to luminance.  Blocks that are more spatially active with respect to luminance are encoded with more bits.

129.    A person of skill in the art would recognize that the spatial activities $S_i$ disclosed in pages 521-26 of *Digital Pictures* constitute a control signal for the adaptive quantizer.  In addition, a person of skill in the art would recognize that pages 521-26 of *Digital Pictures* disclose the quantization of difference signals in accordance with a quantization schema that varies with the dictates of a control signal, wherein the control signal varies throughout an applied next frame with changes in at least one selected characteristic of the applied next frame signals.

130.    A person of ordinary skill in the art would recognize that at least pages 521-26 of *Digital Pictures* are material to the patentability of the '377 Patent, including the patentability of claim 1 of the Patent.  Indeed, pages 521-26 of *Digital Pictures* disclose the '377 Patent applicants' purported point of distinction between the claimed invention and the prior art.

131.    The individuals involved in the application for and prosecution of the '377 Patent did not disclose pages 521-26 of *Digital Pictures* to the PTO during the prosecution of the Patent.  Mr. Netravali, in particular, did not disclose pages 521-26 of *Digital Pictures* to the PTO.  Indeed, the individuals involved in the application for and prosecution of the '377 Patent did not disclose any art cumulative to the material disclosures on pages 521-26 of *Digital Pictures* during the prosecution of the Patent.

132.    In the Background of the Invention section of the '377 Patent, the applicants for the '377 Patent instead referred the examiner to pages 537 et seq. of *Digital Pictures*:

> In "Design of Statistically Based Buffer Control Policies for Compressed Digital Video", Zdepski et al., an IEEE conference, 1989, pg. 1343-1349, describe an approach where the quantizer in the DPCM loop interacts with an adaptive mode control circuit. The circuit measures the number of bits generated by the quantizer and, based on preselected thresholds, decides for the next frame on one of eight possible quantizer step sizes. The selected step size is employed for the next frame. A similar approach is described in "Digital Pictures" by A. N. Netravali and B. G. Haskell, Plenum Press, 1988, pg. 537 et seq.

But unlike the adaptive quantization scheme described on pages 537 et seq., the adaptive quantization scheme described on pages 521-26 of *Digital Pictures* does not determine the quantizer step size for the next frame based on the number of bits generated by the quantizer in a previous frame.  Furthermore, unlike the adaptive quantization scheme described on pages 537 et seq., the adaptive quantization scheme described on pages 521-26 of *Digital Pictures* involves quantizing difference signals in accordance with a quantization schema that varies with the dictates of a control signal, wherein the control signal varies throughout an applied next frame with changes in at least one selected characteristic of the applied next frame signals.

133.    The '377 Patent applicants' failure to cite the more relevant section of *Digital Pictures* during the prosecution of the Patent was intentionally misleading and deceptive.

134.    At least Mr. Netravali, as the co-author of *Digital Pictures*, was aware of the contents of pages 521-26 of *Digital Pictures*.  At least Mr. Netravali was aware of the materiality of pages 521-26 of *Digital Pictures* to the patentability of the '377 Patent, including the patentability of claim 1 of the Patent.

135.    At least Mr. Netravali's intentional failure to disclose pages 521-26 of *Digital Pictures* constitutes inequitable conduct that renders the '377 Patent void and unenforceable.

136.    As a second example, an article in the Proceedings of the IEEE, vol. 73, No. 4 (April 1985) entitled "Advances in Picture Coding," authored by Hans Musmann, Peter Pirsch, and Hans-Joachim Grallert, discloses the function of quantizing difference signals in accordance with a quantization schema that varies with the dictates of a control signal, wherein the control signal varies throughout an applied next frame with changes in at least one selected characteristic

74

of the applied next frame signals.  Under 35 U.S.C. § 102, the article ("Musmann Article") is

prior art to the '377 Patent.  The Introduction to the Musmann Article declares that the authors

had found an improved adaptive quantizer.  The Introduction goes on to state:

> Advances in transform coding are presented in Section IV. To optimize the
> quantization of the spectral coefficients the mean-square quantization error has
> been used as an optimization criterion in the past. New approaches try to control
> the quantization by the local picture content and to adapt the quantization to the
> characteristics of the human visual perception.

Pages 532-33 of the Musmann Article state:

> [A] picture can be divided into several segments which are quantized differently.
> . . . An adaptive quantizer can be realized by a set of L separate quantizers which
> are switched on by the activity value [determined for each segment of the picture].

Pages 532-33 of the Musmann Article disclose that the activity values may be based on

characteristics of a frame signal, such as the brightness differences between neighboring pels.

137.    A person of skill in the art would recognize that the "activity values" referenced in

the above-excerpted passage of the Musmann Article are a control signal for the adaptive

quantizer.    In addition, a person of skill in the art would recognize that pages 532-33 of the

Musmann Article disclose the quantization of difference signals in accordance with a quantization

schema that varies with the dictates of a control signal, wherein the control signal varies

throughout an applied next frame with changes in at least one selected characteristic of the

applied next frame signals.

138.    For these reasons, a person of ordinary skill in the art would recognize that at least

pages 532-33 of the Musmann Article are material to the patentability of the '377 Patent,

including claim 1 of the Patent.  Indeed, pages 532-33 of the Musmann Article disclose the '377

Patent applicants' purported point of distinction between the claimed invention and the prior art.

139.    At least Mr. Netravali and Mr. Westerink were aware of the material contents of

the Musmann Article, including its disclosure of an improved adaptive quantizer.  Figure 5.6.4 on

page 473 of *Digital Pictures*, which Mr. Netravali coauthored, is taken directly from Figure 37 of

the Musmann Article.  At least the Introduction of the Musmann Article would have alerted Mr.

Netravali to the Musmann Article's disclosure of the quantization of difference signals in

accordance with a quantization schema that varies with the dictates of a control signal, wherein

the control signal varies throughout an applied next frame with changes in at least one selected characteristic of the applied next frame signals. As another example, Mr. Westerink was the lead author of an article entitled "Subband Coding of Images Sequences at Low Bit Rates," in which he cited the entire Musmann Article as a reference. *Signal Processing: Image Comm.*, vol. 2, issue 4, pp. 441-48 (Dec. 1990). At least the Introduction of the Musmann Article would have alerted Mr. Westerink to the Musmann Article's disclosure of the quantization of difference signals in accordance with a quantization schema that varies with the dictates of a control signal, wherein the control signal varies throughout an applied next frame with changes in at least one selected characteristic of the applied next frame signals.

140.    The individuals involved in the application for and prosecution of the '377 Patent, including Mr. Netravali and Mr. Westerink, did not disclose the Musmann Article to the PTO during the prosecution of the Patent. In addition, the individuals involved in the application for and prosecution of the '377 Patent did not disclose any prior art cumulative to the material disclosures in the Musmann Article during the prosecution of the Patent.

141.    At least Mr. Netravali was aware of the materiality of the Musmann Article to the patentability of the '377 Patent, including the patentability of claim 1 of the Patent. In addition, at least Mr. Westerink was aware of the materiality of the Musmann Article to the patentability of the '377 Patent, including the patentability of claim 1 of the Patent.

142.    At least Mr. Netravali's intentional failure to disclose the Musmann Article constitutes inequitable conduct that renders the '377 Patent void and unenforceable. In addition, at least Mr. Westerink's intentional failure to disclose the Musmann Article constitutes inequitable conduct that renders the '377 Patent void and unenforceable.

143.    As a third example, Section 4 of the Safranek/Johnston Article (first discussed above with respect to the '878 Patent) states:

> Each sub-band is coded using a DPCM coder with a variable uniform mid-riser quantizer. It uses a three point predictor optimized for each sub-band. The predictor coefficients are quantized to 5 bit accuracy and set as side information. The quantizer step size is adjusted to ensure that the perceptual criterion is just met at most critical point in the sub-band. This ensures that every point in the sub-band receives a sufficiently high level of coding without overcoding the most sensitive position. Due to the wide dynamic range of the perceptual threshold

la-1095446

values, adaptation of the quantizer step size will be advantageous. However, we have just begun testing a modified step-size algorithm that responds within each sub-band to the image texture information.

A person of ordinary skill in the art would recognize that a quantization schema involving adaptation of the quantizer step size in response to the image texture information within each sub-band would inherently require a control signal.

144. Section 3 of the Safranek/Johnston Article describes a perceptual masking model including sensitivity adjustment for brightness and texture masking adjustment. In conjunction with Section 3, Section 4 of the Safranek/Johnston Article discloses to a person of skill in the art a quantization schema that varies with the dictates of a control signal, wherein the control signal varies throughout an image with changes in at least one selected characteristic of the image.

145. A person of skill in the art would recognize that the Safranek/Johnston Article's disclosure of a quantization schema that varies with the dictates of a control signal, wherein the control signal varies throughout an image with changes in at least one selected characteristic of the image is applicable to applied video signals as well, since video input signals are composed in part of image input signals. For example, in a subsequent article entitled "A Perceptually Tuned Sub-Band Image Coder," Mr. Safranek and Mr. Johnston declare:

The motivation for this work has been to develop an image coder that will give nearly perceptually lossless coding of arbitrary input at as low a bitrate as possible. With the predicted availability of moderate rate (64-128kbps) switched data networks, there will be increasing demand for transmission services utilizing high quality image transmission. Two examples of these services are remote slideshows and video catalogs.

Proc. SPIE Symp. Human Vision & Elec. Imaging: Models, Methods & Apps., Santa Clara, CA (Feb. 1990).

146. For these reasons, a person of ordinary skill in the art would recognize that at least Sections 3 and 4 of the Safranek/Johnston Article are material to the patentability of the '377 Patent, including claim 1 of the Patent. Indeed, Sections 3 and 4 of the Safranek/Johnston Article disclose the '377 Patent applicants' purported point of distinction between the claimed invention and the prior art.

147. The individuals involved in the application for and prosecution of the '377 Patent did not disclose the Safranek/Johnston Article to the PTO during the prosecution of the Patent. Mr. Safranek and Mr. Johnston, in particular, did not disclose the Safranek/Johnston Article to the PTO. Indeed, the individuals involved in the application for and prosecution of the '377 Patent did not disclose any art cumulative to the material disclosures in the Safranek/Johnston Article during the prosecution of the Patent.

148. At least Mr. Safranek and Mr. Johnston, as the co-authors of the Safranek/Johnston Article, were aware of its material contents. In addition, at least Mr. Safranek and Mr. Johnston were aware of the Safranek/Johnston Article's materiality to the patentability of the '377 Patent, including the patentability of claim 1 of the Patent.

149. At least Mr. Safranek intended to deceive the PTO by intentionally failing to disclose the Safranek/Johnston Article in the application for the '377 Patent and throughout its prosecution. In addition, at least Mr. Johnston intended to deceive the PTO by intentionally failing to disclose the Safranek/Johnston Article in the application for the '377 Patent and throughout its prosecution.

150. At least Mr. Safranek's intentional failure to disclose the Safranek/Johnston Article constitutes inequitable conduct that renders the '377 Patent void and unenforceable. In addition, at least Mr. Johnston's intentional failure to disclose the Safranek/Johnston Article constitutes inequitable conduct that renders the '377 Patent void and unenforceable.

151. An actual controversy exists between the Fox Defendants and MPT with respect to the enforceability of the '377 Patent. The Fox Defendants therefore seek a declaration that the '377 Patent is unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, the Fox Defendants pray:

A. That Plaintiff and Counter-Defendant MPT take nothing for its claims in its Complaint that the Fox Defendants infringed the '226 Patent, the '878 Patent, the '678 Patent, and the '377 Patent;

FOX DEFENDANTS' ANSWER AND COUNTERCLAIM
CASE NO. 10 CV 0146 JAH (CAB)

1        B.      That the Court dismiss with prejudice MPT's claims in its Complaint that the Fox

2  Defendants infringed the '226 Patent, the '878 Patent, the '678 Patent, and the '377 Patent;

3        C.      That the Court declare the '226 Patent, the '878 Patent, the '678 Patent, and the '377

4  Patent void and unenforceable;

5        D.      That this case be deemed exceptional pursuant to 35 U.S.C. § 285 and that the Fox

6  Defendants be awarded attorneys' fees;

7        E.      That the Fox Defendants be awarded their taxable costs and disbursements; and

8        F.      That the Fox Defendants be awarded such other and further relief as the Court

9  deems just and proper.

10

11  Dated: October 18, 2010          MORRISON & FOERSTER LLP

12

13                      By:   /s/ Vincent J. Belusko

14                           VINCENT J. BELUSKO
                                VBelusko@mofo.com

15                         Attorneys for the Fox Defendants

16

17

18

19

20

21

22

23

24

25

26

27

28

FOX DEFENDANTS' ANSWER AND COUNTERCLAIM
CASE NO. 10 CV 0146 JAH (CAB)

la-1095446

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 18, 2010 a true and correct copy of the foregoing was transmitted electronically to the Electronic Filing System of the United States District Court for the Southern District of California, which, under Local Civil Rule 5.4(b)&(c), is believed to have sent notice of such filing, constituting service of the final document, on all Filing Users, all of whom are believed to have consented to electronic service.

Executed on October 18, 2010, at Los Angeles, California.

/s/ Vincent J. Belusko
VINCENT J. BELUSKO

FOX DEFENDANTS' ANSWER AND COUNTERCLAIM
CASE NO. 10 CV 0146 JAH (CAB)

la-1095446