COOLEY LLP
JOHN S. KYLE (199196)
jkyle@cooley.com
4401 Eastgate Mall
San Diego, CA 92121
Telephone:      (858) 550-6000
Facsimile:      (858) 550-6420

STEPHEN C. NEAL (170085)
nealsc@cooley.com
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone:      (650) 843-5000
Facsimile:      (650) 857-0663

FRANK V. PIETRANTONIO (*pro hac vice*)
fpietrantonio@cooley.com
JONATHAN G. GRAVES (*pro hac vice*)
jgraves@cooley.com
NATHAN K. CUMMINGS (*pro hac vice*)
ncummings@cooley.com
JUSTIN P.D. WILCOX (*pro hac vice*)
jwilcox@cooley.com
One Freedom Square
11951 Freedom Drive
Reston, VA 20190-5656
Telephone:      (703) 456-8000
Facsimile:      (703) 456-8100

Attorneys for Plaintiff
MULTIMEDIA PATENT TRUST

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Multimedia Patent Trust,<br><br>    Plaintiff,<br><br>    v.<br><br>NBC Universal, Inc., et al.,<br><br>    Defendants. | Case No. 3:10-CV-0146-JAH (CAB)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MPT'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES OF DEFENDANT AUDIOVOX CORPORATION**<br><br>Date:  February 7, 2010<br>Time:  2:30 p.m.<br>Courtroom:  11<br>Judge:  Hon. John A. Houston |

**Table of Contents**

Page

I.     INTRODUCTION ........................................................................................... 1

II.    BACKGROUND ............................................................................................ 1

III.   LEGAL BACKGROUND .............................................................................. 1

       A.    The Legal Standard for Well-Pleaded Claims and Affirmative Defenses ............. 1

       B.    The Legal Standards For Striking and Dismissing Insufficient Pleadings ........... 3

IV.    ARGUMENT ................................................................................................. 4

       A.    The Court Should Strike Audiovox's Invalidity Defense Based on 35 U.S.C. § 132 ................................................................................................. 4

       B.    The Court Should Strike Audiovox's "Waiver/Equitable Estoppel/Implied License/Exhaustion" Defense ............................................................. 4

             1.    Waiver ......................................................................................... 4

             2.    Equitable Estoppel ....................................................................... 5

             3.    Waiver or Estoppel Based on Participation in Standards-Setting Organization ........................................................ 6

             4.    Implied License ........................................................................... 7

             5.    Exhaustion ................................................................................... 7

       C.    The Court Should Strike Audiovox's Laches Defense ......................................... 8

       D.    The Court Should Strike Audiovox's Intervening Rights Defense ...................... 9

       E.    The Court Should Strike Audiovox's Unclean Hands Defense ........................... 9

       F.    The Court Should Strike Audiovox's Patent Misuse Defense ........................... 10

       G.    The Court Should Strike Audiovox's Unjust Enrichment Defense .................... 11

       H.    The Court Should Strike Audiovox's Reservation of Rights Defense ................ 11

       I.     The Court Should Strike Audiovox's Inequitable Conduct Defense and Dismiss Audiovox's Counterclaim Allegation of Inequitable Conduct ............. 12

             1.    Legal Principles for Pleading Inequitable Conduct ................................ 12

             2.    Audiovox Has Failed to Plead Inequitable Conduct With Particularity ................................................................................. 13

                   a.    Audiovox's Theories Regarding the '226 Patent ......................... 13

                         (i)     Digital Pictures ................................................. 13

                         (ii)    Micke Thesis .................................................... 14

                         (iii)   Document No. 81 ............................................... 15

                         (iv)    Other Deficiencies Regarding Audiovox's Inequitable Conduct Allegations Regarding the '226 Patent ......................................................... 17

                   b.    Audiovox's Theories Regarding the '878 Patent ......................... 17

                         (i)     The Ericsson Reference ....................................... 17

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 3:10-CV-0146-JAH (CAB)

i.

MEMORANDUM IN SUPPORT OF MPT'S MOTION TO
DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE
DEFENSES OF AUDIOVOX

COOLEY LLP

**Table of Contents**
**(continued)**

Page

(ii)     The Columbia Paper ........................................................... 19

(iii)    Other Deficiencies Regarding Audiovox's Inequitable Conduct Allegations Regarding the '878 Patent ........................................................... 20

c.    Audiovox's Allegations Regarding the '377 Patent .................... 21

d.    Audiovox's Allegations Regarding the '678 Patent .................... 22

J.    The Court Should Dismiss Audiovox's Assertion of Equitable Defenses in Its Counterclaim ........................................................... 22

V.    CONCLUSION ........................................................... 23

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 3:10-CV-0146-JAH (CAB)

ii.

MEMORANDUM IN SUPPORT OF MPT'S MOTION TO
DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE
DEFENSES OF AUDIOVOX

COOLEY LLP

**Page(s)**

CASES

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
    960 F.2d 1020 (Fed. Cir. 1992)...................................................................... 5, 8

*Advanced Micro Devices v. Samsung Elecs. Co.*,
    No. C 08-00986 SI, 2010 WL 963920 (N.D. Cal. Mar. 16, 2010) ...................... 18

*Anticancer Inc. v. Xenogen Corp.*,
    248 F.R.D. 278 (S.D. Cal. 2007)..................................................................... 2, 3

*Aptix Corp. v. Quickturn Design Sys., Inc.*,
    269 F.3d 1369 (Fed. Cir. 2001)...................................................................... 10

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ........................................................................... 2, 3, 5, 8

*Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*,
    718 F. Supp. 2d 1167 (N.D. Cal. 2010) ............................................................ 2

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................... passim

*Correct Craft IP Holdings, LLC v. Malibu Boats, LLC*,
    No. 6:09cv813, 2010 Wl 598693 (M.D. Fla. Feb. 17, 2010)........................... 18, 21

*County Vanlines Inc. v. Experien Info. Solutions, Inc.*,
    205 F.R.D. 148 (S.D.N.Y. 2002) .................................................................... 12

*CTF Dev., Inc. v. Penta Hospitality, LLC*,
    No. C 09-2429, 2009 WL 3517617 (N.D. Cal. Oct. 26, 2009)................................ 2

*Elan Microelectronics Corp. v. Apple, Inc.*,
    No. C 09-01531 RS, 2010 WL 3069322 (N.D. Cal. Aug. 4, 2010).......... 15, 16, 20

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009)................................................................ passim

*Fantasy, Inc. v. Fogerty*,
    984 F.2d 1524 (9th Cir. 1993)......................................................................... 3

*Hayne v. Green Ford Sales, Inc.*,
    263 F.R.D. 647 (D. Kan. 2009)....................................................................... 2

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 3:10-CV-0146-JAH (CAB)

iii.

MEMORANDUM IN SUPPORT OF MPT'S MOTION TO
DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE
DEFENSES OF AUDIOVOX

COOLEY LLP

*HCRI TRS Acquirer, LLC v. Iwer*,
   No. 3:09cv2691, 2010 WL 1704236 (N.D. Ohio Apr. 28, 2010) ............................................ 2

*Hebert v. Lisle Corp.*,
   99 F.3d 1109 (Fed. Cir. 1996) ................................................................................................ 13

*In re Cellular 101, Inc.*,
   539 F.3d 1150 (9th Cir. 2008) .................................................................................................. 4

*In re Stac Elecs. Sec. Litig.*,
   89 F.3d 1399 (9th Cir. 1996) ............................................................................................. 3, 23

*Keystone Driller Co. v. Gen. Excavator Co.*,
   290 U.S. 240 (1933) ................................................................................................................ 10

*Lucent Techs., Inc. v. Microsoft Corp.*,
   544 F. Supp. 2d 1080 (S.D. Cal. 2008) .................................................................................... 9

*Mallinckrodt, Inc. v. Medipart, Inc.*,
   976 F.2d 700 (Fed. Cir. 1992) ................................................................................................ 10

*McKesson Automation, Inc. v. Swisslog Italia S.P.A.*,
   712 F. Supp. 2d 283 (D. Del. 2010) .................................................................................. 13, 20

*Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*,
   803 F.2d 684 (Fed. Cir. 1986) .................................................................................................. 7

*Monster Cable Prods., Inc. v. Avalanche Corp.*,
   No. C-08-4792, 2009 WL 650369 (N.D. Cal. Mar. 11, 2009) ................................................. 9

*Portney v. CIBA Vision Corp.*,
   593 F. Supp. 2d 1120 (C.D. Cal. 2008) ............................................................................... 3, 5

*Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*,
   599 F.3d 1308 (Fed. Cir. 2010) .............................................................................................. 15

*Qarbon.com Inc. v. eHelp Corp.*,
   315 F. Supp. 2d 1046 (N.D. Cal. 2004) ................................................................................... 3

*Quanta Computer, Inc. v. LG Elecs., Inc.*,
   553 U.S. 617 (2008) .............................................................................................................. 7, 8

*Rambus Inc. v. Infineon Techs. AG*,
   318 F.3d 1081, 1096 (Fed. Cir. 2003) ...................................................................................... 6

Case No. 3:10-CV-0146-JAH (CAB)          iv.          MEMORANDUM IN SUPPORT OF MPT'S MOTION TO
                                                      DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE
                                                      DEFENSES OF AUDIOVOX

*Sloan Valve Co. v. Zurn Indus., Inc.*,
  712 F. Supp. 2d 743 (N.D. Ill. 2010) ....................................................... 3, 17, 19, 22

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
  537 F.3d 1357 (Fed. Cir. 2008) ........................................................................... 12

*Sun Microsystems, Inc. v. Dataram Corp.*,
  No. Civ-96-20708, 1997 WL 50272 (N.D. Cal. Feb. 4, 1997) ............................. 3

*Swingless Golf Club Corp. v. Taylor*,
  679 F. Supp. 2d 1060 (N.D. Cal. 2009) ............................................................. 11

*Symbol Techs., Inc. v. Proxim Inc.*,
  No. Civ. 01-801, 2004 WL 1770290 (D. Del. July 28, 2004) ............................... 6

*Synopsys, Inc. v. Magma Design Automation, Inc.*,
  No. C-04-3923, 2007 WL 420184 (N.D. Cal. Feb. 6, 2007) ............................... 10

*SynQor, Inc. v. Artesyn Techs., Inc.*,
  No. 2:07-CV-497-TJW-CE, 2010 WL 3860131 (E.D. Tex. Sept. 10, 2010) .................. 14, 19

*United States v. Amwest Surety Ins. Co.*,
  54 F.3d 601 (9th Cir. 1995) ................................................................................. 4

*United States v. Olano*,
  507 U.S. 725 (1993) ............................................................................................. 4

*United States v. Univis Lens Co.*,
  316 U.S. 241 (1942) ............................................................................................. 8

*Va. Panel Corp, v. MAC Panel, Co.*,
  133 F.3d 860 (Fed. Cir. 1997) ....................................................................... 10, 11

*Waddington N. Am., Inc. v. Sabert Corp.*,
  No. 09-4883, 2010 WL 3907036 (D.N.J. Sept. 29, 2010) ................................ 15, 16, 17, 23

*Westvaco Corp. v. Int'l Paper Co.*,
  991 F.2d 735 (Fed. Cir. 1993) ............................................................................. 9

*Winbond Elecs. Corp. v. ITC*,
  262 F.3d 1363 (Fed. Cir. 2001) ......................................................................... 10

*Windsurfing Int'l, Inc. v. AMF, Inc.*,
  782 F.2d 995 (Fed. Cir. 1986) ........................................................................... 10

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 3:10-CV-0146-JAH (CAB)

v.

MEMORANDUM IN SUPPORT OF MPT'S MOTION TO
DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE
DEFENSES OF AUDIOVOX

COOLEY LLP

**Table of Authorities**
**(continued)**

Page

*Wyshak v. City Nat'l Bank*,
   607 F.2d 824 (9th Cir. 1979)..................................................................................................... 3

**STATUTES**

35 U.S.C. § 132 ........................................................................................................ 1, 4, 23

35 U.S.C. § 252 ................................................................................................................... 9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a)(2) ....................................................................................................... 2

Fed. R. Civ. P. 9(b) .................................................................................................. passim

Fed. R. Civ. P. 12 .............................................................................................................. 1

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 3

Fed. R. Civ. P. 12(f) .......................................................................................................... 3

Fed. R. Civ. P. 15(a)(2) ............................................................................................. 11, 23

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 3:10-CV-0146-JAH (CAB)

vi.

MEMORANDUM IN SUPPORT OF MPT'S MOTION TO
DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE
DEFENSES OF AUDIOVOX

COOLEY LLP

1     **I.**      **INTRODUCTION**

2         Pursuant to Federal Rule of Civil Procedure 12, Plaintiff Multimedia Patent Trust

3 ("MPT") moves the Court to strike certain affirmative defenses and dismiss certain counterclaims

4 pled by Audiovox Corporation ("Audiovox") in its Answer to Multimedia Patent Trust's Second

5 Amended Complaint ("Answer"), attached hereto as Exhibit F. Audiovox has asserted a

6 multitude of affirmative defenses and counterclaims, many of which lack factual support

7 sufficient to satisfy the pleading requirements of this Circuit and of recent Supreme Court

8 precedent. Furthermore, Audiovox's inequitable conduct counterclaims should be dismissed

9 because they fail to satisfy the heightened pleading standard required by Rule 9(b) as clarified in

10 *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1318 (Fed. Cir. 2009). Accordingly, the

11 Court should strike Audiovox's defenses of waiver, equitable estoppel, license, patent exhaustion,

12 laches, intervening rights, inequitable conduct, unclean hands, patent misuse, unjust enrichment,

13 reservation of rights, and the portion of Audiovox's defense of invalidity based on 35 U.S.C. §

14 132, and dismiss Audiovox's unenforceability counterclaim based on inequitable conduct, laches,

15 estoppel, waiver, implied license, and exhaustion.

16     **II.**      **BACKGROUND**

17         MPT holds the entire right, title, and interest to U.S. Patent Nos. 4,958,226 ("the '226

18 Patent"), 5,227,878 ("the '878 Patent"), 5,500,678 ("the '678 Patent"), and 5,136,377 ("the '377

19 Patent") (collectively "the Patents-in-Suit"). These patents concern video compression

20 technologies. MPT first filed suit against Audiovox for patent infringement on January 19, 2010,

21 and filed its Second Amended Complaint on October 4, 2010. On October 21, 2010, Audiovox

22 filed its Answer, asserting various affirmative defenses and counterclaims, many of which MPT

23 now seeks to strike or have dismissed because of Audiovox's failure to plead them sufficiently.

24     **III.**     **LEGAL BACKGROUND**

25         **A.**      **The Legal Standard for Well-Pleaded Claims and Affirmative Defenses**

26         The Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

27 (2007), fundamentally altered the federal pleading requirements. Under *Twombly*, plaintiffs must

28 show a plausible entitlement to relief with "more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." 550 U.S. at 555. The Supreme Court was careful to note that it did not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief ***that is plausible on its face***." *Id.* at 570.[1] The Supreme Court held that the complaints of plaintiffs who "have not nudged their claims across the line from conceivable to plausible … must be dismissed." *Id.*

Two years later, in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50, 1953 (2009), the Supreme Court clarified its decision in *Twombly* by (a) specifically noting the new pleading requirements applied to "all civil actions," and (b) enumerating a two-pronged approach to pleading requirement analysis. First, the tenet that courts must accept as true all allegations contained in a complaint is "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* at 1949. Second, where well-pleaded factual allegations "do not permit the court to infer more than the mere possibility of misconduct, the complaint … has not 'show[n] that the pleader is entitled to relief.'" *Id.* at 1950 (citing Fed. R. Civ. P. 8(a)(2)). Although legal conclusions can form the "framework of a complaint, they must be supported by factual allegations" to survive a motion to dismiss. *Id.*

Although both *Twombly* and *Iqbal* addressed deficiencies in plaintiffs' complaints, federal courts have expanded the pleading requirements to apply to affirmative defenses as well. *Anticancer Inc. v. Xenogen Corp.*, 248 F.R.D. 278, 282 (S.D. Cal. 2007) (applying *Twombly* to patent litigation context and holding that "parties must demonstrate a plausible entitlement to relief in all pleadings, including … affirmative defenses"); *Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1172 (N.D. Cal. 2010) ("Applying the [*Iqbal*] standard will also serve to weed out the boilerplate listing of affirmative defenses."); *Hayne v. Green Ford Sales, Inc.*, 263 F.R.D. 647, 649-640 (D. Kan. 2009) ("The majority of courts addressing the issue … have applied the heightened pleading standard announced in *Twombly* … to affirmative defenses."); *CTF Dev., Inc. v. Penta Hospitality, LLC*, No. C 09-2429, 2009 WL 3517617, at *8 (N.D. Cal. Oct. 26, 2009) (striking affirmative defenses as insufficiently pleaded under *Iqbal*) ; *HCRI TRS Acquirer, LLC v. Iwer*, No. 3:09cv2691, 2010 WL 1704236, at

---

[1] Emphasis has been added unless otherwise noted.

MEMORANDUM IN SUPPORT OF MPT'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES OF AUDIOVOX

*3 (N.D. Ohio Apr. 28, 2010) ("[B]oth complaints and affirmative defenses should provide enough notice to the opposing party that indeed there is some plausible, factual basis for the assertion." (quotation omitted)); *Sloan Valve Co. v. Zurn Indus., Inc.*, 712 F. Supp. 2d 743, 755 (N.D. Ill. 2010) (striking affirmative defenses because defendant "offer[ed] no allegations in support thereof"). A pleading in support of affirmative defenses must contain "enough facts to be plausible on its face" and cannot be a mere "formulaic recitation" of the elements of the defense. *Twombly*, 550 U.S. at 555, 570; *Anticancer*, 248 F.R.D. at 282 ("like claims … affirmative defenses also make claims to relief, such as … inequitable conduct"). Accordingly, a court should strike boilerplate defenses bereft of factual support showing a plausible entitlement to relief. *Twombly*, 550 U.S. at 555, 570; *Iqbal*, 129 S. Ct. at 1950, 1954.

### B. The Legal Standards For Striking and Dismissing Insufficient Pleadings

Under Federal Rule 12(f), a court may "strike from a pleading an insufficient defense." Fed. R. Civ. P. 12(f); *see, e.g., Portney v. CIBA Vision Corp.*, 593 F. Supp. 2d 1120, 1131 (C.D. Cal. 2008) (striking defenses, *inter alia*, of estoppel and waiver). The motion exists to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994). A plaintiff must be given "fair notice" of the defenses being advanced against it, *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979), so a defense may be struck where the pleading fails to allege facts sufficient to provide fair notice of the defense and its grounds. *Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1048-49 (N.D. Cal. 2004) (striking defenses, *inter alia,* of waiver and estoppel); *Sun Microsystems, Inc. v. Dataram Corp.*, No. Civ-96-20708, 1997 WL 50272, at *4 (N.D. Cal. Feb. 4, 1997) (striking implied license defense).

Under Federal Rule 12(b)(6), a court may dismiss a counterclaim that fails to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 2 James Wm. Moore et al., Moore's Federal Practice ¶ 12.34 (quoting *Twombly*). *See In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (holding that claims based on "[c]onclusory allegations of law and unwarranted inferences" will not survive a motion to dismiss for failure to

state a claim).

IV.    **ARGUMENT**

A.    **The Court Should Strike Audiovox's Invalidity Defense Based on 35 U.S.C. § 132**

In its Second defense, Audiovox alleges that each Patent-in-Suit is invalid under, *inter alia*, 35 U.S.C. § 132. Answer ¶ 465. Section 132 directs the PTO to (a) provide notices of rejection to applicants when applicable, and (b) "prescribe regulations" for reexamination proceedings. Section 132 plainly fails to set forth any cause of action or basis for relief regarding patent invalidity. Significantly, Audiovox provides no explanation for its theory of invalidity under this statute. Because Audiovox's Section 132 defense (Answer ¶ 465) fails to set forth a legally cognizable claim or defense, the Court should strike it.

B.    **The Court Should Strike Audiovox's "Waiver/Equitable Estoppel/Implied License/Exhaustion" Defense**

Audiovox has failed to provide a sufficient factual basis to support its Fifth defense. Although Audiovox labels its Fifth defense as an amalgamation of "Waiver/Equitable Estoppel/Implied License/Exhaustion," MPT will separately analyze these defenses under their distinct legal standards. Audiovox has failed to allege sufficient facts to support a plausible claim satisfying the necessary elements for any of these affirmative defenses.

1.    **Waiver**

Waiver is "the intentional relinquishment or abandonment of a known right." *In re Cellular 101, Inc.*, 539 F.3d 1150, 1155 n.2 (9th Cir. 2008) (quoting *United States v. Olano*, 507 U.S. 725, 731 (1993)). In some cases where a party does not expressly waive its right, "[a]n implied waiver of rights will be found where there is clear, decisive and unequivocal conduct which indicates a purpose to waive the legal rights involved." *United States v. Amwest Surety Ins. Co.*, 54 F.3d 601, 602-03 (9th Cir. 1995) (internal quotation omitted).

Audiovox's waiver defense should be stricken because Audiovox has not provided a factual basis for this defense beyond the assertion that "MPT is barred by the doctrine[] of waiver." Answer ¶ 468. Audiovox has failed to set forth *any* facts in its Answer that demonstrate

that MPT or MPT's predecessors-in-interest intentionally relinquished or abandoned any rights, nor has it provided a factual basis for a plausible entitlement to the defense. *See Iqbal*, 129 S. Ct. at 1953; *Portney*, 593 F. Supp. 2d at 1131 (granting motion to strike affirmative defense of waiver where defendant asserted that "[d]iscovery may demonstrate evidence" but failed to provide such evidence). As Audiovox has not provided notice of the defense of waiver or established a plausible entitlement to the defense, the Court should strike Audiovox's waiver defense.

## 2.    Equitable Estoppel

To state a claim for equitable estoppel, a defendant must establish three elements: (1) the patentee, through misleading conduct, led the alleged infringer to reasonably infer that the patentee did not intend to enforce its patent against the alleged infringer; (2) the defendant relied on that conduct; and (3) due to its reliance, the defendant will be materially prejudiced if the patentee is allowed to proceed with its infringement claim. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992). To establish the first element of the defense, the defendant must demonstrate that the patentee's conduct "supported an inference that the patentee did not intend to press an infringement claim against the alleged infringer." *Id.* at 1042. As for the element of reliance, "[t]he accused infringer must show that, in fact, it substantially relied on the misleading conduct of the patentee in connection with taking some action." *Id.* at 1042-43. To satisfy the prejudice requirement, the defendant must establish that it would be materially prejudiced, either due to a change in economic position or loss of evidence, if the patentee is allowed to proceed with its suit. *Id.* at 1043.

Audiovox's equitable estoppel defense should be stricken because Audiovox has provided no factual basis for this defense. Answer ¶ 468. Audiovox bears the burden of proof for this affirmative defense, *Aukerman*, 960 F.2d at 1028, but it has failed to set forth facts supporting a plausible showing of the elements of the defense of equitable estoppel. Indeed, Audiovox has failed to identify: (1) the patent owners' allegedly misleading action or inaction; (2) how Audiovox relied on such allegedly misleading conduct; and (3) the prejudice, either economic or evidentiary, that it suffered based upon that reliance. *See Aukerman*, 960 F.2d at 1028. The mere assertion that "MPT and/or its predecessor-in-interest have licensed the Patents-in-Suit against

Audiovox to one or more of Audiovox's suppliers" is wholly insufficient to support Audiovox's equitable estoppel defense. Answer ¶ 468. The Court should strike Audiovox's equitable estoppel defense because Audiovox fails to provide facts sufficient to support the defense.

**3.** **Waiver or Estoppel Based on Participation in Standards-Setting Organization**

Audiovox claims that MPT should be barred from enforcing the Patents-in-Suit against Audiovox under a theory of waiver or estoppel based upon MPT's alleged involvement in the H.264 standards body. Answer ¶ 468. Where a defendant alleges waiver or estoppel related to the patentee's involvement with a standards-setting organization ("SSO"), the defendant must set forth proof that the SSO-member patentee owed some duty to the SSO by virtue of its membership, and that it breached that duty. *See Rambus Inc. v. Infineon Techs.* AG, 318 F.3d 1081, 1096 (Fed. Cir. 2003); *Symbol Techs., Inc. v. Proxim Inc.*, No. Civ. 01-801, 2004 WL 1770290, at * 8 (D. Del. July 28, 2004). *Rambus* does not endorse a general duty of disclosure for all SSO participants. *Symbol Techs.*, 2004 WL 1770290, at *8. Rather, any duty to disclose is defined by the contractual agreement entered by members of that particular SSO. *See Rambus*, 318 F.3d at 1096. Audiovox, therefore, must show that MPT or its predecessor owed some duty by virtue of membership in an SSO, and it must identify the source of this alleged duty. *See id*. at 1097-98. Audiovox must further show what patents, applications, or other materials are the subject of any duty that might exist and it also must show when the duty arose concerning those materials. *See id.* at 1100-01. Further, even assuming that some duty does apply, Audiovox must show what specific obligation was owed by the SSO member and that it was breached. *See id*. at 1102.

Audiovox fails to plead "facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. First, Audiovox has not identified in which specific standards body for H.264 MPT allegedly participated. Second, Audiovox has not showed—or even alleged—that MPT or its predecessor-in-interest were actual members of a standards body related to H.264, merely alleging that MPT or its predecessor-in-interest "participated in the standards body activity for H.264." Answer ¶ 468. Third, Audiovox has not identified the source of MPT's

alleged duty to disclose patents; Audiovox has not alleged that the rules of the H.264 standards body applied to nonmembers. Finally, Audiovox has failed to allege when this alleged duty arose concerning the Patents-in-Suit. Accordingly, the Court should strike Audiovox's Fifth defense to the extent it concerns MPT's alleged involvement in the H.264 standards body.

### 4. Implied License

The Court should also strike Audiovox's affirmative defense of implied license because Audiovox has failed to set forth any factual basis for the defense. To establish an implied license, Audiovox must show that it purchased a component used in its accused infringing products from an entity licensed under the Patents-in-Suit, that the component has "no noninfringing uses" and that "circumstances of the sale must plainly indicate that the grant of a license should be inferred." *Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 686 (Fed. Cir. 1986) (internal quotation omitted).

In support of this defense, Audiovox again alleges only that "MPT and/or its predecessors-in-interest have licensed the Patents-in-Suit against Audiovox to one or more of Audiovox's suppliers." Answer ¶ 468. This naked allegation does not provide factual support plausibly establishing the basic elements of an implied license defense. Audiovox's Answer fails to show that it purchased some component of its accused infringing products from an entity licensed by MPT to practice the Patents-in-Suit, that the component embodies essential features of the patented inventions, and that the component has no other non-infringing use. *Met-Coil*, 803 F.2d at 686. Therefore, Audiovox has failed to plead sufficiently the implied license defense, and the Court should strike it.

### 5. Exhaustion

The doctrine of patent exhaustion, also known as the "first sale" doctrine, limits "the patent rights that survive the initial authorized sale of a patented item." *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 621 (2008). To establish patent exhaustion, Audiovox must show that: (1) it purchased a particular component or components used in its accused infringing products from a supplier licensed under the Patents-in-Suit and authorized to provide them to Audiovox; (2) the particular component "embodies essential features of" the patented inventions;

and (3) the component has no reasonable use other than to practice the patented inventions. *Id.* at 627-28 (quoting *United States v. Univis Lens Co.*, 316 U.S. 241, 250-51 (1942)).

Audiovox has alleged no facts in support of this defense. Audiovox has set forth no facts showing that it actually acquired the rights to use any technology embodying any of the inventions of the Patents-in-Suit, let alone that it obtained those rights from a source authorized to convey them. Answer ¶ 468; *see Quanta*, 553 U.S. at 627-28. Because Audiovox has not pled sufficient facts to establish the elements of patent exhaustion, the Court should strike this defense.

## C. The Court Should Strike Audiovox's Laches Defense

To establish the equitable defense of laches, a defendant has the burden to prove by a preponderance of the evidence that: (1) the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant; and (2) the delay operated to the prejudice or injury of the defendant. *Aukerman*, 960 F.2d at 1032. Regarding the first element, the period of delay is measured from the time the plaintiff knew or reasonably should have known of the defendant's alleged infringing activities to the date of suit. *Id.* at 1032. Where the plaintiff alleges infringement of more than one patent, laches must be determined separately for each. *Meyers v. Brooks Shoe, Inc.*, 912 F.2d 1459, 1462 (Fed. Cir. 1990), *overruled on other grounds, Auckerman*, 960 F.2d 1020. The defendant also must establish that it suffered material economic or evidentiary prejudice. *Aukerman,* 960 F.2d at 1033. To establish economic prejudice, an alleged infringer must demonstrate that it detrimentally changed its economic position during the period of delay; to establish evidentiary prejudice, an alleged infringer must demonstrate that, for example, it lost records or access to witnesses, or that memories concerning long-past events have faded. *Id.*

Audiovox has provided *no facts whatsoever* to demonstrate either of the required elements of delay and prejudice resulting from the alleged delay. Answer ¶ 469. Audiovox has failed to set forth any factual allegations in support of its conclusory statement that MPT's damages claim is "limited under the doctrine of laches." *Id.* Because Audiovox has failed to plead a plausible entitlement to relief based on facts and not mere legal conclusions, the Court should accordingly

strike the Sixth defense of laches from Audiovox's Answer. *See Iqbal*, 129 S. Ct. at 1950; *Monster Cable Prods., Inc. v. Avalanche Corp.*, No. C-08-4792, 2009 WL 650369, at *1 (N.D. Cal. Mar. 11, 2009) (striking laches affirmative defense because the party asserting the defense failed to plead supporting facts).

### D. The Court Should Strike Audiovox's Intervening Rights Defense

Audiovox's intervening rights defense is deficient on its face and should be stricken. Audiovox pleads "absolute and equitable intervening rights" under 35 U.S.C. § 252. Answer ¶ 472. But Section 252 concerns only rights that accrued before the *reissuance* of a patent—not a certificate of correction. *Westvaco Corp. v. Int'l Paper Co.*, 991 F.2d 735, 743 (Fed. Cir. 1993) ("No reissued patent shall abridge or affect the right of any person … who made, purchased or used prior to the grant of a reissue anything patented by the reissued patent….") (quoting 35 U.S.C. § 252). Although the PTO issued a certificate of correction concerning the '878 Patent, Audiovox cites no authority to support its claim that intervening rights under Section 252 could accrue to Audiovox between the time the '878 Patent issued and the time the certificate of correction issued. Audiovox therefore has not pled a viable defense under Section 252, and the Court should strike it. *See Lucent Techs., Inc. v. Microsoft Corp.*, 544 F. Supp. 2d 1080, 1104 (S.D. Cal. 2008) (granting summary judgment of no intervening rights "[g]iven the lack of any controlling authority clearly authorizing the application of intervening rights to certificates of correction, and the plain language of the statute which only applies these rights to reissued patents"). In any event, Audiovox fails to allege any facts to support its claim to intervening rights, relying solely on the conclusory assertion that it "made substantial preparations for practicing processes that do not infringe any valid claim of the original patent." Answer ¶ 472. In short, the Court should strike Audiovox's Ninth defense of intervening rights.

### E. The Court Should Strike Audiovox's Unclean Hands Defense

Audiovox bases its Fourteenth defense of unclean hands on two theories: (1) its alleged accrual of intervening rights before the '878 Patent certificate of correction issued; and (2) alleged inequitable conduct in the prosecution of the Patents-in-Suit. Answer ¶¶ 508-511. "The doctrine of unclean hands bars a plaintiff from seeking equitable relief 'only where some

1 unconscionable act of [the plaintiff] has immediate and necessary relation to the equity that he

2 seeks in respect of the matter in litigation.'" *Synopsys, Inc. v. Magma Design Automation, Inc.*,

3 No. C-04-3923, 2007 WL 420184, at *3 (N.D. Cal. Feb. 6, 2007) (quoting *Keystone Driller Co. v.*

4 *Gen. Excavator Co.*, 290 U.S. 240, 245 (1933)). To demonstrate unclean hands, there must be

5 some misconduct involving fraud, such as committing (a) fraud on the PTO while prosecuting a

6 patent, or (b) litigation misconduct during the enforcement of the patent. *See, e.g.*, *Winbond*

7 *Elecs. Corp. v. ITC*, 262 F.3d 1363, 1372 (Fed. Cir. 2001) (misconduct before the PTO); *Aptix*

8 *Corp. v. Quickturn Design Sys., Inc.*, 269 F.3d 1369, 1375-76 (Fed. Cir. 2001) (litigation

9 misconduct). *See also* Ex. A at A000012-14 (granting Lucent and MPT summary judgment of no

10 unclean hands).

11       Audiovox fails to plead sufficiently the defense of unclean hands. As an initial matter,

12 Audiovox's allegations do not explain how its alleged accrual of intervening rights could

13 constitute unclean hands. Indeed, Audiovox does not allege that there is any fraudulent

14 misconduct involved in its intervening rights defense. Answer ¶ 472. Furthermore, as explained

15 in detail below, Audiovox's inequitable conduct allegations fail to plead the defense with the

16 required specificity required under *Exergen*. In short, the Court should strike Audiovox's unclean

17 hands defense in its entirety.

    **F.**    **The Court Should Strike Audiovox's Patent Misuse Defense**

19       In order to successfully assert a defense of patent misuse, "the alleged infringer [must]

20 show that the patentee has impermissibly broadened the 'physical or temporal scope' of the patent

21 grant with anticompetitive effect." *Va. Panel Corp, v. MAC Panel, Co.*, 133 F.3d 860, 868 (Fed.

22 Cir. 1997) (quoting *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1001 (Fed. Cir. 1986)).

23 When faced with an allegation that a certain practice constitutes patent misuse, "a court must

24 determine if that practice is 'reasonably within the patent grant, i.e., that it relates to subject

25 matter within the scope of the patent claims.'" *Id.* at 869 (quoting *Mallinckrodt, Inc. v. Medipart,*

26 *Inc.*, 976 F.2d 700, 708 (Fed. Cir. 1992)). If the practice is reasonably within the grant, it cannot

27 constitute patent misuse. *Id.* If it is not reasonably within the grant, the court must analyze the

28 anticompetitive effect under the "rule of reason." *Id.*

**MEMORANDUM IN SUPPORT OF MPT'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES OF AUDIOVOX**

Audiovox's Fifteenth defense of patent misuse rests upon its allegation of MPT's alleged "pattern of abuse and misuse of the United States Patent system, by using and employing abusive and coercive strategies to intimidate parties to pay royalties to MPT." Answer ¶ 512. But Audiovox's bare allegations do not show that it is plausibly entitled to relief. Indeed, Audiovox does not identify in what way MPT has attempted to broaden the scope of its rights under the Patents-in-Suit. Audiovox also fails to identify any of MPT's practices that are allegedly unrelated to "subject matter within the scope" of the claims of the Patents-in-Suit. *Va. Panel Corp*, 133 F.3d at 868. Moreover, Audiovox does not identify any anticompetitive effect resulting from MPT's alleged actions. *Id*. Therefore, the Court should strike Audiovox's Fifteenth defense of patent misuse as insufficient.

### G. The Court Should Strike Audiovox's Unjust Enrichment Defense

Audiovox's unjust enrichment defense is insufficiently pled and should be stricken. To establish this defense Audiovox must "show that [MPT] received a benefit *and* unjustly retained such a benefit at the expense of another." *Swingless Golf Club Corp. v. Taylor*, 679 F. Supp. 2d 1060, 1069 (N.D. Cal. 2009) (emphasis original) (dismissing unjust enrichment counterclaim). Here, Audiovox has failed to identify what would be unjust about any benefit obtained by MPT as a result of this action. Indeed, Audiovox conclusorily asserts that "any monetary recovery by Plaintiff in this action would result in an unjust enrichment." Answer ¶ 515. But Audiovox has not met its burden of plausibly claiming that it would be unjust for MPT to retain damages or monetary relief awarded by this Court. *Twombly*, 550 U.S. at 570. The Court should therefore strike Audiovox's Eighteenth defense of unjust enrichment.

### H. The Court Should Strike Audiovox's Reservation of Rights Defense

In support of its Twenty-First defense, Audiovox pleads that it "expressly reserves the right to allege and assert additional defenses" and "expressly incorporates by reference herein all defenses related to Patents-in-Suit against Audiovox pled by co-defendants in this action." Answer ¶ 518. As an initial matter, this affirmative defense lacks any legally cognizable basis. Furthermore, the Federal Rules simply do not permit Audiovox to reserve its rights to plead some heretofore unknown defense it may wish to plead in the future or defenses pled by others. If

Case No. 3:10-CV-0146-JAH (CAB)                11                MEMORANDUM IN SUPPORT OF MPT'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES OF AUDIOVOX

COOLEY LLP

1    Audiovox wishes to add a defense, it must seek leave to do so.  Fed. R. Civ. P. 15(a)(2).  In any

2    event, allowing Audiovox to incorporate defenses not specifically pled in its Answer would

3    defeat the purpose of notice pleading.  Therefore, the Court should strike Audiovox's Twenty-

4    First defense.  *County Vanlines Inc. v. Experien Info. Solutions, Inc.*, 205 F.R.D. 148 (S.D.N.Y.

5    2002) (striking reservation of rights defense).

6    **I.**     **The Court Should Strike Audiovox's Inequitable Conduct Defense and**

7         **Dismiss Audiovox's Counterclaim Allegation of Inequitable Conduct**

8         **1.**     **Legal Principles for Pleading Inequitable Conduct**

9        Proof of inequitable conduct requires establishing by clear and convincing evidence that a

10   patent applicant "(1) made an affirmative misrepresentation of material fact, failed to disclose

11   material information, or submitted false material information, and (2) intended to deceive the

12   [PTO]."  *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008)

13   (internal quotation omitted).  Allegations of inequitable conduct must be pled with particularity to

14   satisfy Federal Rule of Civil Procedure 9(b).  *Exergen*, 575 F.3d at 1318.

15       In *Exergen,* the Federal Circuit recently clarified the heightened standard required under

16   Rule 9(b) for pleading inequitable conduct.  To plead inequitable conduct with the necessary

17   particularity, a party must:  (1) "identify which claims, and which limitations in those claims, the

18   withheld references are relevant to, and where in those references the material information is

19   found;" (2) identify what allegedly material information from the withheld reference is

20   "supposedly absent from the information of record" and therefore not cumulative; and (3) provide

21   a reasonable basis to infer the *scienter* element of inequitable conduct.  *Id.* at 1329-1330.  To

22   satisfy the scienter element, a party must establish that the patentee had both "knowledge of the

23   withheld material information" and "specific intent to deceive the PTO."  *Id.* at 1327, 1330.

24   Regarding the knowledge prong, a party must plead facts sufficient to reasonably infer that some

25   "specific individual, who owed a duty of disclosure in prosecuting" the allegedly unenforceable

26   patent, knew of the allegedly material information contained in the undisclosed references.  *Id.* at

27   1330.  In determining whether a party has pled knowledge with sufficient specificity under Rule

28   9(b), "one cannot assume that an individual, who generally knew that a reference existed, also

Case No. 3:10-CV-0146-JAH (CAB)                    12        MEMORANDUM IN SUPPORT OF MPT'S MOTION TO
                                                                                                   DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE
                                                                                                                    DEFENSES OF AUDIOVOX

COOLEY LLP

knew of the specific material <u>information</u> contained in that reference." *Id.* (emphasis in original). To satisfy the specific intent prong, a party must plead specific facts that plausibly suggest that the identified individual made a "deliberate decision to withhold a known material reference or to make a knowingly false misrepresentation—a necessary predicate for inferring deceptive intent." *Id*. at 1331 (internal citation and quotation omitted). The Federal Circuit explained that requiring specific facts to support the inference of intent prevents inequitable conduct from "devolv[ing] into a magic incantation to be asserted against every patentee." *Id*. (internal citation omitted).

### 2. Audiovox Has Failed to Plead Inequitable Conduct With Particularity

Audiovox's Answer includes three distinct theories of inequitable conduct concerning the '226 Patent, two concerning the '878 Patent, and one concerning each of the '678 and '377 Patents. Audiovox has pleaded some of its inequitable conduct allegations in its Tenth defense, others in its Third counterclaim, and some in both locations. Answer ¶¶ 473-504, 536-547. As set forth below, all of Audiovox's inequitable conduct theories should be stricken because the supporting allegations are either insufficient to satisfy the requirements of Fed. R. Civ. P. 9(b) under *Exergen*, deficient on their face, or both.

### a. Audiovox's Theories Regarding the '226 Patent

### (i) Digital Pictures

Audiovox claims that the book DIGITAL PICTURES: REPRESENTATION AND COMPRESSION ("Digital Pictures") should have been disclosed to the PTO during the application for the '226 Patent because the book is allegedly material to claim 12 of the '226 Patent. This theory of inequitable conduct (Answer ¶¶ 473-479, 487, 536-538, 541) should be stricken for failure to satisfy the Rule 9(b) pleading standards.[2]

Audiovox fails to plead any facts that would permit a reasonable inference that anyone deliberately acted with the intent to withhold a known material reference. *See McKesson Automation, Inc. v. Swisslog Italia S.P.A.*, 712 F. Supp. 2d 283, 305 (D. Del. 2010) ("Intent to deceive cannot be inferred solely from the fact that information was not disclosed.") (quoting

---

[2] Audiovox incorporates its inequitable conduct affirmative defense into its Third counterclaim for unenforceability. Answer ¶ 536. Its allegations relating to Digital Pictures do not find any additional support in the counterclaim. Thus, the counterclaim suffers from the same deficiencies as the affirmative defense. *See* Answer ¶ 538.

Case No. 3:10-CV-0146-JAH (CAB)                    13                    MEMORANDUM IN SUPPORT OF MPT'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES OF AUDIOVOX

COOLEY LLP

1  *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1116 (Fed. Cir. 1996)).  Indeed, Audiovox's allegations

2  regarding intent are strictly limited to the alleged materiality of the reference:  "In view of the

3  materiality of this reference in at least the two above-described ways, the only reasonable

4  inference that may be drawn is that [Dr. Haskell's] failure to disclose the reference was

5  intentional."  Answer ¶ 479.  But materiality is a separate prong of the inequitable conduct

6  equation.  *Exergen*, 575 F.3d at 1331.  *See SynQor, Inc. v. Artesyn Techs., Inc.*, No. 2:07-CV-497-

7  TJW-CE, 2010 WL 3860131, at *12 (E.D. Tex. Sept. 10, 2010) (striking inequitable conduct

8  theory containing "absolutely no allegation, or facts to support an allegation" of intentional

9  withholding).

10  Therefore, the Court should strike Audiovox's theory of inequitable conduct (Answer ¶¶

11  473-479, 487, 536-538, 541) regarding Digital Pictures and the '226 Patent.

**(ii)      Micke Thesis**

13  Audiovox's counterclaim for unenforceability relating to the Micke Thesis (Answer ¶¶

14  536-538, 540-541) should also be stricken.[3]  Audiovox claims that the Micke Thesis was not

15  disclosed to the PTO despite the fact it is allegedly "highly material" to the '226 Patent.  *Id.* ¶

16  540.

17  Audiovox's allegations should be stricken because it fails to identify where in the

18  reference the allegedly material information is found.  Audiovox merely conclusorily asserts that

19  the Micke Thesis is "highly material."  *Id.*  This bare assertion provides no information about

20  which particular portions of the Micke These are allegedly material.  *See Exergen*, 575 F.3d at

21  1329.  Furthermore, Audiovox's allegations regarding the Micke Thesis fail to identify any

22  specific claim of the '226 Patent to which the reference is allegedly material, constituting yet

23  another deficiency.  *See id.*  Having failed to identify any portion of the Micke Thesis that was

24  material to any claim limitation, Audiovox plainly failed to demonstrate how that information

25  allegedly would have been used by an examiner in assessing patentability, as required under

26  *Exergen*.  *Id.* at 1329-1330.

---

[3] Audiovox made no allegations relating to the Micke Thesis in its inequitable conduct affirmative defense.

Case No. 3:10-CV-0146-JAH (CAB)                    14          MEMORANDUM IN SUPPORT OF MPT'S MOTION TO
                                                                       DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE
                                                                                       DEFENSES OF AUDIOVOX

COOLEY LLP

Audiovox also fails to plead facts supporting reasonable inferences of knowledge and intent. Significantly, Audiovox does not allege that Dr. Haskell actually had knowledge of the Micke Thesis, much less knowledge of specific portions of that student paper; instead, Audiovox merely implies that Dr. Haskell had some knowledge because he edited a technical paper that cited to the Micke Thesis. Answer ¶ 540. However, even if Dr. Haskell was aware of the Micke Thesis, such general knowledge of the reference does not establish that he knew of the purportedly material information within the reference. *Exergen*, 575 F.3d at 1330. *See Elan Microelectronics Corp. v. Apple, Inc.*, No. C 09-01531 RS, 2010 WL 3069322, at *2 (N.D. Cal. Aug. 4, 2010) (illustrating how general knowledge of a reference does not indicate knowledge of allegedly material information). Audiovox's intent allegations are legally insufficient because it has failed to plead knowledge with sufficiency. *See Waddington N. Am., Inc. v. Sabert Corp.*, No. 09-4883, 2010 WL 3907036, at *6 (D.N.J. Sept. 29, 2010) (stating that allegations of "inten[t] to mislead and/or deceive the USPTO" must fail where knowledge is insufficiently pled). Moreover, Audiovox provides not a single fact or theory to support its conclusory allegation that the Micke Thesis was withheld or concealed or that the examiner was misled about it. Answer ¶¶ 540-41. Audiovox simply fails to allege any facts that "plausibly suggest" that any individual associated with the filing of the '226 Patent made a "deliberate decision to withhold a known material reference." *Exergen*, 575 F.3d at 1331; *Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1321 (Fed. Cir. 2010) (affirming *Exergen's* holding that "an inference of deceptive intent must be reasonable and drawn from a pleading's allegations of underlying fact to satisfy Rule 9(b)"). In short, Audiovox's inequitable conduct allegations regarding the Micke Thesis (Answer ¶¶ 536-538, 540-541) are deficient under Rule 9(b) and should be stricken. *See Exergen*, 575 F.3d at 1329-31.

### (iii) Document No. 81

Audiovox claims that CCITT Document No. 81 ("Document No. 81") is material to claim 12 of the '226 Patent but was not disclosed to the PTO. Audiovox's allegations of inequitable conduct arising from Document No. 81 (Answer ¶¶ 473, 480-487, 536-537, 539, 541) fail to satisfy the Rule 9(b) pleading standards and should be stricken.

As an initial matter, Audiovox's allegations should be stricken because they fail to identify where in the reference the allegedly material information is found. Although Audiovox cites to pages 1-3 of Document No. 81 (*id.* ¶ 481), that constitutes the entirety of the document. Thus, Audiovox has failed to point out what statements in Document No. 81 it believes to be material, and the allegation is deficient. *Exergen*, 575 F.3d at 1329. Audiovox alleges—without supporting facts—that Document No. 81 "discusses deviations from approximated and interpolated blocks" and concludes that "it is without question that Document 81 was material."[4] Answer ¶¶ 484-485. But that allegation fails to explain how the reference is material and not cumulative of other prior art before the examiner during prosecution. Therefore, this unexplained and unsupported allegation is deficient under Rule 9(b). *Exergen*, 575 F.3d at 1329.

Audiovox also fails to plead facts supporting reasonable inferences of knowledge and intent. Audiovox fails to allege that Dr. Haskell had knowledge of some specific material portion of Document No. 81, much less that he actually received that document. Indeed, Audiovox merely alleges that Dr. Haskell attended CCITT Specialists Group meetings and purportedly received unidentified documents. Answer ¶ 485. But, Dr. Haskell's participation in those meetings does not indicate that he knew of this reference. Even if Dr. Haskell did become aware of this reference, such general knowledge does not establish that he knew of the purportedly material information within the reference. *Exergen*, 575 F.3d at 1330; *see also Elan*, 2010 WL 3069322, at *2 (illustrating how general knowledge of a reference does not indicate knowledge of allegedly material information). Furthermore, Audiovox's intent allegations are legally insufficient because it has failed to plead knowledge with sufficiency. *See Waddington*, 2010 WL 3907036, at *6 (stating that allegations of "inten[t] to mislead and/or deceive the USPTO" must fail where knowledge is insufficiently pled). And Audiovox fails to allege any facts that

---

[4] Audiovox's use of the phrase "at least" (Answer ¶ 485) to potentially encompass other claims is also inappropriate. To the extent Audiovox intended to assert inequitable conduct against any other claim, it was required to explicitly identify all such claims and claim limitations. *Exergen*, 575 F.3d at 1329. *See also Am. Med. Sys., Inc. v. Laser Peripherals, LLC*, 712 F. Supp. 2d 885, 920-21 (D. Minn. 2010) (affirming that use of the phrase "at least" when identifying certain references in an inequitable conduct claim was insufficient to satisfy Rule 9(b) concerning other, unidentified references).

16

"plausibly suggest" that any individual associated with the filing of the '226 Patent made a "deliberate decision to withhold a known material reference." *Exergen*, 575 F.3d at 1331.

The Court should therefore strike Audiovox's theories of inequitable conduct based upon Document No. 81 (Answer ¶¶ 473, 480-487, 536-537, 539, 541) regarding the '226 Patent.[5]

### (iv) Other Deficiencies Regarding Audiovox's Inequitable Conduct Allegations Regarding the '226 Patent

Audiovox's allegations of inequitable conduct regarding unidentified documents (Answer ¶¶ 480, 486-487) and unnamed individuals (*id.* ¶¶ 538-541) should be stricken. Audiovox claims that Dr. Haskell received other "highly material" documents by virtue of his alleged association with the CCITT Specialists Group, but does not identify these documents. *Id.* ¶ 480. Such unidentified documents cannot form the basis for a properly pled inequitable conduct theory. *See Am. Med. Sys.*, 712 F. Supp. 2d at 920-21. Audiovox also claims that "[u]pon information and belief, *at least one* of the applicants, attorneys, agents, or others involved in the prosecution of the '226 Patent knew about … documents … yet failed to cite the documents to the PTO." Answer ¶¶ 538-540. Audiovox further claims that "it is informed and believes that the *individuals associated* with the filing of the '226 Patent made … misrepresentations and/or omissions knowingly and with the intent to deceive." *Id.* ¶ 541. But *Exergen* requires Audiovox to identify specifically "who" it claims committed inequitable conduct. *Exergen*, 575 F.3d at 1327. *See also Am. Med. Sys.*, 712 F. Supp. 2d at 920-21 (affirming that use of the phrase "at least" when identifying certain references in an inequitable conduct claim was insufficient to satisfy Rule 9(b) concerning other, unidentified references). Therefore, the Court should strike Audiovox's allegations concerning unidentified documents (Answer ¶¶ 480, 486-487) and unnamed individuals (*id.* ¶¶ 538-541). *See Waddington*, 2010 WL 3907036, at *6 (dismissing allegation for failure to identify specific individuals).

### b. Audiovox's Theories Regarding the '878 Patent

### (i) The Ericsson Reference

---

[5] In previous litigation before this Court, the Court concluded that Microsoft failed to prove inequitable conduct in connection with the Micke Thesis and Document No. 81, finding that Microsoft failed to meet its burden to show intent to deceive. Ex. B at B000067-68.

Audiovox claims that the Ericsson article—cited in a footnote of co-inventor Dr. Puri's 1988 doctoral thesis—should have been disclosed to the PTO during the application for the '878 Patent. Answer ¶¶ 488-495, 500, 536-537, 542-543. As an initial matter, Audiovox fails to identify where in the Ericsson article the purportedly "material information is found." *Exergen*, 575 F.3d at 1329. Audiovox broadly alleges that "Ericsson does disclose adaptive field/frame motion compensation," but fails to point to any particular portion of the twelve-page technical article. Answer ¶ 494. Significantly, Audiovox admits that the Krause reference—which was considered by the examiner (Ex. C (excerpts of '878 Patent file history))—expressly incorporated by reference the Ericsson article.[6] Answer ¶ 494. But Audiovox fails to identify any specific portion of the Ericsson article that allegedly presents material, *non-cumulative* information not already considered by the patent examiner. *Id.* Therefore, the Court should strike Audiovox's allegations for failing to identify any specific, material and non-cumulative portions of the Ericsson article. *See, e.g.*, *Exergen*, 575 F.3d at 1329 (finding an inequitable conduct allegation deficient even though it was alleged to be noncumulative); *Advanced Micro Devices v. Samsung Elecs. Co.*, No. C 08-00986 SI, 2010 WL 963920, at *11 (N.D. Cal. Mar. 16, 2010) (granting judgment on the pleadings of no inequitable conduct); *Correct Craft IP Holdings, LLC v. Malibu Boats, LLC*, No. 6:09cv813, 2010 WL 598693, at *5 (M.D. Fla. Feb. 17, 2010) (requiring identification of "particular aspects" supposedly absent from the information of record). Moreover, Audiovox does not even identify which limitation(s) of claims 13-15 and 17 that the Ericsson reference is purportedly material to, providing yet another basis to strike the allegations. *Exergen*, 575 F.3d at 1329.

Audiovox also fails to allege facts sufficient to establish a reasonable inference that the inventors knew of the allegedly material information contained in the Ericsson article. Audiovox claims that Dr. Puri knew of the contents of the Ericsson article because he cited it in a footnote to his doctoral dissertation. Answer ¶¶ 490, 495. However, Audiovox's allegations do not support the inference that this much-published scientist necessarily would have remembered the

---

[6] The incorporation by reference of the Ericsson article into the disclosed Krause reference cuts against Audiovox's contention that the article was not before the Examiner.

contents of a dense technical article cited in a thesis he wrote years earlier. Indeed, Audiovox fails to explain why it is reasonable to infer that during the prosecution of the '878 Patent application, Dr. Puri was intimately familiar with all the contents of every document cited in the 109 footnotes of his 280-page dissertation that he completed three years before the filing of the '878 Patent application. *See* Ex. D. Because Audiovox offers no additional factual basis to support an inference of knowledge, its pleading is deficient and should be stricken. *Am. Med. Sys.*, 712 F. Supp. 2d at 921-22 (finding that citation to a reference in one patent application was "no evidence" that the prosecuting attorney knew that that reference was material to another patent application he prosecuted 21 months later).

Audiovox also fails to plead any facts that "plausibly suggest" a deliberate decision by Dr. Puri or anyone else to withhold the Ericsson article. *Exergen*, 575 F.3d at 1331. Audiovox asserts that the Dr. Puri's knowledge and the alleged materiality of the Ericsson article are sufficient to demonstrate that Dr. Puri acted "with the intent to deceive." Answer ¶¶ 495, 500. However, the alleged materiality of the Ericsson article has no bearing on Dr. Puri's intentions during prosecution of the '878 Patent. Even if he did recall the reference years later, Dr. Puri's awareness of the reference alone does not support an inference that he purposely withheld it from the PTO. In any event, as explained above, the Ericsson article was incorporated by reference into the Krause reference, which the patent examiner specifically considered and relied upon as a basis to initially reject certain patent claims in the application for the '878 Patent. *See* Ex. E at E000390 (col. 9:9-16). Thus, Audiovox has not alleged facts to support a reasonable inference of specific intent. *See SynQor*, 2010 WL 3860131, at *12 (recommending dismissal of pleadings that "contain absolutely no allegation, or facts to support an allegation" that a reference was intentionally withheld with intent to deceive).

In short, the Court should strike Audiovox's inequitable conduct theory regarding the Ericsson article (Answer ¶¶ 488-495, 500, 536-537, 542-543).

**(ii)** **The Columbia Paper**

Audiovox's next theory of inequitable conduct regarding the '878 Patent involves allegations that Dr. Puri failed to disclose the Columbia University Paper.[7]  Answer ¶¶ 488, 496-500, 536-537, 542-543.  But Audiovox fails to identify what aspects of the reference are allegedly material or how those unidentified aspects were material to any aspect of claims 13-15 or 17 of the '226 Patent, as required.  *Exergen*, 575 F.3d at 1329-30.  Further, Audiovox fails to identify what limitations of claims 13-15 or 17 are allegedly disclosed by the Columbia Paper.  *See id.*

Audiovox also fails to allege facts to support a reasonable inference that Dr. Puri knew of the allegedly material information contained in the Columbia University Paper.  Audiovox merely alleges that Dr. Puri attended a meeting in which the Columbia University Paper was discussed.  Answer ¶ 496.  The Federal Circuit has made clear that "one cannot assume that an individual, who generally knew that a reference existed, also knew of the specific material <u>information</u> contained in that reference." *Exergen*, 575 F.3d at 1330 (emphasis in original).  Thus, it was "incumbent on [Audiovox] to plead sufficient facts to support an inference that [Dr. Puri] not only knew of the [Columbia University Paper's] existence generally, but that he knew enough about it such that he did or should have recognized it to be material." *Elan*, 2010 WL 3069322, at *2.

Audiovox fails to plead any facts that support a reasonable inference of intent.  Audiovox's bare claim that the alleged omission was made "knowingly and with an intent to deceive" is plainly deficient.  Answer ¶ 500.  "Intent to deceive cannot be inferred solely from the fact that information was not disclosed." *McKesson*, 712 F. Supp. 2d at 305 (internal quotation omitted).  Therefore, Audiovox's inequitable conduct allegations regarding the Columbia Paper (Answer ¶¶ 488, 496-500, 536-537, 542-543) should be stricken.

**(iii)    Other Deficiencies Regarding Audiovox's Inequitable Conduct Allegations Regarding the '878 Patent**

Audiovox's Answer also includes an unenforceability counterclaim that alleges inequitable conduct resulting from the purported failure to cite either the Ericsson article or a

---

[7] The Columbia University Paper was presented at a standards-setting meeting allegedly attended by Dr. Puri. Answer ¶ 496.

technical article co-authored by Yamaguchi ("the Yamaguchi article") to the PTO. Audiovox's counterclaim regarding the Ericsson and Yamaguchi articles (Answer ¶¶ 542-543) should also be stricken.

Audiovox fails to provide the "who, what, when, where, and how" of its inequitable conduct allegations. *Exergen*, 575 F.3d at 1327. Audiovox fails to identify who allegedly committed inequitable conduct in connection with the two articles. Audiovox merely alleges "[u]pon information and belief," that "at least one of the applicants, attorneys, agents, or others involved in the prosecution of the '878 Patent" or "individuals associated with the filing of the '878 Patent" committed inequitable conduct. Answer ¶¶ 542-543. Furthermore, regarding the Yamaguchi article, Audiovox fails to: (1) identify the allegedly material portions of the article; (2) explain why it is not cumulative of other prior art of record; (3) identify the particular claims or claim limitations at issue; (4) explain how or why any particular individual would have knowledge of the article; and (5) provide any facts to support an inference of intent. In short, the Court should strike Audiovox's counterclaim regarding the '878 Patent (*id.* ¶¶ 542-543) because it does not meet the Rule 9(b) standard.

### c.     Audiovox's Allegations Regarding the '377 Patent

For its inequitable conduct allegations concerning the '377 Patent (Answer ¶¶ 503-504, 536-537, 546-547), Audiovox claims that one of the seven inventors of the '377 Patent purportedly "knew of references submitted to and published by the standards setting organization developing the MPEG-2 standard." *Id.* ¶¶ 503, 546. But Audiovox again fails to provide the "who, what, when, where, and how" of its inequitable conduct allegations. *Exergen*, 575 F.3d at 1327.

Audiovox does not identify the individual(s) who allegedly knew of the submissions and owed a duty of candor to the PTO, nor does it identify the alleged "references." *See Correct Craft*, 2010 WL 598693, at *3. Audiovox fails to (a) identify the allegedly material portions of the unidentified references and the claims and claim limitations of the '377 Patent to which they are allegedly material, or (b) allege that the references are noncumulative of prior art already before the examiner during prosecution. *See Exergen*, 575 F.3d at 1329-30. Moreover, Audiovox

Case No. 3:10-CV-0146-JAH (CAB)                    21                    **MEMORANDUM IN SUPPORT OF MPT'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES OF AUDIOVOX**

Cooley LLP

also fails to allege any facts that plausibly suggest that any person with a duty of candor in connection with the prosecution of the '377 Patent had knowledge of any of the unidentified references or intentionally withheld or concealed those unidentified references. The Court should therefore strike and dismiss Audiovox's allegations of inequitable conduct (Answer ¶¶ 503-504, 536-537, 546-547) concerning the '377 Patent.

### d.    Audiovox's Allegations Regarding the '678 Patent

Audiovox's inequitable conduct theory concerning the '678 Patent consists of allegations regarding unidentified research papers allegedly written by the inventor, Dr. Puri. These allegations (Answer ¶¶ 501-502, 536-537, 544-545) fail to provide the required "who, what, when, where, and how," and should be stricken. *Exergen*, 575 F.3d at 1327.

Audiovox alleges that Dr. Puri "authored and submitted" unidentified research papers to a SSO and that Dr. Puri "received research papers prepared by others." Answer ¶¶ 501, 544. But Audiovox never identifies any of these research papers. Such unidentified documents cannot form the basis for a properly pled inequitable conduct theory. *See Am. Med. Sys.*, 712 F. Supp. 2d at 920-21. Audiovox also refers to "[a]t least one of the applicants, attorneys, agents, or others involved in the prosecution of the '678 Patent," but it never identifies any particular person who (a) allegedly knew of the documents submitted or received by the inventor, and (b) owed a duty of candor to the PTO. Answer ¶¶ 501-502, 544-545. Audiovox also does not identify the claims and claim limitations of the '678 Patent to which the references are allegedly material.

Audiovox fails to allege facts that plausibly suggest knowledge of the unidentified documents or intent to deceive. Audiovox's allegations do not show that anyone other than Dr. Puri had knowledge of the unidentified papers that he allegedly authored or submitted to a SSO. And its allegations do not show that anyone, including Dr. Puri, had knowledge of the unidentified papers that he allegedly received. Moreover, Audiovox fails to provide any facts that support its bare allegation that a person with a duty of candor in connection with the prosecution of the '678 Patent intentionally withheld or concealed the unidentified documents. Therefore, the Court should strike and dismiss Audiovox's inequitable conduct allegations (*id.* ¶¶ 501-502, 536-537, 544-545) regarding the '678 Patent.

J.     **The Court Should Dismiss Audiovox's Assertion of Equitable Defenses in Its Counterclaim**

Audiovox alleges in its Third counterclaim that the Patents-in-Suit are unenforceable under "one or more equitable defenses, including but not limited to the doctrines of laches, estoppel, waiver, implied license, and/or exhaustion." Answer ¶ 548.  As set forth above, the Court should strike Audiovox's defenses of laches, waiver, implied license, and patent exhaustion. *See supra* IV(B).  Therefore, the Court should also dismiss Audiovox's assertion of these same doctrines in its counterclaim. *See Waddington*, 2010 WL 3907036, at *8 (affirming that, where defenses and counterclaims both include the same deficiently pled content, the same analysis justifies striking both).  Audiovox's bare assertion of the doctrine of "estoppel" in its Third counterclaim should also be dismissed because it is deficiently pled.  MPT has already explained why the Court should strike Audiovox's equitable estoppel defense. *See supra* IV(B)(2).  If Audiovox's invocation of estoppel in its Third counterclaim  is based on some theory other than its equitable estoppel defense, the Court should dismiss it because Audiovox has not stated a "claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; s*ee In re Stac Elecs. Sec. Litig.*, 89 F.3d at 1403.

Finally, the Court should dismiss Audiovox's assertion of unnamed defenses in its Third counterclaim. *See* Answer ¶ 548 ("Patents-in-Suit are unenforceable under one or more equitable defenses, ***including but not limited to***").  Audiovox must seek leave to add any additional counterclaims not pleaded in its Answer.  Fed. R. Civ. P. 15(a)(2).  The Court should therefore dismiss Audiovox's counterclaim that asserts "equitable defenses, including but not limited to the doctrines of laches, estoppel, waiver, implied license, and/or exhaustion." Answer ¶ 548.

V.     **CONCLUSION**

For the foregoing reasons, the Court should strike Audiovox's Fifth, Sixth, Seventh, Ninth, Tenth, Fourteenth, Fifteenth, Eighteenth, and Twenty-First affirmative defenses in their entirety and the portion of the Second affirmative defense asserting 35 U.S.C. § 132, and dismiss Audiovox's Third counterclaim.

Dated:  December 2, 2010                          Respectfully submitted,

Case No. 3:10-CV-0146-JAH (CAB)                23                **MEMORANDUM IN SUPPORT OF MPT'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES OF AUDIOVOX**

COOLEY LLP

COOLEY LLP

JOHN S. KYLE (199196)
STEPHEN C. NEAL (170085)
FRANK V. PIETRANTONIO (*pro hac vice*)
JONATHAN G. GRAVES (*pro hac vice*)
NATHAN K. CUMMINGS (*pro hac vice*)
JUSTIN P.D. WILCOX (*pro hac vice*)


_____
                */s/ Justin P.D. Wilcox*
Justin P.D. Wilcox (*pro hac vice*)

Attorneys for Plaintiff
MULTIMEDIA PATENT TRUST

Case No. 3:10-CV-0146-JAH (CAB)                    24                    MEMORANDUM IN SUPPORT OF MPT'S MOTION TO
                                                                         DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE
                                                                         DEFENSES OF AUDIOVOX

COOLEY LLP

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on December 2, 2010 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

/s/ *Justin P.D. Wilcox*
Justin P.D. Wilcox
COOLEY LLP
jwilcox@cooley.com
One Freedom Square
11951 Freedom Drive
Reston, VA 20190-5656
Telephone: (703) 456-8000
Facsimile: (703) 456-8100