COOLEY LLP
JOHN S. KYLE (199196)
jkyle@cooley.com
4401 Eastgate Mall
San Diego, CA 92121
Telephone: (858) 550-6000
Facsimile: (858) 550-6420

STEPHEN C. NEAL (170085)
nealsc@cooley.com
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone: (650) 843-5000
Facsimile: (650) 857-0663

FRANK V. PIETRANTONIO (*pro hac vice*)
fpietrantonio@cooley.com
JONATHAN G. GRAVES (*pro hac vice*)
jgraves@cooley.com
NATHAN K. CUMMINGS (*pro hac vice*)
ncummings@cooley.com
JUSTIN P.D. WILCOX (*pro hac vice*)
jwilcox@cooley.com
One Freedom Square
11951 Freedom Drive
Reston, VA 20190-5656
Telephone: (703) 456-8000
Facsimile: (703) 456-8100

Attorneys for Plaintiff
MULTIMEDIA PATENT TRUST

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Multimedia Patent Trust,<br><br>        Plaintiff,<br><br>    v.<br><br>NBC Universal, Inc., et al.,<br><br>        Defendants. | Case No. 10-CV-00146 H (CAB)<br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' INEQUITABLE CONDUCT DEFENSES AND COUNTERCLAIMS**<br><br>Date: February 27, 2012<br>Time: 10:30 a.m.<br>Courtroom: 13<br>**JUDGE: HON. MARILYN L. HUFF** |

# Table of Contents

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................. 2

III. ARGUMENT ................................................................................................................... 3

    A. Summary Judgment Should Be Granted When There Is No Evidence In Support Of An Essential Element .................................................................... 3

    B. The Accused Infringer Has A High Evidentiary Burden For Asserting Inequitable Conduct ........................................................................................ 4

    C. Defendants Have Failed to Point to Any Facts or Evidence That Require A Finding of Deceitful Intent in Light of All the Circumstances ........................ 5

        1. The '377 Patent ................................................................................... 5

            a. Digital Pictures ........................................................................ 5

            b. The Mussman Article .............................................................. 6

            c. The Safranek/Johnston Article ................................................ 7

        2. The '678 Patent ................................................................................... 7

        3. The '878 Patent ................................................................................. 10

            a. The Ericsson Article .............................................................. 10

            b. The Yamaguchi Article .......................................................... 10

            c. The MPEG 91/131 Reference Submitted by Columbia University and Corresponding Oral Presentations ................ 11

            d. The Safranek/Johnston Article .............................................. 12

        4. The '226 Patent ................................................................................. 13

            a. Digital Pictures ...................................................................... 13

            b. CCITT Document #81 ........................................................... 13

            c. CCITT Specialists Group's Report and Corresponding Oral Discussions ..................................................................... 14

IV. CONCLUSION ............................................................................................................. 15

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 10-CV-0146 H (CAB)        i.        **PLAINTIFF'S MEMO IN SUPPORT OF SUMMARY JUDGMENT MOTION ON DEFENDANTS' INEQUITABLE CONDUCT DEFENSES AND COUNTERCLAIMS**

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Abbott Labs. v. Sandoz, Inc.*,
566 F.3d 1282 (Fed. Cir. 1992) .............................................................................. 3

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................................ 4

*Burlington Indus., Inc. v. Dayco Corp.*,
849 F.2d 1418 (Fed. Cir.1988) ............................................................................... 1

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........................................................................................... 3, 4

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009) .............................................................................. 2

*FURminator, Inc. v. Kim Laube & Co.*,
758 F. Supp. 2d 797 (E.D. Mo. 2010) .................................................................... 7

*GFI, Inc. v. Franklin Corp.*,
265 F.3d 1268 (Fed. Cir. 2001) .............................................................................. 4

*Molins PLC v. Textron, Inc*,
48 F.3d 1172 (Fed. Cir. 1995) ................................................................................ 4

*Scripps Clinic & Research Found. v. Genentech, Inc.*,
927 F.2d 1565 (Fed. Cir. 1991) .............................................................................. 3

*Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*,
537 F.3d 1357 (Fed. Cir. 2008) .............................................................................. 4

*Tech. Licensing Corp. v. Videotek, Inc.*,
545 F.3d 1316 (Fed. Cir. 2008) .............................................................................. 9

*Therasense, Inc. v. Becton, Dickinson, & Co.*,
649 F.3d 1276, 2011 U.S. App. LEXIS 10590 ............................................. passim

**RULES**

Federal Rule of Civil Procedure
9(b) ......................................................................................................................... 2
56(c) ....................................................................................................................... 3

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 10-CV-0146 H (CAB)    ii.    PLAINTIFF'S MEMO IN SUPPORT OF SUMMARY JUDGMENT MOTION ON DEFENDANTS' INEQUITABLE CONDUCT DEFENSES AND COUNTERCLAIMS

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**OTHER AUTHORITIES**

1991 New World Dictionary of American English ........................................................................ 6

Cooley LLP
Attorneys At Law
San Francisco

Case No. 10-CV-0146 H (CAB)  iii.  PLAINTIFF'S MEMO IN SUPPORT OF SUMMARY JUDGMENT MOTION ON DEFENDANTS' INEQUITABLE CONDUCT DEFENSES AND COUNTERCLAIMS

Plaintiff Multimedia Patent Trust ("MPT") submits this memorandum in support of its motion for summary judgment on the inequitable conduct defenses and counterclaims of the Fox[1] defendant group ("Defendants") regarding U.S. Patent Nos. 5,136,377 ("the '377 Patent"), 5,500,678 ("the '678 Patent"), 5,227,878 ("the '878 Patent"), and 4,958,226 ("the '226 Patent") (collectively "the Patents-in-Suit").

## I.     INTRODUCTION

The Federal Circuit "tighten[ed] the standards for finding both intent and materiality" for the affirmative defense of inequitable conduct "in order to redirect a doctrine that has been overused to the detriment of the public." *Therasense, Inc. v. Becton, Dickinson, & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (*en banc*). The Federal Circuit recognized that:

> [T]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague. Reputable lawyers seem to feel compelled to make the charge against other reputable lawyers on the ***slenderest grounds***, to represent their client's interests adequately, perhaps.

*Id.* at 1289 (quoting *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir.1988)) (emphasis added). This case is no different.

Defendants' inequitable conduct allegations have not progressed past the pleading stage in the two years since this case was filed. Significantly, Defendants have flatly refused to provide any evidence or allegations of inequitable conduct contentions beyond what is found in their March 24, 2011 Second Amended Answer and Counterclaims (D.I. 278) ("Answer"), which they claim are sufficient under *Therasense*. But Defendants have proffered absolutely no facts to support their accusations that certain inventors of the Patents-in-Suit deliberately withheld material information from the PTO with the specific intent to deceive. Moreover, Defendants have failed to show that those individuals even knew of certain references that were allegedly withheld from the PTO.

---

[1] The Fox defendant group consists of the following defendants: Fox Entertainment Group, Inc.; Twentieth Century Fox Film Corp.; Twentieth Century Fox Home Entertainment LLC; Fox Searchlight Pictures, Inc.; Fox Television Stations, Inc.; Fox Television Studios, Inc.; Blue Sky Studios, Inc.; Fox Broadcasting Company; Fox News Network, LLC; Fox Cable Networks, Inc.; MyNetworkTV, Inc.; Fox Movie Channel, Inc.; Fox Interactive Media, Inc.; FX Networks, LLC; NGC Network US, LLC; and NGHT, LLC.

COOLEY LLP
ATTORNEYS AT LAW

Case No. 10-CV-0146 H (CAB)   1.   PLAINTIFF'S MEMO IN SUPPORT OF SUMMARY JUDGMENT MOTION ON DEFENDANTS' INEQUITABLE CONDUCT DEFENSES AND COUNTERCLAIMS

The Court should grant summary judgment of no inequitable conduct because Defendants have failed to carry their clear and convincing burden of proof on the requisite element of specific intent.

## II.     BACKGROUND

MPT filed this action on January 19, 2010. On October 18, 2010, Defendants filed their initial answer and counterclaims, alleging that various individuals committed inequitable conduct during the prosecution of the Patents-in-Suit. D.I. 206. Disregarding the potential harm to the professional reputations of the inventors of the Patents-in-Suit, Defendants leveled accusations of dishonesty and fraud against certain inventors based solely on tenuous connections suggesting that those individuals knew of particular references and that the references were not disclosed to the PTO during the prosecution of the Patents-in-Suit. Indeed, Defendants offered ***no*** facts to support their accusations that these individuals made a deliberate decision to withhold them from the PTO. *See generally* D.I. 206 at 44-78. MPT moved to strike Defendants' inequitable conduct affirmative defenses and counterclaims as deficient under Federal Rule of Civil Procedure 9(b) and *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). The Court denied MPT's motion to strike without prejudice, concluding that Defendants' inequitable conduct allegations met the pleading requirements of Rule 9(b). D.I. 266.[2]

MPT served an interrogatory seeking Defendants' factual bases for their allegations of inequitable conduct. Ex. 1 at 9. Defendants' March 28, 2011 interrogatory answer merely incorporated by reference the allegations in their Answer. Ex. 2 at 7.

On May 25, 2011, the Federal Circuit issued its *en banc* opinion in *Therasense*. MPT subsequently requested that Defendants supplement their interrogatory answer, specifically explaining that Defendants' inequitable conduct allegations in their Answer were deficient under *Therasense* and requesting Defendants' full and complete inequitable conduct contentions. Ex. 3 at 1. On January 5, 2012, MPT met and conferred with Defendants regarding their deficient inequitable conduct allegations and failure to update them in light of *Therasense*. Ex. 4 at 1.

---

[2] Defendants amended their answer and counterclaims on March 24, 2011, but did not change their inequitable conduct allegations. *See* D.I. 278.

COOLEY LLP
ATTORNEYS AT LAW

Case No. 10-CV-00146 H (CAB)                      2.        PLAINTIFF'S MEMO IN SUPPORT OF SUMMARY JUDGMENT MOTION ON DEFENDANTS' INEQUITABLE CONDUCT DEFENSES AND COUNTERCLAIMS

Specifically addressing the inequitable conduct defense, Defendants asserted that the inequitable conduct allegations in their Answer are sufficient both under *Therasense* and to answer the interrogatory, and specifically stated that they "***will not supplement their inequitable conduct allegations and will stand on them for this case***." *Id*. (emphasis added).

In short, more than two years have passed since this case was filed and more than a year since discovery opened, yet Defendants refuse to provide any additional contentions or factual support for the conclusory inequitable conduct allegations set forth in their Answer. Defendants have not proffered any evidence in discovery, either in their interrogatory responses or otherwise, to support their accusations that certain inventors of the Patents-in-Suit involved in the prosecution of those patents acted with specific intent to deceive the PTO.

### III.  ARGUMENT

#### A.  Summary Judgment Should Be Granted When There Is No Evidence In Support Of An Essential Element

Under Federal Rule of Civil Procedure 56(c), summary judgment should be "rendered if the pleadings, the discovery and disclosure materials on file and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex, 477 U.S. at* 323-24.

First, the movant has to demonstrate the absence of a genuine issue of material fact. The burden then shifts to the non-moving party to set forth specific facts showing that there is a genuine issue of material fact. *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1571 (Fed. Cir. 1991), *overruled on other grounds by, Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282 (Fed. Cir. 1992). The non-movant must do more than present some evidence on an issue that it asserts is disputed:

> [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence [of the non-movant] is merely colorable, or is not significantly probative, summary judgment may be granted.

COOLEY LLP
ATTORNEYS AT LAW

Case No. 10-CV-00146 H (CAB)                 3.                 PLAINTIFF'S MEMO IN SUPPORT OF SUMMARY JUDGMENT MOTION ON DEFENDANTS' INEQUITABLE CONDUCT DEFENSES AND COUNTERCLAIMS

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

Where, as here, the non-movant bears the burden of proof on an essential element of its claim, and the movant demonstrates an absence of any evidence in support of that essential element, summary judgment is warranted. *Celotex*, 477 U.S. at 323-26.

### B. The Accused Infringer Has a High Evidentiary Burden for Asserting Inequitable Conduct

To prevail on the defense of inequitable conduct, the accused infringer bears the burden of proving by clear and convincing evidence that the applicant (1) misrepresented or omitted material information, and (2) did so with specific intent to deceive the PTO. *Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008). In *Therasense*, the Federal Circuit, sitting *en banc*, clarified the proofs required to establish these elements.

As an initial matter, the Federal Circuit explained that the requirements of materiality and intent must be analyzed separately. *Therasense*, 649 F.3d at 1290 ("[A] court must weigh the evidence of intent to deceive independent of its analysis of materiality"); *see also Star Scientific*, 537 F.3d at 1366 ("With regard to the deceptive intent prong, we have emphasized that 'materiality does not presume intent, which is a separate and essential component of inequitable conduct.'") (quoting *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1274 (Fed. Cir. 2001)). The Federal Circuit soundly rejected the use of a "'sliding scale,' where a weak showing of intent may be found sufficient based on a strong showing of materiality." *Therasense*, 649 F.3d at 1290. The Federal Circuit made clear that courts may not "infer intent solely from materiality." *Id.*

The Federal Circuit next clarified the proof required to establish the element of specific intent to deceive the PTO. "In a case involving nondisclosure of information," such as here, "clear and convincing evidence must show the applicant made a deliberate decision to withhold a known reference." *Id.* at 1290 (quoting *Molins PLC v. Textron, Inc*, 48 F.3d 1172, 1181 (Fed. Cir. 1995)); *see also Star Scientific*, 537 F.3d at 1366 (same). Significantly, "[p]roving that the applicant knew of a reference, **should have known** of its materiality, and decided not to submit it to the PTO **does not prove specific intent to deceive**." *Therasense*, 649 F.3d at 1290 (emphases added). Although courts "may infer intent from indirect and circumstantial evidence," "the

COOLEY LLP
ATTORNEYS AT LAW

Case No. 10-CV-00146 H (CAB)                4.                PLAINTIFF'S MEMO IN SUPPORT OF SUMMARY JUDGMENT MOTION ON DEFENDANTS' INEQUITABLE CONDUCT DEFENSES AND COUNTERCLAIMS

specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence." *Id*. (quotation and citation omitted).  Moreover, such evidence "must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances." *Id.* (emphasis in original) (citations omitted).  Finally, the Federal Circuit made clear that a "patentee need not offer any good faith explanation unless the accused infringer first proves a threshold level of intent to deceive by clear and convincing evidence." *Id.* at 1291 (citations omitted).  As will be explained below, Defendants have failed to satisfy their clear and convincing burden of proof on the element of specific intent to deceive.

  C. **Defendants Have Failed to Point to Any Facts or Evidence That *Require* a Finding of Deceitful Intent in Light of All the Circumstances**

Defendants incorrectly contend that the inequitable conduct allegations in their Answer are sufficient under *Therasense*.  As explained below, Defendants' inequitable conduct allegations contain only unsupported accusations of specific intent to deceive, which are insufficient to survive summary judgment under the heightened proof requirements of *Therasense*.[3]

  1. **The '377 Patent**

   a. **Digital Pictures**

Defendants accuse Dr. Netravali, a co-inventor of the '377 Patent, of committing inequitable conduct by not disclosing to the PTO a particular portion of the book *Digital Pictures: Representation and Compression* ("Digital Pictures"), which he co-authored.  D.I. 278 ¶¶ 127-135.  Without any additional facts, Defendants accuse Dr. Netravali of intentionally failing to disclose pages 521-526 of Digital Pictures. *Id.* ¶ 60.

Defendants' inequitable conduct theory regarding Digital Pictures fails as a matter of law because Dr. Netravali and his co-inventors disclosed the reference to the PTO.  Although Defendants acknowledge that Digital Pictures was disclosed to the PTO, they take issue with the

---

[3] With the exception of the '678 Patent, MPT does not address the sufficiency of Defendants' materiality contentions.  MPT does not concede that those materiality contentions are sufficient, but has chosen not to address the sufficiency of those contentions on summary judgment.  In any event, the failure to show specific intent eliminates the need to address materiality.

COOLEY LLP
ATTORNEYS AT LAW

Case No. 10-CV-00146 H (CAB)   5.   PLAINTIFF'S MEMO IN SUPPORT OF SUMMARY JUDGMENT MOTION ON DEFENDANTS' INEQUITABLE CONDUCT DEFENSES AND COUNTERCLAIMS

1  fact that pages 521-526 were not actually provided to the PTO. However, the face of the '377
2  Patent discloses Digital Pictures, pages "334 et seq." as a cited reference. The 1991 New World
3  Dictionary of American English defines "et seq." as: (1) "and the following;" or (2) "and those
4  that follow." Ex. 5. Therefore, the disclosure of pages "334 et seq." on the face of the patent
5  includes pages 521-26. Moreover, the inventors of the '377 Patent disclosed 168 pages of Digital
6  Pictures, including sections on adaptive quantization and quanitzing to achieve an average bit-
7  rate— subject matter that Defendants incorrectly claim is unique to the seven pages of Digital
8  Pictures that form the basis for their inequitable conduct theory. *Compare* Ex. 7 at 78-81, 100-
9  106, with D.I. 278 ¶¶ 127-131.

10  In any event, Defendants have proffered absolutely no facts that show Dr. Netravali
11  "***made a deliberate decision*** to withhold" the seven pages at issue. *Therasense*, 649 F.3d at 1290
12  (emphasis in original). Therefore, Defendants' conclusory assertions of "intent to deceive"
13  regarding Digital Pictures fail as a matter of law to show specific intent to deceive by clear and
14  convincing evidence.

### b.     The Mussman Article

16  Defendants accuse Dr. Netravali and Dr. Westerink, another co-inventor of the '377
17  Patent, of committing inequitable conduct by not disclosing to the PTO the article entitled
18  "Advances in Picture Coding," by Hans Mussman (the "Mussman Article"). D.I. 278 ¶¶ 136-42.
19  Defendants conclusorily assert that both Drs. Netravali and Westerink "were aware of the
20  material contents of the Musmann Article" because that article was cited in publications they co-
21  authored. *Id*. ¶ 138. Without any additional facts, Defendants accuse Drs. Netravali and
22  Westerink of intentionally failing to disclose the Mussman Article. *Id*. ¶ 142.

23  Defendants' bald allegations of intent to deceive fail to satisfy their clear and convincing
24  burden of proof that Drs. Netravali and Westerink intended to deceive the PTO. Besides the fact
25  that the Mussman Article was cited in publications co-authored by Dr. Puri and Dr. Westerink,
26  Defendants offer no other evidence that shows that either Dr. Netravali or Dr. Westerink were
27  aware of the alleged materiality of the Mussman Article, let alone that the non-disclosure of the
28  Mussman Article resulted from their "deliberate decision" to withhold it from the PTO.

COOLEY LLP
ATTORNEYS AT LAW

Case No. 10-CV-00146 H (CAB)     6.     PLAINTIFF'S MEMO IN SUPPORT OF SUMMARY JUDGMENT MOTION ON DEFENDANTS' INEQUITABLE CONDUCT DEFENSES AND COUNTERCLAIMS

1  *Therasense*, 649 F.3d at 1290 ("Proving that the applicant knew of a reference, ***should have
2  known of its materiality***, and decided not to submit it to the PTO ***does not prove specific intent to
3  deceive***.") (emphases added). Rather, Defendants conclusorily assert that "[a]t least" Dr.
4  Netravali and Dr. Westerink intentionally failed to disclose the Mussman Article. D.I. 278 ¶ 142.

5  Defendants' unsupported accusations of intent to deceive are plainly insufficient to carry
6  their clear and convincing burden of proof on that element. *FURminator, Inc. v. Kim Laube &
7  Co.*, 758 F. Supp. 2d 797, 827-29 (E.D. Mo. 2010) (granting summary judgment of no inequitable
8  conduct pre-*Therasense* where defendant relied solely upon the fact of non-disclosure as evidence
9  of intent).

### c.  The Safranek/Johnston Article

Defendants accuse Dr. Safranek and Dr. Johnston, other co-inventors of the '377 Patent, of committing inequitable conduct by not disclosing to the PTO their article entitled "A Perceptually Tuned Sub-Band Image Coder with Image Dependent Quantization and Post Quantization Data Compression" (the "Safranek/Johnston Article"). Defendants claim that Dr. Safranek and Dr. Johnston "intended to deceive the PTO by intentionally failing to disclose the Safranek/Johnston Article." D.I. 278 ¶ 149. But Defendants provide no actual proof of intent; they rely solely on the facts that Drs. Safranek and Johnston authored the article and that the article was not disclosed to the PTO. *Id.* ¶ 148.

Under *Therasense*, however, Defendants cannot establish specific intent to deceive based solely upon Dr. Safranek's and Dr. Johnston's knowledge of the article and the fact of its non-disclosure. *Therasense*, 649 F.3d at 1290 ("Proving that the applicant knew of a reference, ***should have known of its materiality***, and decided not to submit it to the PTO ***does not prove specific intent to deceive***.") (emphases added). Defendants must proffer facts and evidence "sufficient to require a finding of deceitful intent." *Id.* But Defendants have failed to proffer any facts or evidence to support their conclusory allegations that Dr. Safranek and Dr. Johnston "intended to deceive the PTO by intentionally failing to disclose the Safranek/Johnston Article." D.I. 278 ¶ 149. Accordingly, Defendants' unsupported accusations of intent regarding the Safranek/Johnston Article are insufficient to carry their clear and convincing burden of proof on

COOLEY LLP
ATTORNEYS AT LAW

Case No. 10-CV-00146 H (CAB)           7.           PLAINTIFF'S MEMO IN SUPPORT OF SUMMARY JUDGMENT MOTION ON DEFENDANTS' INEQUITABLE CONDUCT DEFENSES AND COUNTERCLAIMS

the element of specific intent and fail as a matter of law.

### 2. The '678 Patent

Defendants accuse Dr. Puri, the sole inventor of the '678 Patent, of deliberately withholding the following documents from the PTO during prosecution of the '678 Patent:

- "MPEG-2 Video Coding Proposal," International Organisation for Standardization ("ISO"), November 1991 submitted by AT&T and authored by Dr. Puri (the "AT&T Proposal"); and,

- "Adaptive Frame/Field Motion Compensated Video Coding," Signal Processing, Volume 5, February 1993, co-authored by Dr. Puri (the "Puri Paper").

D.I. 278 ¶¶ 104, 109. Defendants claim that Dr. Puri "intended to deceive the PTO by intentionally failing to disclose" these two documents. *Id.* ¶ 115. But Defendants provide no actual proof of intent; they rely solely on the facts that Dr. Puri authored these two documents and that the documents were not disclosed to the PTO. *Id.* ¶¶ 113, 115.

Under *Therasense*, however, Defendants cannot establish specific intent to deceive based solely upon Dr. Puri's knowledge of the documents and the fact of their non-disclosure. *Therasense*, 649 F.3d at 1290 ("[p]roving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive."). Defendants must proffer facts and evidence "sufficient to require a finding of deceitful intent." *Id.* But Defendants have failed to proffer any such facts or evidence that satisfy their clear and convincing burden of proof that Dr. Puri intended to deceive the PTO.

Furthermore, Defendants' allegations of materiality are also deficient. Defendants incorrectly assert that the portions of the AT&T Proposal and the Puri Paper that form the basis of their inequitable conduct allegations are not cumulative of art before the patent examiner during the prosecution of the '678 Patent. D.I. 278 ¶ 114. The AT&T Proposal and the Puri Paper, in fact, are nearly identical to portions of the '878 Patent, which was disclosed to the PTO during prosecution of the '678 Patent. *Compare* Ex. 8, the Puri Paper, *with* Ex. 9, the '878 Patent. For example, Section 4.1 of the AT&T Proposal is nearly identical to language in the '878 Patent, as illustrated below.

COOLEY LLP
ATTORNEYS AT LAW

Case No. 10-CV-00146 H (CAB)    8.    PLAINTIFF'S MEMO IN SUPPORT OF SUMMARY JUDGMENT MOTION ON DEFENDANTS' INEQUITABLE CONDUCT DEFENSES AND COUNTERCLAIMS



| AT&T Proposal Section 4.1 (Ex. 10 at 5) | '878 Patent col. 8 ll. 9-15 (Ex. 9 at 26) |

Similarly, Figure 7 of the Puri Paper is identical to Figures 1E and 1F of the '878 Patent, as shown below.

Puri Paper Figure 7 (Ex. 8 at 47.)

'878 Patent Figures Figs. 1E, 1F (Ex. 9.)

"[I]t has long been established that a reference is not material if it is cumulative to other references already before the examiner." *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1337 (Fed. Cir. 2008). Because the AT&T Proposal and the Puri Paper are cumulative of information in the '878 patent disclosed to the PTO, those documents plainly do not satisfy the "but-for materiality" requirement of *Therasense*. 649 F.3d at 1291 ("[I]n assessing the materiality of a withheld reference, the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference.").

Therefore, Defendants' inequitable conduct defenses and counterclaims regarding the '678 patent fail as a matter of law because Defendants have not carried their burden of proof on the elements of specific intent and materiality by clear and convincing evidence.

COOLEY LLP
ATTORNEYS AT LAW

Case No. 10-CV-00146 H (CAB)  9.  PLAINTIFF'S MEMO IN SUPPORT OF SUMMARY JUDGMENT MOTION ON DEFENDANTS' INEQUITABLE CONDUCT DEFENSES AND COUNTERCLAIMS

### 3. The '878 Patent

#### a. The Ericsson Article

Defendants accuse Dr. Puri, a co-inventor of the '878 Patent filed in November 1990, of committing inequitable conduct by not disclosing to the PTO an article by Dr. Staffan Ericsson, entitled "Fixed and Adaptive Predictors for Hybrid Predictive/Transfer Coding" (the "Ericsson Article"). D.I. 278 ¶ 61. Defendants assert that Dr. Puri cited the Ericsson Article in his doctoral thesis. *Id*. ¶ 58. Without any additional facts, Defendants accuse Dr. Puri of "intentionally failing to disclose Ericsson." *Id*. ¶ 60.

The sole fact that Dr. Puri cited the Ericsson Article in his doctoral thesis before the filing of the '878 patent is plainly insufficient to satisfy Defendants' clear and convincing burden of proof that Dr. Puri intended to deceive the PTO. The Ericsson Article was cited as an endnote in Dr. Puri's doctoral thesis, and is one of 109 references cited in that paper. *See* Ex 11 (Puri thesis listing 109 references). Furthermore, Dr. Puri completed his 277-page thesis more than three years before filing for the '878 Patent. *Compare id*. at 1, *with* Ex. 9. Even assuming Dr. Puri remembered the Ericsson Article, Defendants offer no evidence that Dr. Puri was aware of the materiality of Ericsson, let alone that the non-disclosure of the Ericsson Article resulted from his "deliberate decision." *Therasense*, 649 F.3d at 1290 ("Proving that the applicant knew of a reference, ***should have known of its materiality***, and decided not to submit it to the PTO ***does not prove specific intent to deceive***.") (emphases added). Rather, Defendants conclusorily assert that "[a]t least Mr. Puri intended to deceive the PTO by intentionally failing to disclose Ericsson in the application for the '878 patent and throughout its prosecution." D.I. 278 ¶ 60.

Accordingly, Defendants' unsupported assertions of intent are plainly insufficient to carry their clear and convincing burden of proof regarding the Ericsson Article.

#### b. The Yamaguchi Article

Defendants accuse Dr. Puri of committing inequitable conduct by purportedly failing to disclose to the PTO an article by Yamaguchi et al., entitled "Movement Compensated Frame-Frequency Conversion of Television Signals" (the "Yamaguchi Article"). D.I. 278 ¶ 68. The Yamaguchi Article was previously cited to the PTO during the prosecution of the '226 Patent—

COOLEY LLP
ATTORNEYS AT LAW

Case No. 10-CV-00146 H (CAB)    10.    PLAINTIFF'S MEMO IN SUPPORT OF SUMMARY JUDGMENT MOTION ON DEFENDANTS' INEQUITABLE CONDUCT DEFENSES AND COUNTERCLAIMS

for which Dr. Puri is one of the named inventors—but not cited during prosecution of the '878 Patent. *Id*. ¶¶ 65-66.

Defendants proffer absolutely no facts or evidence that Dr. Puri deliberately withheld the Yamaguchi Article from the PTO during the prosecution of the '878 Patent. Defendants simply assert that "[i]ndividuals involved in the prosecution of the '878 patent, including at least Atul Puri, were aware of Yamaguchi's disclosure." *Id*. ¶ 65. But knowledge of the Yamaguchi Article alone is insufficient to show that Dr. Puri made a "deliberate decision" to withhold it. *Therasense*, 649 F.3d at 1290 ("Proving that the applicant ***knew of a reference***, should have known of its materiality, and decided not to submit it to the PTO ***does not prove specific intent to deceive***.") (emphases added). In short, Defendants have failed to satisfy their clear and convincing burden of proof regarding intent to deceive the PTO in connection with the Yamaguchi Article.

### c. The MPEG 91/131 Reference Submitted by Columbia University and Corresponding Oral Presentations

Defendants accuse Dr. Puri of committing inequitable conduct by not disclosing a document—"the Columbia 91/131 submission"—submitted by Columbia University at a meeting of the International Organization for Standardization ("ISO") held in August 1991 and its corresponding presentation at that meeting. D.I. 278 ¶ 79. Defendants allege that the attendance list for the August 1991 meeting shows that Dr. Puri attended the particular meeting at which the Columbia 91/131 submission was presented. *Id*. ¶¶ 69-70.

As an initial matter, the fact that Dr. Puri attended the August 1991 meeting, even if true, does not establish that he learned of the Columbia 91/131 submission there, nor does it establish that he witnessed the presentation of that paper. Defendants do not establish that Dr. Puri received and reviewed all the papers submitted for the conference or that he was present for every presentation. Nor do they show additional facts (e.g., the nature of the conference and the extent of Dr. Puri's engagement in the conference) such that "the single most reasonable inference. . . drawn from the evidence" is that Dr. Puri knew of the Columbia 91/131 submission or its accompanying presentation. *Therasense*, 649 F.3d at 1290-91.

COOLEY LLP
ATTORNEYS AT LAW

Case No. 10-CV-00146 H (CAB)     11.     PLAINTIFF'S MEMO IN SUPPORT OF SUMMARY JUDGMENT MOTION ON DEFENDANTS' INEQUITABLE CONDUCT DEFENSES AND COUNTERCLAIMS

1  Beyond their failure to show that Dr. Puri knew of the Columbia 91/131 submission or its
2  presentation, Defendants have failed to proffer any facts that show that Dr. Puri "was aware of the
3  materiality" of either, or that he made a "deliberate decision" to withhold them. *Id*. at 1290
4  ("Proving that the applicant ***knew of a reference***, should have known of its materiality, and
5  decided not to submit it to the PTO ***does not prove specific intent to deceive***.") (emphases added).
6  Indeed, Defendants merely conclusorily assert that Dr. Puri "intended to deceive the PTO by
7  intentionally failing to disclose the Columbia University paper and its presentation" during
8  prosecution of the '878 patent. D.I. 278 ¶ 78. That unsupported accusation is plainly insufficient
9  to satisfy Defendants' burden to show specific intent to deceive by clear and convincing evidence.
10 Therefore, Defendants have failed as a matter of law to establish inequitable conduct in
11 connection with the Columbia 91/131 submission and its accompanying presentation.

### d.  The Safranek/Johnston Article

13 Defendants accuse Dr. Puri and Dr. Aravind—the other co-inventor of the '878 patent—of
14 committing inequitable conduct by not disclosing to the PTO the Safranek/Johnston Article. D.I.
15 278 ¶ 93. Defendants assert that Drs. Puri and Aravind cited the Safranek/Johnston Article in an
16 article Drs. Puri and Aravind authored together. *Id*. ¶ 91. Without any additional facts,
17 Defendants accuse Drs. Puri and Aravind of "intentionally failing to disclose Safranek/Johnston
18 Article." *Id*. ¶ 92.

19 The sole fact that Drs. Puri and Aravind cited the Safranek/Johnston Article in an article
20 that they authored is plainly insufficient to satisfy Defendants' clear and convincing burden of
21 proof that they intended to deceive the PTO. Defendants offer no evidence that "[Dr.] Puri and
22 [Dr.] Aravind were aware of the materiality of the Safranek/Johnston Article," let alone that the
23 non-disclosure of the Safranek/Johnston Article resulted from their "deliberate decision."
24 *Therasense*, 649 F.3d at 1290 ("Proving that the applicant knew of a reference, ***should have***
25 ***known of its materiality***, and decided not to submit it to the PTO ***does not prove specific intent to***
26 ***deceive***.") (emphases added). Rather, Defendants conclusorily assert that Dr. Puri and Dr.
27 Aravind "intended to deceive the PTO by intentionally failing to disclose the Safranek/Johnston
28 Article in the application for the '878 patent and throughout its prosecution." D.I. 278 ¶ 93.

COOLEY LLP
ATTORNEYS AT LAW

Case No. 10-CV-00146 H (CAB)   12.   PLAINTIFF'S MEMO IN SUPPORT OF SUMMARY JUDGMENT MOTION ON DEFENDANTS' INEQUITABLE CONDUCT DEFENSES AND COUNTERCLAIMS

Accordingly, Defendants' unsupported assertions of intent are plainly insufficient to carry their clear and convincing burden of proof regarding the Safranek/Johnston Article.

### 4. The '226 Patent

#### a. Digital Pictures

Defendants accuse Dr. Barin Haskell, one of the co-inventors of the '226 Patent, of committing inequitable conduct by not disclosing to the PTO the Digital Pictures book, which he co-authored. D.I. 278 ¶ 23. Defendants' inequitable conduct theory relies primarily on the purported materiality of Digital Pictures to the '226 Patent but gives short shrift to the intent element of inequitable conduct. *Id.* at 47-49. Indeed, Defendants simply rely on the fact that Dr. Haskell co-authored the book as evidence of intent. *Id.* ¶ 21.

But the Federal Circuit in *Therasense* rejected the use of a "sliding scale" that would allow materiality to compensate for lack of intent, making clear that accused infringers must satisfy the clear and convincing burden of proof for both the materiality and intent elements independently. *Therasense*, 649 F.3d at 1290 ("[A] court must weigh the evidence of intent to deceive independent of its analysis of materiality"). Here, Defendants fail to satisfy their burden of proof to show that Dr. Haskell intended to deceive the PTO. The fact that he co-authored Digital Pictures does not establish that he made a deliberate decision to withhold it from the PTO during prosecution of the '226 Patent. *See id.* ("Proving that the applicant ***knew of a reference***, should have known of its materiality, and decided not to submit it to the PTO ***does not prove specific intent to deceive***.") (emphases added). Therefore, Defendants' theory of inequitable conduct regarding Digital Pictures is insufficient as a matter of law.

#### b. CCITT Document #81

Defendants accuse Dr. Haskell of committing inequitable conduct by not disclosing to the PTO CCITT Document #81 ( "Document #81"), which was submitted to the CCITT Specialists Group on Coding for Visual Telephony by NTT, KDD, NEC and Fujitsu. D.I. 278 ¶ 40. Defendants assert that Dr. Haskell was listed as a participant in a four-day conference in March 1986 during which Document #81 was discussed. *Id.* ¶ 33.

These assertions fail to satisfy Defendants' clear and convincing burden of proof that Dr.

COOLEY LLP
ATTORNEYS AT LAW

Case No. 10-CV-00146 H (CAB)   13.   PLAINTIFF'S MEMO IN SUPPORT OF SUMMARY JUDGMENT MOTION ON DEFENDANTS' INEQUITABLE CONDUCT DEFENSES AND COUNTERCLAIMS

Haskell intended to deceive the PTO.  As an initial matter, Defendants have failed to proffer any facts that show that Dr. Haskell knew of Document #81.  *Therasense*, 649 F.3d at 1290 ("the accused infringer must prove by clear and convincing evidence that [inter alia] the applicant ***knew*** of the reference").  Although Defendants assert that Dr. Haskell attended a conference where taped demonstrations of source coding simulation results related to Document #81 were purportedly presented, Defendants provide no facts to support that Dr. Haskell actually received or knew of the document, that the presentation addressed the purported material elements of Document #81, or that Dr. Haskell witnessed the presentation.

Beyond their failure to show that Dr. Haskell knew of Document #81, Defendants have failed to proffer any facts that show that Dr. Haskell "was aware of the material contents of Document #81" or that he made a "deliberate decision" to withhold it.  *Therasense*, F.3d at 1290.  Defendants merely conclusorily assert that Dr. Haskell "intended to deceive the PTO by intentionally failing to disclose Document #81 in the application for the '226 Patent and throughout its prosecution."  D.I. 278 ¶ 40.  Therefore, Defendants' theory of inequitable conduct regarding Document #81 is plainly insufficient as a matter of law.

### c. CCITT Specialists Group's Report and Corresponding Oral Discussions

Defendants accuse Dr. Haskell of committing inequitable conduct by not disclosing to the PTO the CCITT Specialists Group's Report, which summarizes Document #81, and related oral presentations at the Fifth Meeting in Tokyo in March of 1986.  D.I. 278 ¶¶ 42, 44.

Defendants offer absolutely no evidence indicating that Dr. Haskell knew of the CCITT Specialists Group's Report, but allege that the attendance list for the March 1986 meeting shows that Dr. Haskell attended the particular meeting at which the oral presentations were made.  *Id*. ¶ 33.  Even if Dr. Haskell did attend the March 1986 meeting, this would not establish that he witnessed the particular oral presentations purportedly disclosing information material to the inventions of the '226 Patent.  Indeed, Defendants do not establish that Dr. Haskell was present for every presentation.  Nor do they show additional facts (e.g., the nature of the conference and the extent of Dr. Haskell's engagement in the conference) such that "the single most reasonable

COOLEY LLP
ATTORNEYS AT LAW

Case No. 10-CV-00146 H (CAB)     14.     PLAINTIFF'S MEMO IN SUPPORT OF SUMMARY JUDGMENT MOTION ON DEFENDANTS' INEQUITABLE CONDUCT DEFENSES AND COUNTERCLAIMS

1  inference . . . drawn from the evidence" is that Dr. Haskell knew of the purported material
2  contents of the CCITT Specialists Group's Report or the related oral presentations. *Therasense*,
3  649 F.3d at 1290-91.

4  Beyond their failure to show that Dr. Haskell knew of the CCITT Specialists Group's
5  Report or the related oral presentations, Defendants have failed to proffer any facts that show that
6  Dr. Haskell "was aware of the materiality" of the Report or presentations, or that he made a
7  "deliberate decision" to withhold them. *Id*. at 1290 ("Proving that the applicant ***knew of a***
8  ***reference***, should have known of its materiality, and decided not to submit it to the PTO ***does not***
9  ***prove specific intent to deceive***.") (emphases added).  Indeed, Defendants merely conclusorily
10 assert that Dr. Haskell "intended to deceive the PTO by intentionally failing to disclose" the
11 CCITT Specialists Group's Report and the related oral presentations during prosecution of the
12 '226 patent. D.I. 278 ¶¶ 42, 44. Those unsupported accusations are plainly insufficient to satisfy
13 Defendants' burden to show specific intent to deceive by clear and convincing evidence.
14 Therefore, Defendants have failed as a matter of law to establish inequitable conduct in
15 connection with the CCITT Specialists Group's Report or any related oral presentations.

16 **IV.    CONCLUSION**

17 For the reasons set forth above, MPT respectfully requests that the Court grant summary
18 judgment of no inequitable conduct regarding the Patents-in-Suit.

19 Dated: January 30, 2012                         Respectfully submitted,

20                                                 COOLEY LLP

21                                                 JOHN S. KYLE (199196)
                                                   STEPHEN C. NEAL (170085)
22                                                 FRANK V. PIETRANTONIO (*pro hac vice*)
                                                   JONATHAN G. GRAVES (*pro hac vice*)
23                                                 NATHAN K. CUMMINGS (*pro hac vice*)
                                                   JUSTIN P.D. WILCOX (*pro hac vice*)
24

25

26                                                 /s/ *Justin P.D. Wilcox*
                                                   Justin P.D. Wilcox (pro hac vice)
27                                                 Attorneys for Plaintiff
                                                   MULTIMEDIA PATENT TRUST
28

COOLEY LLP
ATTORNEYS AT LAW

Case No. 10-CV-00146 H (CAB)          15.     PLAINTIFF'S MEMO IN SUPPORT OF SUMMARY JUDGMENT MOTION ON DEFENDANTS' INEQUITABLE CONDUCT DEFENSES AND COUNTERCLAIMS